# EXHIBIT ONE

# EXHIBIT ONE



PACIFIC EMPLOYERS INSURANCE COMPANY

DECLARATIONS — MERCANTILE AND LAUNDRY POLICY 18/1114

MARSH & MCLENNAN INC.
OF NEVADA
PO BOX 14782
LAS VEGAS NV

eff: 10-22-81

T. R. REC'D.

NEW

NAMED INSURED IS: CORPORATION            TR# S2618

POLICY PERIOD                            PREMIUM PAYMENT PLAN: PREPAID

FROM 07/01/81 12:01 AM TO 07/01/82 12:01   TOTAL PREMIUM DUE AT
AM STANDARD TIME AT INSURED'S ADDRESS      INCEPTION              $32,231

PREMIUMS DUE WITH REPORTS OR RESULTING
FROM AUDITS ARE IN ADDITION HERETO

COVERAGES AND LIMITS OF LIABILITY
THE COMPANY'S LIABILITY SHALL NOT EXCEED THE LIMITS INDICATED FOR EACH COVERAGE

SECTION I PROPERTY INSURANCE          SECTION II LEGAL LIABILITY INSURANCE

AS SHOWN BELOW                        COVERAGE A PERSONAL INJURY LIABILITY AND
                                      COVERAGE B PROPERTY DAMAGE LIABILITY
                                         $1,000,000  PER OCCURRENCE
                                         $1,000,000  AGGREGATE
                                      PREMISES MEDICAL PAYMENTS
                                         $1,000    PER PERSON
                                         $10,000   PER ACCIDENT

SCHEDULE OF LOCATIONS

LOC. NO.   *Billed By Covernote # DLP522224*

1-1   3661 MARYLAND PKWY., LAS VEGAS, NV      *Dated 7-22-81*
2-1   2448 E. BONANZA RD., LAS VEGAS, NV
3-1   953-A E. SAHARA, LAS VEGAS, NV
4-1   3620 W. SAHARA, LAS VEGAS, NV
5-1   3745 DESERT INN RD., LAS VEGAS, NV
6-1   525E. TWAIN, LAS VEGAS, NV
7-1   1061E. FLAMINGO RD., LAS VEGAS, NV
8-1   AS ABOVE - OFFICE

SECTION I COVERAGES AND LIMITS OF LIABILITY

THE LIMIT OF LIABILITY IS   $1,235,000 FOR ALL LOCATION AND COVERAGES
INDICATED AS INCLUDED IN LIMIT # 1

| LOC. NO. | REAL PROPERTY COVERAGE A | PERSONAL PROPERTY COVERAGE B | LOSS OF INCOME COVERAGE C | ADDITIONAL EXPENSE COVERAGE D |
|---|---|---|---|---|

KK 7204                      (CONTINUED ON NEXT PAGE)                    PAGE 1

COPIES OF THIS DOCUMENT HAVE BEEN SENT TO:
PRODUCER    S/O    RIC    AUDIT                    810811  LVS

 PACIFIC EMPLOYERS INSURANCE COMPANY

DLP  99 52 22 24 2

DECLARATIONS - DRY CLEANER'S AND LAUNDRY POLICY

(REVISED)                                         127078    COMM: 10.0%
SHAPIRO BROTHERS INVESTMENT CORP          MARSH & MCLENNAN INC.
DBA:  AL PHILLIPS THE CLEANER             OF NEVADA
1061 E. FLAMINGO RD.                      PO BOX 14782
LAS VEGAS                    NV89109      LAS VEGAS NV  89114

                                  SERVICE OFFICE: LAS VEGAS

| 1-1 | NOT COVERED | LIMIT # | 1 | $360,000 (E) | $2,000 |
|-----|-------------|---------|---|--------------|--------|
| 2-1 | NOT COVERED | LIMIT # | 1 | $180,000 (E) | $2,000 |
| 3-1 | NOT COVERED | LIMIT # | 1 | $90,000 (E) | $2,000 |
| 4-1 | NOT COVERED | LIMIT # | 1 | $180,000 (E) | $2,000 |
| 5-1 | $150,000 | LIMIT # | 1 | $135,000 (E) | $2,000 |
| 6-1 | NOT COVERED | LIMIT # | 1 | $180,000 (E) | $2,000 |
| 7-1 | NOT COVERED | LIMIT # | 1 | NCT COVERED | $2,000 |
| 8-1 | NOT COVERED | LIMIT # | 1 | NOT COVERED | $1,000 |
|     |             |         |   | (E) EARNINGS | |

SECTION I PERILS INSURED AGAINST

| LOC. NO. | COVERAGE | PERILS | |
|----------|----------|--------|--|
| ALL  *   | B,C,D    | COMPREHENSIVE | |
| * EXCEPT |          |        | |
| 5-1      | A        | COMPREHENSIVE | |

COMPREHENSIVE PERILS EXCLUDE BURGLARY OR THEFT OF PERSONAL PROPERTY UNLESS
A LIMIT OF LIABILITY IS SHOWN FOR THESE COVERAGES UNDER CRIME INSURANCE

SECTION I COINSURANCE

| LOC. NO. | COVERAGE | COINSURANCE |
|----------|----------|-------------|
| 1-1 | B | 90% |
| 2-1 | B | 90% |
| 3-1 | B | 90% |
| 4-1 | B | 90% |
| 5-1 | A,B | 90% |
| 6-1 | B | 90% |
| 7-1 | B | 90% |
| 8-1 | B | 90% |

SECTION I DEDUCTIBLES

| LOC. NO. | COVERAGE | DEDUCTIBLE NO. | AMOUNT |
|----------|----------|----------------|--------|
| ALL | A,B | 1 | $500 |

CRIME INSURANCE

MONEY AND SECURITIES, ALL RISK - LOSS INSIDE PREMISES

A LIMIT PER OCCURRENCE OF   $1,000 WITH A    $500 DEDUCTIBLE APPLIES TO EACH
LOCATION EXCEPT:

KW-7204                      (CONTINUED ON NEXT PAGE)              PAGE  2

COPIES OF THIS DOCUMENT HAVE BEEN SENT TO:
PRODUCER        I/O.      RIC        AUDIT                    BRANCH  LVS

 PACIFIC EMPLOYERS INSURANCE COMPANY

CLP   OO 52 22 24 2

DECLARATIONS - DRY CLEANER'S AND LAUNDRY POLICY

NAMED INSURED
SHAPIRO BROTHERS INVESTMENT CORP
DBA: AL PHILLIPS THE CLEANER
1061 E. FLAMINGO RD.
LAS VEGAS                          NV89109

127078   COMM: 10.0%
MARSH & MCLENNAN INC.
OF NEVADA
PO BOX 14782
LAS VEGAS NV  89114

SERVICE OFFICE: LAS VEGAS

| LOC. NO. | LIMIT PER OCCURRENCE | DEDUCTIBLE |
|----------|--------------------|------------|
| ALL      | $1,000             | $500       |
| 1-1      | $5,000             | $500       |
| 2-1      | $1,000             | $500       |
| 3-1      | $4,000             | $500       |
| 4-1      | $1,000             | $500       |
| 5-1      | $2,000             | $500       |
| 6-1      | $2,000             | $500       |
| 7-1      | $1,000             | $500       |
| 8-1      | $1,000             | $500       |

MONEY AND SECURITIES, ALL RISK - LOSS OUTSIDE PREMISES

A LIMIT PER OCCURRENCE OF   $1,000 WITH A   $500 DEDUCTIBLE APPLIES TO EACH
LOCATION EXCEPT:

| LOC. NO. | LIMIT PER OCCURRENCE | DEDUCTIBLE |
|----------|--------------------|------------|
| 1-1      | $5,000             | $500       |
| 2-1      | $1,000             | $500       |
| 3-1      | $4,000             | $500       |
| 4-1      | $1,000             | $500       |
| 5-1      | $2,000             | $500       |
| 6-1      | $2,000             | $500       |
| 7-1      | $1,000             | $500       |
| 8-1      | $1,000             | $500       |

OTHER CONTENTS - THEFT

| LOC. NO. | LIMIT PER OCCURRENCE | DEDUCTIBLE |
|----------|--------------------|------------|
| 1-1      | LIMIT #  1         | $500       |
| 2-1      | LIMIT #  1         | $500       |
| 3-1      | LIMIT #  1         | $500       |
| 4-1      | LIMIT #  1         | $500       |
| 5-1      | LIMIT #  1         | $500       |
| 6-1      | LIMIT #  1         | $500       |
| 7-1      | LIMIT #  1         | $500       |
| 8-1      | LIMIT #  1         | $500       |

NEON SIGNS ENDORSEMENT

| LOC. NO. | DEDUCTIBLE |
|----------|-----------|
| 1        | 5% (SEE ENDORSEMENT) |

QUANTITY   LIMIT   DESCRIPTION

KK-7204                    (CONTINUED ON NEXT PAGE)                    PAGE   3

COPIES OF THIS DOCUMENT HAVE BEEN SENT TO:
PRODUCER    S/O    RIC    AUDIT                                    REQSIT   LVS

# NR

| PACIFIC EMPLOYERS INSURANCE COMPANY | DLP 00 52 22 24 2 |

DECLARATIONS - DRY CLEANER'S AND LAUNDRY POLICY

```
NED INSURED                                127078    COMM: 10.0%
SHAPIRO BROTHERS INVESTMENT CORP           MARSH & MCLENNAN INC.
DBA: AL PHILLIPS THE CLEANER               OF NEVADA
1061 E. FLAMINGO RD.                       PO BOX 14782
LAS VEGAS               NV89109            LAS VEGAS NV  89114

                                           SERVICE OFFICE: LAS VEGAS
```

```
          1    $5,000   NEON SIGN
LOC. NO.  DEDUCTIBLE
--------  ----------
   2          5% (SEE ENDORSEMENT)
          QUANTITY  LIMIT  DESCRIPTION
          --------  -----  -----------
          1    $5,000   NEON SIGN
LOC. NO.  DEDUCTIBLE
--------  ----------
   3          5% (SEE ENDORSEMENT)
          QUANTITY  LIMIT  DESCRIPTION
          --------  -----  -----------
          1    $3,500   NEON SIGN
LOC. NO.  DEDUCTIBLE
--------  ----------
   4          5% (SEE ENDORSEMENT)
          QUANTITY  LIMIT  DESCRIPTION
          --------  -----  -----------
          1    $11,000   NEON SIGN
LOC. NO.  DEDUCTIBLE
--------  ----------
   5          5% (SEE ENDORSEMENT)
          QUANTITY  LIMIT  DESCRIPTION
          --------  -----  -----------
          1    $8,800   NEON SIGN
```

COMPREHENSIVE CRIME COVERAGE

| LOC. NO. | COVERAGE | LIMIT OF LIABILITY |
| -------- | -------- | ------------------ |
|          | EMPLOYEE DISHONESTY COVERAGE - BLANKET HONESTY | $20,000 |

BUSINESS AUTO INSURANCE

REMARKS:   FOR DETAILS SEE KK-1E41  , BUSINESS AUTO POLICY DECLARATION

FORMS AND ENDORSEMENTS

```
 K-1501      DLP-JACKET
KK-7233      DLP-SPECIAL CONDITIONS
KK-7077      PERILS INSURED AGAINST-COMPREHENSIVE
KK-7445      OTHER CONDITIONS-CRIME INSURANCE
 K-1483A     OTHER CONDITIONS-WITH BASIC SECTION II
KK-4C46      GENERAL CONDITIONS
BB-8G79      BAILEES CUSTOMERS INS. (COMPREHENSIVE FORM)
KK-6777      NEON SIGN
```

KK-7204                    (CONTINUED ON NEXT PAGE)                    PAGE 4

OPIES OF THIS DOCUMENT HAVE BEEN SENT TO:
RODUCER          S/O    |   RIC   |   AUDIT                        810611  LVS

**INA**          PACIFIC EMPLOYERS INSURANCE COMPANY

DLP  00 52 22 24 2

DECLARATIONS — DRY CLEANER'S AND LAUNDRY POLICY

| NAMED INSURED | |
|---|---|
| SHAPIRO BROTHERS INVESTMENT CORP | 127078   COMM: 10.0% |
| DBA:  AL PHILLIPS THE CLEANER | MARSH & MCLENNAN INC. |
| 1061 E. FLAMINGO RD. | OF NEVADA |
| LAS VEGAS | PO BOX 14782 |
| NV89109 | LAS VEGAS NV   89114 |

SERVICE OFFICE: LAS VEGAS

| | |
|---|---|
| KK-6786 | COMPREHENSIVE CRIME COVERAGE |
| KK-7565 | COVERAGE C - SPECIFIC TYPES OF INCOME |
| K-1966 | CLARIFICATION ENDT-APPLICABLE SECTION II |
| KK-1777 | EXTENDED LIABILITY COVERAGES |
| KK-7072 | PREMISES MEDICAL PAYMENTS |
| LD-9E49 | G.L.-AMENDATORY ENDT-ADDL DEFINITION |
| KK-1E41 | BUSINESS AUTO INSURANCE |

COUNTERSIGNED AT: _____      AUTHORIZED AGENT: _____
             DATE: _____

KK-7204

(LAST PAGE)

PAGE  5

OPIES OF THIS DOCUMENT HAVE BEEN SENT TO:
RODU       $/0      RIC      AUDIT                              LVS

A PACKAGE POLICY FOR

# DRY CLEANERS AND LAUNDRIES

**INSURANCE COMPANY OF NORTH AMERICA — Philadelphia, Pennsylvania**

**PACIFIC EMPLOYERS INSURANCE COMPANY — Los Angeles, California**

**ALLIED INSURANCE COMPANY — Los Angeles, California**
Home Office: San Francisco, California

SPECIMEN FORM
From SSU



| Prepared for | Agent |
|---|---|
|  |  |

In consideration of the premium and in reliance upon the statements in the Declarations, the Company designated in the Declarations agrees with the Named Insured to provide insurance under the following Coverages for which limits of liability are shown in the Declarations, subject to all other conditions elsewhere in the policy including forms and endorsements attached hereto.

## SECTION I COVERAGES

### Physical Damage and Loss Of Use

This policy insures with respect to the following Coverages, except as hereafter provided:

**A — REAL PROPERTY**

Loss or damage by perils insured against with respect to all real property, including building service equipment and supplies, at the locations scheduled in the Declarations or temporarily elsewhere.

**B — PERSONAL PROPERTY**

Loss or damage by perils insured against with respect to all personal property of a business nature, except as included under Coverage A:

1. Owned by the Insured;

2. Owned by officers or partners of the Insured and not otherwise insured;

3. Owned by others in the care, custody, or control of the Insured and for which the Insured is legally liable;

including the Insured's use interest in improvements and betterments to buildings not owned by the Insured, all while at the locations scheduled in the Declarations and within 100 feet thereof outside in the open and on the same premises.

**C — LOSS OF INCOME**

Loss of income during the period of recovery as defined hereafter, directly resulting from interruption of the Insured's operations at the locations scheduled in the Declarations, caused by loss or damage by perils insured against to real or personal property at such locations.

**D — ADDITIONAL EXPENSE**

Additional expense necessarily incurred during the period of recovery as defined hereafter, to continue normal operations as a result of loss or damage by perils insured against to real or personal property at the locations scheduled in the Declarations.

**E — BOILER AND MACHINERY INSURANCE**

Loss from an accident as defined, occurring while this insurance is in effect, to an object as defined while the object is in use or connected ready for use at the location specified for it in the schedule.

All other conditions applicable to Coverage E are contained in the forms and endorsements attached hereto, or in this policy as indicated in such forms or endorsements.

## SECTION II COVERAGES

### Legal Liability

The Company will pay on behalf of the Insured, except as hereafter provided, all sums which the Insured shall become legally obligated to pay as damages because of:

**A — PERSONAL INJURY** or

**B — PROPERTY DAMAGE**

caused by an occurrence during the policy period and within the policy territory.

The Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

K-1501   Ptd. in U.S.A.

**Dry Cleaners and Laundry Policy**

## SPECIAL CONDITIONS

### Applicable To Section I Coverages

The following Special Conditions shall apply subject to the Perils Insured Against, the Deductibles, unless waived, and all other conditions in the policy pertaining to the Coverage involved. Insurance shall be for an additional amount, except for condition 10 when a Coverage D limit of liability is set forth in the declaration, per occurrence provided such additional coverage is so indicated in the condition. All conditions shall apply at each location scheduled in the Declarations, except conditions 2 and 7.

1. **COINSURANCE WAIVER**

    In case of loss, coinsurance shall not apply if the amount of loss does not exceed 1% of the limit of liability. Such percentage of the limit shall not be less than $2000 nor more than $5000.

2. **PERSONAL PROPERTY OFF PREMISES—UNDER COVERAGE B:**

    Additional coverage is provided up to $1000 on personal property (except customers') as insured under Coverage B while in transit or while temporarily in storage at a location not named in this policy, including direct loss or damage caused by collision, (except contact with roadbed), derailment, or overturn of a transporting land conveyance.

3. **PERSONAL EFFECTS OF OFFICERS, PARTNERS, EMPLOYEES, AND OTHERS —UNDER COVERAGE B:**

    Additional coverage is provided up to $500 on personal effects belonging to the Named Insured, officers, and partners, and on personal property of employees and others, (except customers'), all while contained in buildings covered by the policy but not to exceed $100 on the property of any one person. This condition shall not apply if the loss is covered by other insurance, collectible or not, or which would have been covered by such other insurance in the absence of this policy. The deductible shall not apply hereunder.

4. **VALUABLE PAPERS AND RECORDS—UNDER COVERAGE B:**

    Additional coverage is provided up to $500 for expenses necessarily incurred in the reproduction of valuable papers and records, in addition to any other recovery under Coverage B. The deductible shall not apply hereunder.

5. **CONSEQUENTIAL LOSS—UNDER COVERAGE B:**

    If insurance is in force with respect to personal property at a location scheduled in the Declarations, coverage also applies to loss or damage to such property while in any building thereat covered by the policy, caused by change of temperature or humidity as a result of physical damage to such building or equipment therein by a peril insured against.

6. **TREES, SHRUBS, PLANTS, LAWNS—UNDER COVERAGES A and B:**

    Additional coverage is provided up to $1000 on trees, shrubs, plants, and lawns against loss only by the perils of fire, lightning, explosion, riot, civil commotion, or aircraft, but the Company shall not be liable for more than $250 on any one tree, shrub, or plant, including expenses incurred in removing debris thereof. The deductible shall not apply hereunder.

7. **NEWLY ACQUIRED PROPERTY—UNDER COVERAGES A and B:**

    Additional coverage is provided up to 15% of the limits applicable to Coverages A and B on property (except customers') as covered thereunder acquired by the Insured at any location within the State in which this policy covers which is not scheduled in the Declarations, provided the Insured's interest is not covered under any other policy. Coverage under this condition shall not exceed $100,000 and shall cease 60 days from the date of acquisition or on the termination date of this policy, whichever first occurs. The Insured shall report values of newly acquired property to the Company and additional premium shall be payable from the date of acquisition. Insurance hereunder shall not apply, however, to the construction of new buildings.

8. **DEBRIS REMOVAL EXPENSE—UNDER COVERAGES A and B:**

    Insurance also applies to expense incurred by the Insured in the removal of all debris of the property covered hereunder resulting from direct loss by a peril insured against.

9. **DWELLING PROPERTY—UNDER COVERAGES A and C:**

    Additional coverage is provided up to 10% of the actual cash value of any dwelling covered hereunder with respect to each of the following:

    a. Private structures pertaining to the dwelling;

    b. Rental value of the dwelling or its private structures, whether rented or not, subject to all policy conditions applicable to Coverage C Loss of Income.

    A "dwelling" is defined as a residential building occupied by not more than 4 families (excluding janitor's or servant's quarters) nor having over 5 rooms rented or held for rent.

    This condition does not apply to any private structure used in whole or in part for mercantile or farming purposes.

10. **ADDITIONAL EXPENSE—UNDER COVERAGE D:**

    Additional coverage is provided up to $1000 as additional expense under Coverage D.

11. **ACCESS TO PREMISES BY ORDER OF CIVIL AUTHORITY—UNDER COVERAGES C and D:**

    If insurance is in force under Coverage C or D, liability is extended for the length of time not exceeding two consecutive weeks when, as a direct result of damage to or destruction of property adjacent to the premises described in the Declarations by a peril insured against, access to such premises is specifically prohibited by order of civil authority.

12. **BASIS OF LOSS PAYMENT AMENDMENT:**

    The following is added under item a. (6) of paragraph E 1. WHEN LOSS OCCURS under Other Conditions Applicable To Section I Coverages:

    With respect only to merchandise sold prior to loss or damage but not delivered, actual cash value shall mean the Insured's price to the customer, provided the same basis of valuation has been used for premium purposes.

    With respect to property of others, except customer's property endorsed hereto, the Company's liability shall be limited to the amount for which the Insured is legally liable, including the value of materials or services provided by the Insured prior to loss or damage, but in no event exceeding actual cash value as described in Condition 1.a.(6).

# SPECIAL CONDITIONS

## Applicable To Section II Coverages

**Under Section II the following shall apply to Coverages A and B:**

1. **Supplementary Payments:** With respect to such insurance as is afforded by Coverages A and B the Company will pay, in addition to the applicable limit of liability:

   a. All expenses incurred by the Company, all costs taxed against the Insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon;

   b. Premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the Insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the Company shall have no obligation to apply for or furnish any such bonds;

   c. Reasonable expenses incurred by the Insured for first aid to others at the time of an accident, for personal injury to which this policy applies;

   d. Reasonable expenses incurred by the Insured at the Company's request in assisting the Company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $50 per day.

2. **Persons Insured**

   Each of the following is an Insured under this insurance to the extent set forth below:

   a. If the Named Insured is designated in the Declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the Named Insured with respect to the conduct of such a business;

   b. If the Named Insured is designated in the Declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

   c. If the Named Insured is designated in the Declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

   d. Any person (other than an employee of the Named Insured) or organization while acting as real estate manager for the Named Insured; and

   e. With respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law,

   (1) (a) an employee of the Named Insured while operating any such equipment in the course of his employment, and

   (b) any other person while operating with the permission of the Named Insured any such equipment registered in the name of the Named Insured and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis; to such person or organization;

   (2) provided that no person or organization shall be an Insured under this paragraph (e) with respect to:

   (a) personal injury to any fellow employee of such person injured in the course of his employment, or

   (b) property damage to property owned by, rented to, in charge of or occupied by the Named Insured or the employer or any person described in subparagraph (1b)

   This insurance does not apply to personal injury or property damage arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in this policy as a Named Insured.

## OTHER CONDITIONS

### Applicable To Section I Coverages

## A—PERILS INSURED AGAINST—COMPREHENSIVE

### Applicable Only As Designated In The Declarations

Under Section I this policy insures, except as hereafter provided:

1. **Against all risks of direct physical loss or damage** to that property under Coverages A and B which is designated in the Declarations as subject to this insurance. Coverage also applies to indirect loss and expense ensuing therefrom as provided under Coverages C and D.

Insurance under Coverage E is described therein and in other conditions elsewhere in the policy pertaining to such coverage.

2. **Removal,** meaning only direct loss by removal from the described premises endangered by the perils insured against, or pro rata for five days at each proper place to which the property covered shall necessarily be removed for preservation from the perils insured against.

## B—DEDUCTIBLES

The following deductible(s) shall apply only as designated in the Declarations to Coverages A and B of Section I and shall not apply to Coverages C, D, and E, nor to Crime Insurance if attached hereto unless a specific deductible is designated in the Declarations as applicable to such Crime Insurance.

**Deductible # 1.** Loss in any one occurrence to the extent of the deductible amount specified in the Declarations is not recoverable and the Company shall be liable for loss only in excess thereof.

**Deductible # 2.** Loss in any one occurrence by fire, lightning, windstorm, hail, explosion, sonic boom, vandalism, malicious mischief, riot, civil commotion, aircraft, vehicles, smoke, or sprinkler leakage to the extent of the deductible amount specified in the Declarations is not recoverable and the Company shall be liable for loss only in excess thereof.

**Deductible # 3.** Loss in any one occurrence to the extent of the deductible amount specified in the Declarations is not recoverable and the Company shall be liable for loss only in excess thereof. The deductible shall not apply to loss by fire, lightning, windstorm, hail,

explosion, sonic boom, vandalism, malicious mischief, riot, civil commotion, aircraft, vehicles, smoke, or sprinkler leakage.

**Builder's Risk**—During the construction of new buildings or the structural alteration of existing buildings involving a change in the size of such buildings, Deductible # 3 shall apply in the amount of $1,000.

**Deductible Franchise and Percentage**

If a franchise amount is specified in the Declarations with the deductible, the deductible shall not apply if the loss equals or exceeds such franchise amount.

If a percentage is also specified in the Declarations with the deductible and the loss is between the deductible and franchise amounts, the Company will pay that percentage of loss in excess of the deductible.

## C—EXCLUSIONS

Under Section I, insurance shall not apply to loss or damage:

1. Under Coverages A and B with respect to the following property and perils nor to loss and expense under Coverages C and D arising therefrom:

   a. To property belonging to persons other than the Insured as covered in the Special Conditions unless loss or damage is caused by vandalism, malicious mischief, or any peril named in item b. (1) below.

   b. To glass and glass substitutes constituting a part of a building. This exclusion shall not apply to building blocks of glass or glass substitutes.

   Property excluded in item b. above, is covered for loss or damage by:

   (1) Fire, lightning, windstorm, hail, explosion, sonic boom, riot and civil commotion, aircraft, vehicles, smoke, falling objects, weight of ice, snow, or sleet, building collapse, freezing, water damage, sprinkler leakage, and collapse or fall of tanks.

   (2) Breakage from any other cause not named in item (1) above, but coverage shall not apply:

   (a) To neon tubing attached to the building;

   (b) To any breakage if the building has been vacant beyond a period of 30 consecutive days immediately preceding the loss;

   (c) For more than $50 per plate, pane, multiple plate, insulating unit, radiant heating panel, jalousie, louver, or shutter;

   (d) For more than $250 in any one occurrence.

   The foregoing insurance is subject to all exclusions hereafter.

   c. To retaining walls not constituting part of a structure when such loss is caused by water pressure, erosion, or ice.

   d. To real property caused by smog or smoke from agricultural smudging or industrial operations.

   e. To plumbing systems located underground outside the perimeter of building walls, caused by freezing.

   f. With respect to any property undergoing construction, alterations, repairs, testing, or being worked upon, to loss or damage to component materials or parts of any property due to testing, or loss or damage caused by or resulting from faulty design, manufacture, or installation of such component materials or parts.

   g. By leakage or overflow from plumbing, heating, air conditioning, or other equipment or appliances, caused by or resulting from freezing while the described building is vacant or unoccupied, unless the insured shall have exercised due diligence with respect to maintaining heat in the building, or unless such systems and appliances had been drained and the water supply shut off during such vacancy or unoccupancy.

   h. By any legal proceeding or process.

   i. By delay, loss of market, or loss of use except as provided under Coverages C and D.

   j. By mysterious disappearance or inventory shortage.

   k. To loss or damage caused by or resulting from explosion, rupture, or bursting of steam boilers, steam pipes, steam turbines, steam engines, or rotating parts of machinery caused by centrifugal force; if owned by, leased by, or actually operated under the control of the Insured.

   This exclusion shall not apply to ensuing loss by fire not otherwise excluded.

   l. To loss or damage caused by or resulting from the following perils, except that ensuing fire or explosion not otherwise excluded is covered hereunder:

   (1) Theft. This exclusion does not apply, however, to property which at the time of loss is an integral part of a building or structure provided such building or structure (a) is not in the course of construction, (b) has not been vacant beyond a period of 30 consecutive days immediately preceding the loss, (c) is owned by the Insured or the Insured is liable for such loss.

   (2) Conversion, embezzlement, or secretion by any person lawfully in possession of personal property sold under installment sales, deferred payment, or similar plan,

(3) Any dishonest act or omission by any Insured, or by any authorized representative thereof, or by any employee thereof, while working or otherwise, and whether acting alone or in concert with others,

(4) Any fraudulent scheme, trick, device, or false pretense, practiced upon the Insured or upon any person lawfully in possession of property covered other than a carrier for hire,

(5) Animals, birds; vermin, termites or other insects; chafing of tires and tubes; rust or corrosion; erosion; inherent vice; contamination; wet or dry rot; mould; mechanical breakdown; inherent or latent defect; faulty design, materials, or workmanship; any and all settling, shrinking, cracking, bulging, or expansion of pavements, foundations, walls, floors, roofs, or ceilings.

(6) Wear, tear, or deterioration. This exclusion does not apply, however, to the accidental admission of rain or snow directly to the interior of the building through defective roofs, leaders, or spouting, or through open or defective doors, windows, skylights, transoms, or ventilators.

(7) Earthquake, any and all landslide, mudslide, subsidence, or other earth movement; volcanic eruption; flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not, or whether caused by or attributable to earthquake, or other earth movement. This exclusion shall not apply to property in transit,

(8) Seepage or influx of water from natural underground sources into basements; water which backs up through sewers or drains,

(9) Vandalism, malicious mischief, theft, pilferage, burglary, robbery, or larceny, if the described property has been vacant beyond a period of thirty consecutive days immediately preceding the loss,

(10) Change in temperature or humidity, unless resulting from physical damage to the building or to equipment therein by a peril not otherwise excluded,

(11) Artificially generated electrical currents.

(12) Errors in design, poor workmanship, or use of faulty materials in the development, processing, or manufacture of the Insured's products; nor loss attributable to manufacturing or processing operations which result in damage to stock while such stock is being processed, manufactured or otherwise being worked upon; nor the cost of making good any faulty workmanship, material, construction, or design of structures under construction.

Other exclusions applicable under the policy are continued on page 6.

## OTHER CONDITIONS

**Applicable to Section I Coverages**

**CRIME INSURANCE**

**Except Employee Dishonesty**

Under Section I of this policy the following insurance also applies provided limits of liability as described in paragraph 6 hereof, are designated in the Declarations. Insurance hereunder shall be applicable only at the locations designated in such Declarations, subject to all conditions in the policy or modifications thereof as described below.

**1. Under Part A-PERILS INSURED AGAINST**, such of the following property and perils applicable thereto are covered as designated in the Declarations, except as excluded under Part C-EXCLUSIONS:

**a. MONEY and SECURITIES**

**(1) Robbery and Safe Burglary**
Loss of money and securities caused by robbery of a messenger within the policy territory or by safe burglary within the premises.

**(2) All Risks**
Loss of money and securities by the actual destruction, disappearance, or wrongful abstraction thereof:

**(a)** Within the premises or within any banking premises or similar recognized places of safe deposit:

**(b)** Outside the premises within the policy territory while being conveyed by a messenger or any armored motor vehicle company, or while within the living quarters in the home of any messenger.

**b. OTHER CONTENTS**

**(1) Robbery and Burglary**
Loss of property other than money and securities, caused by robbery of a messenger within the policy territory or by burglary of the premises or a showcase or show window used by the Insured at the location of the premises.

**(2) Theft**
Loss of property other than money and securities, caused by theft from a messenger within the policy territory or by theft from within the premises or a showcase or show window used by the Insured at the location of the premises.

**c. DAMAGE to PROPERTY**-included if insurance is carried under either foregoing Items a. or b.
Damage to property caused by burglary, theft, or attempt thereat, provided the Insured is the owner of the property or is liable for such damage.

**2. Insurance under paragraph 1. is provided subject to the following definitions:**

**"Money"** means currency, coins, bank notes and bullion; and travelers checks, register checks and money orders held for sale to the public.

**"Securities"** means all negotiable and non-negotiable instruments or contracts representing either money or other property and includes revenue and other stamps in current use, tokens and tickets, but does not include money.

**"Premises"** means the interior of that portion of the building at the location designated in the Declarations which is occupied by the Insured, but shall not include (1) showcases or showwindows not opening directly into the interior of the premises, or (2) public entrances, halls, or stairways.

**"Messenger"** means the Insured, a partner therein or any officer thereof, or any employee thereof who is in the regular service of and duly authorized by the Insured to have the care and custody of the insured property outside the premises.

**"Custodian"** means the Insured, a partner therein or an officer thereof, or any employee thereof who is in the regular service of and duly authorized by the Insured to have the care and custody of the insured property within the premises, excluding any person while acting as a watchman, porter or janitor.

**"Jewelry"** means watches, necklaces, bracelets, gems, precious or semi-precious stones, articles containing one or more gems and articles of gold or platinum.

**"Robbery"** means the taking of insured property (1) by violence inflicted upon a messenger or a custodian; (2) by putting him in fear of violence; (3) by any other overt felonious act committed in his presence and of which he was actually cognizant, provided such other act is not committed by an officer, partner or employee of the Insured; (4) from the person or direct care and custody of a messenger or custodian who has

been killed or rendered unconscious; (5) from within the premises by means of compelling a messenger or custodian by violence or threat of violence while outside the premises to admit a person into the premises or to furnish him with means of ingress into the premises; or (6) by violence or threat of violence inflicted upon a private watchman employed exclusively by the insured and while such watchman is on duty within the premises.

**"Burglary"** means the felonious abstraction of insured property (1) from within the premises by a person making felonious entry therein by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon,. or physical damage to, the exterior of the premises at the place of such entry, or (2) from within a showcase or show window outside the premises by a person making felonious entry into such showcase or show window by actual force and violence. of which force and violence there are visible marks thereon, or (3) from within the premises by a person making felonious exit therefrom by actual force and violence as evidenced by visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the interior of the premises at the place of such exit.

**"Safe burglary"** means (1) the felonious abstraction of insured property from within a vault or safe located within the premises by a person making felonious entry into such vault or such safe and any vault containing the safe, when all doors thereof are duly closed and locked by all combination locks thereon, provided such entry shall be made by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon the exterior of (a) all of said doors of such vault or such safe and any vault containing the safe, if entry is made through such doors, or (b) the top, bottom or walls of such vault or such safe and any vault containing the safe through which entry is made, if not made through such doors, or (2) the felonious abstraction of such safe from within the premises.

**3. Under Part B-DEDUCTIBLES**, none shall apply unless designated in the Declarations under Crime Insurance in which case the Crime Insurance Deductible stated below shall apply separately to each division of property for which an amount is designated.

**Crime Insurance Deductible**
Loss in any one occurrence to the extent of the deductible amount specified in the Declarations is not recoverable and the Company shall be liable for loss only in excess thereof.

If a franchise amount is specified in the Declarations, the deductible shall not apply if the loss equals or exceeds such franchise amount.

If a percentage is also specified in the Declarations and the loss is between the deductible and franchise amounts, the Company will pay that percentage of loss in excess of the deductible.

4. None of the SPECIAL CONDITIONS applicable to Section I shall apply with respect to money and securities; nor to property other than money and securities except for robbery or burglary as covered under item 1.b. (1) above. With respect to the Special Condition titled "Personal Property Off Premises-Under Coverage B," item 1.b. (1) shall include the felonious abstraction of insured property from within a locked vehicle provided such vehicle is equipped with a fully enclosed body or compartment and the loss be a direct result of violent forcible entry, of which there shall be visible evidence, into such fully enclosed body, the doors and windows of which shall have been securely locked, or into the compartment, which shall have been securely locked.

5. Under OTHER CONDITIONS Applicable to Section I Coverages, coinsurance condition E 1. a. (7) shall not apply to the insurance provided hereunder.

6. The following additional limits of liability shall be applicable to the insurance provided herein:

   a. With respect to money and securities the Company's liability for:
     (1) Securities shall not exceed the actual cash value at the close of business on the business day next preceding the day on which the loss was discovered, subject however, to the following limit of liability in item (2).

     (2) Money and securities shall not exceed:
       (a). The "inside" limit designated in the Declarations for loss occurring inside the premises.

       (b) The "outside" limit designated in the Declarations for loss occurring outside the premises.

   b. With respect to property other than money and securities, the Company's liability shall not exceed the limit designated in the Declarations as applicable to "Other Contents".

   c. With respect to property damage covered under paragraph 1 c., such insurance shall be part of and not in addition to the limit of liability otherwise applicable to the loss.

   d. The applicable limit of liability stated in the Declarations is the total limit of liability with respect to all loss of property of one or more persons or organizations arising out of any one occurrence. All loss incidental to an actual or attempted dishonest act or series of related acts at the premises, whether committed by one or more persons, shall be deemed to arise out of one occurrence.

7. Under Part C-EXCLUSIONS, the following additional exclusions shall be applicable to the insurance provided herein:

Coverage shall not apply:

   a. To loss due to any fraudulent, dishonest or criminal act by any Insured, a partner therein, or an officer, employee, director, trustee or authorized representative thereof, while working or otherwise and whether acting alone or in collusion with others: provided, this exclusion does not apply to safe burglary or robbery or attempt thereat by other than an Insured or a partner therein;

   b. To loss due to (1) the giving or surrendering of money or securities in any exchange or purchase, or (2) accounting or arithmetical errors or omissions;

   c. To loss of money contained in coin operated amusement devices or vending machines, unless the amount of money deposited within the device or machine is recorded by a continuous recording instrument therein;

   d. To any mysterious or unexplained disappearance or shortage of property, other than money and securities;

   e. To loss of or damage to manuscripts, books of account, or records;

   f. To the amount of loss in excess of $1000 with respect to loss of furs, or articles containing fur which represents their principal value, by removal of such property from within a showcase or show window by a person who has broken the glass thereof from outside the premises or by an accomplice of any such person;

   g. To the amount of loss in excess of $100 with respect to the contents of any showcase or show window not opening directly into the interior of the premises;

   h. For more than $1000 with respect to any one article of jewelry.

   Other exclusions applicable under the policy are continued on page 6.

## OTHER CONDITIONS Applicable To Section I Coverages
### C—EXCLUSIONS (continued)

**Under Section I insurance shall not apply**

2. **To Coverages A and B with respect to the following property and perils nor to loss and expense under Coverages C and D arising therefrom:**

   a. Land, trees, shrubs, plants, lawns and growing crops, except as provided in the Special Conditions;

   b. Excavations, grading and filling;

   c. Unless covered elsewhere in the policy:

   (1) Household furnishings and personal effects of the Insured, officers, or partners, used for private or personal purposes;

   (2) Money, securities, aircraft, vehicles required by law to be licensed for highway use, watercraft including motors, equipment, and accessories (except rowboats and canoes while out of the water and on the described premises) and any kind of animal;

   d. Personal property in which parties other than the Insured also have an insurable interest when the Insured's interest in such property is covered by insurance under any other policy.

   e. Directly or indirectly caused by or resulting from:

   (1) Hostile or warlike action in the time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack by (a) any government or sovereign power (dejure or de facto), or by any authority maintaining or using military, naval, or air forces; (b) military, naval, or air forces; or (c) an agent of any such government, power, authority, or forces, it being understood that any discharge, explosion, or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such a government, power, authority, or forces;

   (2) Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence;

   (3) Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by a peril insured against

   in this policy. Nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, is not "explosion" or "smoke". Subject however to the foregoing and all provisions of this policy, direct loss by "fire" resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy;

   (4) Seizure or destruction under quarantine or customs regulations; confiscation by or destruction by order of any government or public authority, except destruction by order of public authority to prevent spread of fire or explosion; or risks of contraband or illegal trade;

   (5) Neglect of the Insured to use all reasonable means to save and preserve the property at and after a loss or when the property is endangered by fire in neighboring premises;

   (6) Theft, unless insured against elsewhere in this policy.

3. **Under Coverages A, B, C, and D to any loss:**

   a. Occasioned directly or indirectly by enforcement of any local or state ordinance or law regulating the construction, repair, or demolition of buildings or structures.

   b. Covered by insurance under Coverage E.

4. **Under Coverages C and D:**

   a. To loss resulting from

   (1) Damage to finished stock nor for the time required to reproduce finished stock. This exclusion does not apply to personal property leased or rented to others;

   (2) Electrical or magnetic injury, disturbance, or erasure of electronic recordings, except by lightning;

   (3) Any loss excluded under Coverage A or B.

   b. To loss which may be occasioned by the suspension, lapse, or cancellation of any lease, contract, or order, nor for any claim for recovery due to interference by strikers or other persons with rebuilding, repairing, or replacing property, or with the resumption or continuation of operations.

5. **Under Coverage E, as stated in the exclusions of the Boiler and Machinery forms and endorsements attached hereto.**

### D—DEFINITIONS

**Under Section I:**

1. **Coverages A, B, C, D, and E:**
   "Territory" means the United States of America, its territories, possessions, and Canada.

2. **Coverage C:**

   a. **"Income"** means the sum of:

   (1) Total net sales value of production,

   (2) Total net sales of merchandise which is not the product of the Insured's manufacturing or processing operations, and

   (3) Other income derived from operations of the Insured including the rental or lease of property to others

   Less the cost of:

   (4) Raw stock from which production is derived,

   (5) Supplies consumed in conversion of raw to finished stock or in supplying services sold by the Insured,

   (6) Merchandise sold, including packaging materials, which is not the product of Insured's manufacturing or processing operation, and

   (7) Services purchased (from other than employees) for resale which do not continue under contract.

   b. (1) **"Raw stock"** means material in the state in which the Insured receives it for conversion into finished stock.

   (2) **"Stock in process"** means raw stock which has undergone any aging, seasoning, mechanical or other processing or manufacturing but which has not become finished stock.

   (3) **"Finished stock"** means stock processed or manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment, or sale.

3. **Coverage D:**
   **"Additional Expense"** means the excess of the total cost of conducting operations during the period of recovery as defined, over and above the total cost of such operations during the same period had no loss occurred, including the cost to repair or replace property only which is in excess of the normal cost of such repair or replacement, and which is necessarily incurred to reduce the additional expense loss, and then not to exceed the amount by which such loss is reduced.

   Due consideration shall be given the salvage value of property obtained for temporary use during the period of recovery.

4. **Coverages C and D:**
   **"Period Of Recovery"** means only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace that part of the property which has been damaged or destroyed commencing with the date of such damage or destruction, but not limited to the termination of this policy.

5. **Coverage E, the definitions shall be as described in Boiler and Machinery forms or endorsements attached hereto.**

### E—WHEN LOSS OCCURS

1. **The Basis Of Loss Payment Under Section I**

   a. Coverages A and B shall be as follows with respect to:

   (1) Improvements and Betterments:

   (a) If repaired or replaced at the expense of the Insured within a reasonable time after such loss, the actual cash value as described in paragraph (6) hereafter.

   (b) If not repaired or replaced within a reasonable time after such loss, that proportion of the original cost of the damaged or destroyed Improvements and Betterments which the unexpired term of the lease at the time of loss bears to the period(s) from the date(s) such Improvements and Betterments were made to the expiration date of the lease.

   (c) If repaired or replaced at the expense of others for the use of the Insured, there shall be no liability hereunder.

   If the Insured purchased the use interest in Improvements and Betterments made by a predecessor tenant, this coverage shall apply

   as though such Improvements and Betterments had been made at the expense of the Insured.

   (2) Books of account, manuscripts, abstracts, drawings, card index systems and other records (except film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing) for not exceeding the cost of blank books, cards or other blank material, plus the cost of transcribing.

   (3) Film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing for not exceeding the cost of such media in unexposed or blank form.

   (4) Exhibitions and displays, the cost to the Insured.

   (5) Property insured under Coverage A and other property specified in the Declarations as subject to replacement cost insurance:
   The replacement cost of the property damaged or destroyed at the time of loss without deduction for depreciation.

## OTHER CONDITIONS Applicable To Section I Coverages
### E—WHEN LOSS OCCURS (continued)

This basis of loss payment shall not apply to:

Stock—raw, in process, or finished;

Merchandise, including materials and supplies in connection therewith,

Fine arts—property of rarity, historic value, or artistic merit,

Outdoor radio and television antennas or aerials, cloth awnings, carpeting, air conditioners, domestic appliances, and outdoor equipment, all whether permanently attached to the building or not,

Patterns and dies, if not replaced.

Notwithstanding the foregoing, Coverage A may be insured on an Actual Cash Value basis.

(6) **All other property including that excepted in (5) above:**

The actual cash value of the property damaged or destroyed at the time of loss, with deduction for depreciation, and not to exceed the applicable limit of liability nor the amount which it would cost to repair or replace such property with material of like kind and quality within a reasonable time after such loss;

(7) **Coinsurance**

(a) The Company shall not be liable for more than that proportion of loss as determined under the applicable paragraphs (5) and (6) which the limit of liability applicable to the property damaged or destroyed bears to the amount produced by multiplying the coinsurance percentage specified in the Declarations by the total of:

(i) The replacement cost of all property to which replacement cost coverage applies under paragraph (5) which is subject to that limit of liability, and

(ii) The actual cash value of all property to which actual cash value coverage applies under paragraph (6) which is subject to that limit of liability.

Loss to property insured on a replacement cost basis may be settled on an actual cash value basis as defined in item (6) above, in which case the words "The actual cash value" are substituted for the first three words "The replacement cost" in item (i) above.

If insurance is divided into separate limits of liability, this condition shall apply separately to the property covered under each such limit.

(b) **Coinsurance shall not apply to:**

(i) Coverage afforded by any of the Special Conditions;

(ii) The value of excavations; brick, stone, or concrete foundations of buildings which are below the under surface of the lowest basement floor, or where there is no basement, which are below the surface of the ground insioe the foundation walls of the building; brick, stone, or concrete foundations of machinery or boilers and engines, which are below the surface of the ground; underground flues, pipes, underground wiring and drains;

(8) **With respect to replacement cost insurance:**

(a) The Company's liability shall not exceed the smallest of the following:

(i) The applicable limit of liability;

(ii) The replacement cost of property identical with such property or any part thereof that is damaged or destroyed, on the same premises and intended for the same use and occupancy. This shall not be construed, however, to prohibit reconstruction at another location;

(iii) The amount actually and necessarily expended in repairing or replacing the property.

(b) In the application of replacement cost insurance, the words "replacement cost" shall be substituted for the words "actual cash value" wherever they appear elsewhere in the policy.

(c) The Company shall not be liable unless and until actual repair or replacement is completed.

(9) **Insured's Option**

With respect to property covered on a replacement cost basis. the Insured may elect loss settlement on an actual cash value basis, but such election shall not prejudice the Insured's right to make further claim within a reasonable time after loss on a replacement cost basis.

(10) **Company Options**

In the event of loss covered by the policy, the Company has the option:

(a) To take all or any part of the property at the agreed or appraised value. The Insured may, at his own expense, stamp "salvage" on merchandise or its container or may remove the brands or labels, if such stamp or removal will not physically damage the merchandise.

(b) To repair, rebuild, or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention to do so within 30 days after the receipt of Proof Of Loss herein required.

(c) With respect to property of others, to adjust with and make payment to the owner of such property.

(11) **Pair and Set**

The measure of loss or damage to any article or articles which are a part of a set shall be a reasonable and fair proportion of the total value of the set, giving consideration to the importance of said article or articles but in no event shall such loss or damage be construed to mean total loss of a set.

(12) **Parts**

In case of loss or damage to any part of the insured property consisting, when complete for sale or use, of several parts, the Company shall only be liable for the insured value of the part lost or damaged.

(13) **Labels**

In the event of loss affecting labels, capsules, or wrappers, the loss shall be adjusted on the basis of an amount sufficient to pay the cost of new labels, capsules, or wrappers, and reconditioning the goods.

(14) **Abandonment**

There can be no abandonment of any property to the Company.

(15) **Property Recovered After Loss Settlement**

Any property recovered after settlement of a loss shall be applied first to the expense of the parties in making such recovery, with any balance applied as if the recovery had been made prior to said settlement, and loss readjusted accordingly. The Insured or the Company recovering such property shall give notice thereof as soon as practicable to the other.

b. **Coverage C** shall be the Insured's loss of income during the period of recovery less charges and expenses which do not necessarily continue during interruption of operations, but not exceeding the actual loss sustained by the Insured resulting therefrom, nor exceeding the limit of liability stated in the Declarations. In determining loss of income due consideration shall be given to the experience before the date of damage or destruction and the probable experience thereafter had no loss occurred. Consideration shall also be given to the continuation of normal charges and expenses, including payroll expense, to the extent necessary to resume operations with the same quality of service which existed immediately preceding the loss.

Coverage also applies to such expenses as are necessarily incurred for the purpose of reducing loss of income, including expense in excess of normal, necessarily incurred in replacing finished stock to reduce loss hereunder; not exceeding, however, the amount by which such loss is thereby reduced.

The Insured shall make every reasonable effort to resume complete or partial operations as soon as possible and where practicable, use substitute facilities and property including stock, raw, in process, or finished.

c. **Coverage D** shall be as described thereunder and in other conditions pertaining thereto. The Insured shall make every reasonable effort to resume complete or partial operations as soon as possible and where practicable, reduce or dispense with such additional expenses as are being incurred.

d. **Coverage E** shall be as described in the Boiler and Machinery forms and endorsements attached hereto.

2. **Automatic Reinstatement**

Loss under Section I shall not reduce the applicable limit of liability.

3. **When Loss Occurs, The Insured Shall, Under Section I**

a. **Coverages A, B, C, and D, with respect to:**

(1) **Notice of Loss:**

(a) Immediately notify the police of loss by burglary, robbery, hold-up, theft, larceny or pilferage, but shall not, except at his own cost, offer to pay any reward for the recovery of lost or stolen property;

(b) Immediately give written notice to the Company or any of its authorized agents of any loss.

(2) **Sue and Labor:**

Sue, labor and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof, without prejudice to this insurance; nor shall the acts of the Insured or the Company in recovering, saving and preserving the property insured in case of loss or damage, be considered a waiver or acceptance of an abandonment; to the charges whereof, the Company will contribute according to the rate and quantity of the sum herein insured.' This clause also applies in case of imminent loss or damage.

(3) **Proof of Loss and Other Requirements:**

Protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within sixty days after the loss, unless such time is extended in writing by this Company, the Insured shall render to this Company a proof of

K-1483a

## OTHER CONDITIONS Applicable To Section I Coverages
### E—WHEN LOSS OCCURS (continued)

loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following: the time and origin of the loss, the interest of the Insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The Insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.

b. **Waiver of Inventory:** In the event that the aggregate claim for any loss is both less than $10,000 and less than 5% of the total amount of insurance on the described property at the time such loss occurs, no special inventory or appraisement of the undamaged property shall be required, provided, however, that nothing herein shall be construed to waive the application of the Coinsurance Clause.

c. **Coverage E,** comply with conditions of insurance contained in the Boiler and Machinery forms and endorsements attached hereto.

**4. When Loss Occurs, The Company Shall, Under Section I**

a. **Coverages A, B, C, and D,** pay all adjusted claims within 30 days after presentation and acceptance of Proof Of Loss at the office of the Company.

b. **Coverage E,** adjust claims in accordance with conditions in the Boiler and Machinery forms and endorsements attached hereto.

**5. When Loss Occurs Under Section I, The Following Conditions Shall Also Apply:**

a. **Appraisal**

(1) Under Coverages A, B, C, and D if the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty days after receipt of Proof Of Loss by the Company, select a competent and disinterested appraiser and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen days to agree upon such umpire, then, on the request of the Insured or the Company such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and the umpire. The Company shall not be held to have waived its rights by any act relating to appraisal.

(2) Under Coverage E, shall be as described in the Boiler and Machinery forms and endorsements attached hereto.

b. **Mortgagee Clause:** Applicable only to Coverage A provided the name of mortgagee(s) or trustee(s) is inserted in the Declarations.

Loss or damage, if any, to buildings under this policy shall be payable to the aforesaid as mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided, also that the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for 10 days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

Whenever this Company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor, existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

Loss or damage, if any, under this policy shall be payable to the aforesaid mortgagee (or trustee) as interest may appear under all present or future mortgages, in order of precedence of such mortgages, in accordance with the terms of this Standard Mortgagee Clause, it being understood that no notice of increase or decrease in any mortgagee's interest is required. The Mortgagee shall render proof of loss within 60 days upon notice that the Insured failed to render proof of loss and shall be subject to the provisions hereof relating to appraisal, time of payment and of bringing suit. If this Company claims that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's rights to sue, or it may pay off the mortgage debt and require an assignment thereof and of the mortgage.

c. **Release Of Others From Liability Under Section I:**

(1) **Under Coverage A** permission is given the Insured to release others in writing from liability for loss prior to loss, and such release shall not affect the right of the Insured to recover hereunder;

(2) **Under Coverage B** any release from liability other than as provided in the following paragraph entered into prior to loss hereunder by the Insured shall not affect this policy or the right of the Insured to recover hereunder. At the option of the Company, the Insured will execute a loan agreement, to the extent of any loss collectible under this policy. Said loan will bear no interest and will be repayable only in the event and to the extent of the net recovery effected from any party believed to be liable for said loss. Upon payment of any loss or advancement or loan of moneys concerning the loss, the Insured will at the Company's request and expense make claim upon and institute legal proceedings against any party which the Company believes to be liable for such loss, and will use all proper and reasonable means to recover the same, under the exclusive direction and control of the Company.

This insurance shall not inure directly or indirectly to the benefit of any carrier nor without the affirmative consent of the Insured, to the benefit of any other bailee. The Insured may accept without prejudice to this insurance the ordinary bills-of-lading used by common carriers, including released or partially released value bills-of-lading, and the Insured may waive subrogation against railroads under Side Track Agreements, and except as otherwise provided, the Insured shall not enter into any special agreement with carriers otherwise releasing them from their common law or statutory liability. The Company shall not be liable for any loss or damage which, without its consent, has been settled or compromised by the Insured.

d. **Other Insurance Under Section I:**

(1) **Coverages A, B, C, and D:**

Notwithstanding any provision to the contrary which may appear elsewhere in this policy, if other collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder, except insurance purchased to apply in excess of the limit of liability hereunder, the insurance hereunder shall be in excess of and not contribute with such other insurance.

(2) **Coverage E** shall be as described in the Boiler and Machinery forms and endorsements attached hereto.

e. **Suit Or Action Against The Company:**

(1) **Coverages A, B, C, and D:**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy, nor unless commenced within twelve (12) months next after the happening of the loss, unless a longer period of time is provided by applicable statute. Such suit or action must be commenced within 24 months in the state of Minnesota, 36 months in the state of North Dakota, and 60 months in the state of Kansas.

(2) **Coverage E** shall be as described in the Boiler and Machinery forms and endorsements attached hereto.

## OTHER CONDITIONS-Applicable To Section II Coverages—Basic
## A—EXCLUSIONS (continued)

**2. The Nuclear Energy Liability Exclusion (continued)**

exclusion (3) applies only to property damage to such nuclear facility and any property thereat;

**d. As used in this Exclusion:**

(1) **"Hazardous properties"** include radioactive, toxic, or explosive properties;

(2) **"Nuclear material"** means source material, special nuclear material or byproduct material;

(3) **"Source material", "special nuclear material", and "byproduct material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) **"Spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

(5) **"Waste"** means any waste material (a) containing byproduct material and (b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph 6 (a) or (b) thereof;

(6) **"Nuclear facility"** means: (a) any nuclear reactor; (b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing, or packaging waste; (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste; and (e) includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

(7) **"Nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) **"Property damage"** includes all forms of radioactive contamination of property.

## B—DEFINITIONS

**Under Section II Coverages A and B:**

1. **"Automobile"** means a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment;

2. **"Bodily injury"** means bodily injury, sickness or disease sustained by any person, including death at any time resulting therefrom;

3. **"Completed operations hazard"**

a. Includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the Named Insured at the site of the operation have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

b. The completed operations hazard does not include personal injury or property damage arising out of

(a) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the Company's manual specifies "including completed operations";

4. **"Contract"** means any written contract or agreement;

5. **"Damages"** includes damages for care and loss of services resulting from personal injury.

6. **"Elevator"** means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet;

7. **"Insured"** means any person or organization qualifying as an Insured in the "Persons Insured" provision of SPECIAL CONDITIONS applicable to Section II or in any applicable coverage added hereto. The insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability;

8. **"Mobile equipment"** means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the Named Insured, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or perma-

nently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment;

9. **"Named Insured"** means the person or organization named in the Declarations;

10. **"Named Insured's products"** means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but "Named Insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

11. **"Occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the insured;

12. **"Personal injury"** means bodily injury or if arising out of bodily injury, mental anguish. It also includes injury arising out of one or more of the following offenses committed in the conduct of the Named Insured's business.

Group A—false arrest, detention or imprisonment, or malicious prosecution;

Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting, publishing, or telecasting activities conducted by or on behalf of the Named Insured;

Group C—wrongful entry or eviction, or other invasion of the right of private occupancy;

13. **"Policy territory"** means:

(1) the United States of America, its territories or possessions, or Canada, or

(2) international waters or air space, provided the personal injury or property damage does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to damages because of personal injury or property damage arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

14. **"Products hazard"** includes personal injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others;

15. **"Property damage"** means (1) physical injury to or destruction of tangible property including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed;

16. **Premium bases are defined as follows:**

a. **"Admissions"** means the total number of persons, other than employees of the Named Insured, admitted to the event insured or to events conducted on the premises whether on paid admission tickets, complimentary tickets or passes;

b. **"Cost"** means the total cost to the Named Insured with respect to operations performed by the Named Insured during the policy period

## OTHER CONDITIONS Applicable To Section II Coverages—Basic
### B—DEFINITIONS (continued)

and equipment furnished, used or delivered for use in the execution of such work, whether furnished by the owner, contractor or sub-contractor, including all fees, allowances, bonuses or commissions made, paid or due;

c. **"Receipts"** means the gross amount of money charged by the Named Insured for such operations by the Named Insured or by others during the policy period as are rated on a receipts basis other than receipts from telecasting, broadcasting or motion pictures, and includes taxes other than taxes which the Named Insured collects as a separate item and remits directly to a governmental division;

d. **"Remuneration"** means the entire remuneration earned during the policy

period by proprietors and by all employees of the Named Insured other than chauffeurs (except operators of mobile equipment) and aircraft pilots and co-pilots, subject to any overtime earnings or limitation of remuneration rule applicable in accordance with the manuals in use by the Company;

e. **"Sales"** means the gross amount of money charged by the Named Insured or by others trading under his name for all goods and products sold or distributed during the policy period and charged during the policy period for installation, servicing or repair, and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division.

## C—WHEN LOSS OCCURS

**Under Section II Coverages A and B**

### 1. Limits of Liability

a. Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain personal injury or property damage, or (3) claims made or suits brought on account of personal injury or property damage, the Company's limit of liability for all damages arising out of personal injury or property damage, or any combination thereof, as the result of any one occurrence shall be only for the amount stated in the Declarations under Section II Coverages A and B as applicable to "each occurrence."

b. Subject to the above provisions respecting "each occurrence" the total liability of the Company for all damages because of all personal injury or property damage included within (1) the completed operations and (2) the products hazard, or any combination thereof shall not exceed the limit of liability stated in the Declarations under Section II Coverages A and B as "aggregate." If no limit of liability is stated as applying to "aggregate," the limit shown as applying to "each occurrence" shall also apply as the aggregate limit of liability.

c. Aggregate limits of liability stated in the Declarations shall apply separately to each annual period, commencing with policy inception.

d. For the purpose of determining the limit of the Company's liability, property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

### 2. Insured's Duties In The Event Of Occurrence, Claim, Or Suit:

a. Give written notice of the occurrence to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place, and circumstances thereof, and the names and addresses of the injured and of available witnesses.

b. If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons, or other process received by him or his representative.

c. Cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of personal injury or property damage with respect to which insurance is afforded under this policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

### 3. Arbitration

With respect to the insurance provided for assumed liability, the Company shall be entitled to exercise all of the Insured's rights in the choice of arbitrators and in the conduct of arbitration proceedings.

### 4. Other Insurance

The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the Insured has other insurance which is stated to be applicable to the loss of an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the following applicable contribution provision:

a. **Continuation by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

b. **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

### 5. Suit Or Action Against The Company

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

## D—FINANCIAL RESPONSIBILITY—PREMIUM

**Under Section II Coverages A and B**

### 1. Financial Responsibility

When this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such insurance as is afforded by this policy for personal injury liability or for property damage liability shall comply with the provisions of such law which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use during the policy period of any automobile insured hereunder, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The Insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

### 2. Premium

a. The policy premium shown in the Declarations contains premium for insurance under Coverage A and B including such estimated advance

premium as may be required and based upon hazards existing at the inception date of this policy. Any estimated advance premium shall be credited to the amount of earned premium due and determined at time of audit.

b. At each annual anniversary or upon termination of this policy, the earned premium shall be computed in accordance with the Company's rules, rates, rating plans, and premiums applicable to this insurance, except that building alterations and new construction shall be included only if the cost exceeds $50,000. If the total earned premium exceeds the deposit premium paid, the Named Insured shall pay the excess to the Company; if less, the Company shall return to the Named Insured the unearned portion paid by the Named Insured.

c. The Named Insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

K-1483a

## GENERAL CONDITIONS

### Applicable To Section I and II Coverages

**A. Premium**

**1. Annual Installments For Three Year Policy**

If the premium for this policy is made payable in annual installments in consideration of an increase in premium and the Insured is in default in the payment of any installment, the amount previously paid shall be regarded as having been earned by this Company and this policy may then be cancelled in accordance with its terms.

**2. Annual Rating for Continuous Policy**

If this policy is written under the Annual Payment of Premium Plan it shall not terminate until cancelled by the Insured or the Company. The premium hereunder shall be payable annually in advance. The first annual premium is set forth in the Declarations and becomes due and payable on the inception date of this policy. The premium for each successive annual period shall be computed by the Company based upon current conditions and information submitted by the Named Insured and becomes due and payable on the anniversary date.

**3. One-Year Continuable Policy**

If this policy is written for a term of one year, the premium hereunder shall be payable as set forth in the Declarations. Subject to the consent of the Company, this policy may be renewed in accordance with the then current rates, rules and forms of the Company for successive one-year terms by payment of the required premium for each successive term. If the Company does not consent to a renewal, the policy shall terminate at the end of its term.

**B. Time Of Attachment**

Except as herein provided, this policy shall be effective and shall terminate at the time specified in the Declarations.

If coverage in this policy replaces coverage which terminates at 12:01 A.M., this policy shall be construed to attach at 12:01 A.M. Standard Time at the Named Insured's principal place of business stated in the Declarations with respect to such replaced coverages only, instead of at noon Standard Time.

To the extent that the insurance afforded by this policy is also provided by other insurance terminating at Noon on the inception date of this policy, insurance under this policy shall not become effective until such other insurance has terminated.

**C. Inspection and Audit**

The Company shall be permitted but not obligated to inspect the Named Insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property or operations are safe or healthful, or in compliance with any law, rule, or regulation.

The Company may examine and audit the Named Insured's books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**D. Subrogation**

In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

**E. Misrepresentation and Fraud**

This entire policy shall be void if the Insured has concealed or misrepresented, in writing or otherwise, any material facts or circumstances concerning this insurance or the subject thereof, or if the Insured shall make any attempt to defraud the Company either before or after loss. Wilful under-reporting of premium base shall be construed as an attempt to defraud the Company.

**F. Conformity With Statute**

The terms of this policy and forms attached hereto which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes.

**G. Assignment**

Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; if, however, the Named Insured shall die, such insurance as is afforded by this policy shall apply (a) to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his duties as such, and (b) with respect to the property of the Named Insured, to the person having proper temporary custody thereof, as Insured, but only until the appointment and qualification of the legal representative.

**H. Liberalization**

If during the period that insurance is in force under this policy, or within 45 days prior to the inception date thereof, on behalf of this Company there be filed with and approved or accepted by the insurance supervisory authorities in conformity with law, any forms, endorsements, rules, or regulations by which the insurance provided under this policy could be extended or broadened, without additional premium charge, by endorsement or substitution of form, then such extended or broadened insurance shall inure to the benefit of the Insured as though such endorsement or substitution of form had been made.

**I. Dividend Provision (Only when Pacific Employers Insurance Company is the insuring company)**

**1. Applicable Except In The States Of New York and Virginia**

The Named Insured shall be entitled to participate in the distribution of the surplus of the Company, as determined by its board of directors from time to time.

**2. Applicable In The State Of New York**

The Insured shall participate in the earnings of the Company, to such extent and upon such conditions as shall be determined by the board of directors of the Company in accordance with law and as made applicable to this policy, provided the Insured shall have complied with all of the terms of this policy with respect to the payment of premium.

**3. Applicable In The State Of Virginia**

This policy shall participate in profits as apportioned by the directors.

**J. Cancellation**

This policy may be cancelled at any time at the request of the Insured in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this Company by giving to the Insured and to any Mortgagee designated in this policy a 10 days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium, if not tendered, will be refunded on demand but payment or tender of unearned premium shall not be a condition of cancellation.

If the policy covers more than one Named Insured, cancellation may be effected by the first of such Named Insureds for the account of all Named Insureds; notice of cancellation by the Company to such first Named Insured shall be deemed notice to all Insureds and payment of any unearned premium to such first Named Insured shall be for the account of all interests therein.

**K. Changes**

Notice to any agent or knowledge possessed by any agent or any other person shall not effect a waiver or a change in any part of this insurance or estop the Company from asserting any right under the terms of this insurance, nor shall the terms of this insurance be waived or changed, except by endorsement issued to form a part of this policy.

IF OTHER KINDS OF INSURANCE PERTAINING TO LEGAL LIABILITY ARE ADDED HERETO AS COVERAGE PARTS, INCLUDING ENDORSEMENTS, THE FOLLOWING LEGAL LIABILITY CONDITIONS APPLICABLE UNDER SECTION II OF THIS POLICY SHALL ALSO APPLY TO SUCH COVERAGE PARTS EXCEPT AS MODIFIED THEREIN.

| | | |
|---|---|---|
| Assignment | Inspection And Audit | Other Insurance |
| Cancellation | Insured's Duties In Case Of Injury, | Premium |
| Changes | Occurrence, Claim, Or Suit | Subrogation |
| Conformity With Statute | Liberalization | Suit Or Action Against |
| Definitions | Misrepresentation And Fraud | Company |
| Financial Responsibility | Nuclear Energy Liability Exclusion | Supplementary Payments |

KK-4C46   Ptd. in U.S.A.

## OTHER CONDITIONS Applicable To Section II Coverages—Basic
### A—EXCLUSIONS

**Under Section II, insurance shall not apply under Coverages A and B with respect to:**

1.  a. **Liability** assumed by the Insured under any contract or agreement except a contract as defined herein; but this exclusion does not apply to a warranty of fitness or quality of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner;

    b. **Personal injury or property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of
    (1) Any automobile or aircraft owned or operated by or rented or loaned to any Insured, or
    (2) Any other automobile or aircraft operated by any person in the course of his employment by any Insured;
    but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the Named Insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to any Insured, or to liability assumed by the Insured under a contract as defined herein;

    c. **Personal injury or property damage** arising out of (1) the ownership, maintenance, operation, use, loading, or unloading of any mobile equipment while being used in any pre-arranged or organized racing, speed, or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity, or (2) the operation or use of any snowmobile or trailer designed for use therewith;

    d. **Personal injury or property damage** arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to any Insured; but this exclusion does not apply to liability assumed by the Insured under a contract as defined herein;

    e. **Personal injury or property damage** arising out of the ownership, maintenance, operation, use, loading, or unloading of (1) any watercraft owned or operated by or rented or loaned to any Insured or (2) any other watercraft operated by any person in the course of his employment by any Insured. This exclusion does not apply to watercraft while ashore on premises owned by, rented to, or controlled by the Named Insured; to operations performed for the Named Insured by independent contractors; nor to liability assumed by the Insured under contract as defined herein;

    f. **Personal injury or property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

    g. **Personal injury or property damage** due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to
    (1) Liability assumed by the Insured under any contract or agreement, or
    (2) Expenses for first aid under the Supplementary Payments provision;

    h. **Personal injury or property damage** for which the Insured or his indemnity may be held liable (1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages; or (2) if not so engaged, as an owner or lessor of premises used for such purposes; if such liability is imposed (i) by, or because of the violation of any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverages, or (ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;
    but part (ii) of this exclusion does not apply with respect to liability of the Insured or his indemnities as an owner or lessor described in (2);

    i. Any **liability** for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

    j. **Personal injury** to any employee of the Insured arising out of and in the course of his employment by the Insured or to any obligation of the Insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the Insured under an incidental contract;

    k. **Property damage** to
    (1) Property owned or occupied by or rented to the Insured,
    (2) Property used by the Insured, or
    (3) Property in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control;
    but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the Named Insured;

    l. (reserved for future use)

    m. **Loss of use** of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement, or (2)

    the failure of the Named Insured's products or work performed by or on behalf of the Named Insured to meet the level of performance, quality, fitness, or durability warranted or represented by the Named Insured; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

    n. **Property damage** to the Named Insured's products arising out of such products or any part of such products;

    o. **Property damage** to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

    p. **Damages** claimed for the withdrawal, inspection, repair, replacement, or loss of the use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

    q. **Personal injury or property damage** due to:
    (1) The rendering of or failure to render
    (a) Medical, surgical, dental, X-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;
    (b) Any service or treatment conducive to health or of a professional nature;
    (c) Any cosmetic, tonsorial, massage, physiotherapy, chiropody, hearing aid, optical or optometrical services or treatments;
    (d) Any professional service;
    (2) The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or
    (3) The handling of or performing of autopsies on dead bodies;

    r. **Groups A, B, and C** of the definition of personal injury:
    (1) To liability assumed by the Insured under any contract or agreement;
    (2) To personal injury arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any Insured;
    (3) To personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the Named Insured;
    (4) To personal injury arising out of any publication or utterance described in Group B, if the first injurious publication or utterance of the same or similar material by or on behalf of the Named Insured was made prior to the effective date of this insurance;
    (5) To personal injury arising out of a publication or utterance described in Group B, concerning any organization or business enterprise, or its products or services, made by or at the direction of any Insured with knowledge of the falsity thereof.

2.  **The Nuclear Energy Liability Exclusion**
    a. **Under any Liability Coverage,** to bodily injury or property damage:
    (1) With respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or
    (2) Resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

    b. **Under any Medical Payments Coverage,** or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

    c. **Under any Liability Coverage,** to bodily injury or property damage resulting from the hazardous properties of nuclear material, if:
    (1) The nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured, or (2) has been discharged or dispersed therefrom;
    (2) The nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
    (3) The bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions, or Canada, this

K-1483a

# INA

## BAILEES CUSTOMERS INSURANCE COMPREHENSIVE FORM     INLAND MARINE

Attached to and forming part of Policy No. __DLP DO 52 22 24 2_____ of the _____

__PACIFIC EMPLOYERS_____ Insurance Company _____

1. This policy applies only to CUSTOMERS' PROPERTY, which is defined as personal property of others accepted by the Insured for the performance of work or service thereon. Coverage applies while such property is on the premises described below, or while in transit at the risk of the insured.

2. LIMITS OF LIABILITY: With Respect to Customers' Property

The Limit of Liability In Any One Occurrence Shall Be

At __BLANKET ALL LOCATIONS_____ $ __500,000__

$ _____

$ _____

$ _____

At any other location_____ $ __N/A__

On any one vehicle_____ $ __10,000__

In no event shall the Company's liability under this form exceed $__500,000__ in any one disaster either in case of partial or total loss or salvage charges, or any other charges or expenses or all combined.

3. This policy does not insure against loss or damage:
   a. To furs or fur garments while in storage or for which a storage charge is made, nor for storage charges thereon that are accrued but uncollectible due to loss or damage. This exclusion shall not apply to property while in transit, during processing; or held by the Insured without storage instructions from the owner;
   b. To shipments by mail or parcel post;
   c. Caused by theft of property while being held on the Insured's vehicle over night unless resulting from forcible entry into or exit from (of which there shall be visible evidence) a locked building in which such vehicle is garaged.

4. This policy insures against all risks of direct physical loss or damage insured hereunder except as hereinafter excluded.

5. This policy does not insure against physical loss or damage directly caused by:
   a. Wear, tear, gradual deterioration, moth, vermin, inherent vice, or latent defect;
   b. Processing or any work upon the property except loss or damage caused by an ensuing fire or explosion;
   c. Unexplained or mysterious disappearance, or shortage disclosed on taking inventory;
   d. Delay, loss of use and loss of market whether caused by a peril insured against or otherwise;
   e. Neglect of the Insured to use all reasonable means to save and preserve the property at and after any disaster insured against or when the property is endangered by fire in neighboring premises, or when the insured has notice of any impending disaster;
   f. Infidelity of insured's employees or persons to whom the insured's property is entrusted;
   g. Backing up on sewer or drains; seepage, leakage or influx of water immediately derived from natural sources into basements;
   h. Loss or damage directly or indirectly caused by or resulting from:
      1.) Hostile or warlike action in the time of peace or war, including action in hindering, combating or defending against an actual, impending, or expected attack by (a) any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval, or air forces; (b) military, naval, or air forces; or (c) an agent of any such government, power, authority, or forces, it being understood that any discharge, explosion, or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such a government, power, authority, or forces;
      2.) Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence;
      3.) Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by a peril insured against in this policy. Nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, is not "explosion" or "smoke". Subject however to the foregoing and all provisions of this policy, direct loss by "fire" resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy;
      4.) Seizure or destruction under quarantine or customs regulations; confiscation by or destruction by order of any government or public authority, except destruction by order of public authority to prevent spread of fire or explosion; or risks of contraband or illegal trade;

6. This Company shall not be liable beyond the actual cash value of the property damaged or destroyed at the time of loss, with deduction for depreciation, and no to exceed the applicable limit of liabilities herein nor the amount which it would cost to repair or replace such property with material of like kind and quality within a reasonable time after such loss.

7. The insured agrees that all thefts for which claims are made under this policy will be reported promptly to the Police.

8. The insured agrees to keep an accurate record of the values at each location insured hereunder. The Company, through its authorized representatives and at all reasonable times, shall have access to the insured's books and records to determine the actual earned premium due.

9. It is understood and agreed that each claim for physical loss or damage shall be adjusted separately and from the amount of each such adjusted claim the sum of $ __500__ shall be deducted.

Authorized Agent

BB-8G79   Ptd. in U.S.A.



### NEON SIGN ENDORSEMENT
### Applicable Under Section I

| | |
|---|---|
| **Named Insured** | |
| **Effective** | **Policy No.** |
| **Issued by (Name of Insurance Company)** | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

With respect to the insurance provided by this endorsement, all conditions applicable to Section I of the policy to which this endorsement is attached are deleted, except the GENERAL CONDITIONS at the end of the policy. The following additional provisions shall apply:

**A. This Endorsement Insures Against** all risks of physical loss of or damage to the neon, automatic, or mechanical electric signs described in the Declarations, except as hereafter provided.

**B. This Endorsement Does Not Insure Against:**

1. Loss or damage caused by wear and tear or gradual deterioration;

2. Loss or damage caused by faulty manufacture, installation or occasioned by the inherent character of the insured property;

3. Loss or damage caused by breakage during installation, repairing or dismantling, nor breakage during transportation unless caused by fire, lightning, collision, derailment or overturning of vehicle;

4. Mechanical breakdown; against loss or damage to electric apparatus caused by electricity, other than lightning, unless fire ensues and then only for loss or damage by such ensuing fire;

5. Loss or damage caused by the neglect of the insured to use all reasonable means to save and preserve the property at and after any disaster to which this insurance applies;

6. Loss or damage caused by dampness of atmosphere or extremes of temperature;

7. Loss or damage caused by or resulting from nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the perils insured against in this endorsement; however, subject to the foregoing and all provisions of this endorsement, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this endorsement.

8. Loss or damage caused by or resulting from:

   a. Hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack, (1) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval, or air forces; or (2) by military, naval, or air forces; or (3) by an agent of any such government, power, authority or forces;

   b. Any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

   c. Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or Customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

**C.** The limit of the Company's liability for damage shall not exceed the actual cash value of the property at time of loss, nor what it would then cost to repair or replace the damaged property with other of like kind and quality, nor the applicable limit of liability stated in the Declarations.

**D.** Each claim for loss or damage separately occurring shall be adjusted separately and from the amount of each such adjusted claim there shall be deducted a sum equivalent to 5% of the amount of insurance on the insured item lost or damaged, but not less than $10.00 nor more than $100.00 any one item.

**E.** This Company shall not be liable in the event of loss or damage for any greater proportion of such loss or damage than the amount hereby insured bears to the actual value of the property insured at the time when such loss or damage shall happen. If this endorsement covers two or more items, this condition to apply to each item separately.

**F. Other Insurance:** The Company shall not be liable for more than the excess of this insurance over any other valid and collectible insurance covering the property insured hereunder.

Authorized Agent

KK-6777  Ptd. in U.S.A. 1/76



# COMPREHENSIVE CRIME COVERAGE

### Applicable Under Section I

| | |
|---|---|
| **Named Insured** | |
| **Effective** | **Policy No.** |
| **Issued by (Name of Insurance Company)** | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

None of the conditions or limits of liability in the policy to which this endorsement is attached shall apply to the insurance provided hereunder, except the Cancelation condition.

The Insured by the acceptance of this endorsement gives notice to the Company terminating or canceling the prior bond(s) or policy(ies) No.(s) specified in the Declarations, such termination or cancelation to

be effective as of the time this endorsement becomes effective.

The Company, in consideration of the premium, and subject to the Declarations made a part hereof, the General Agreements, Conditions and Limitations and other terms of this endorsement, agrees with the Insured, in accordance with such of the Coverage(s) hereof as are specifically designated in the Declarations for this endorsement, to pay the Insured for:

## INSURING AGREEMENTS

### Employee Dishonesty Coverage—Commercial Blanket

**IA.** Loss of Money, Securities and other property which the Insured shall sustain, to an amount not exceeding in the aggregate the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement IA through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others.

### Employee Dishonesty Coverage—Blanket Honesty

**IB.** Loss of Money, Securities and other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others, the amount of insurance on each of such Employees being the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement IB, except that in the event of loss or losses caused by (a) two employees acting in collusion, the limit of aggregate liability of the Underwriter shall be the aggregate amount applicable to both employees but not in excess of $250,000 or the amount applicable to a single employee if such amount exceeds $250,000; (b) more than two employees acting in collusion, the limit of aggregate liability of the Underwriter shall be the aggregate amount applicable to all such employees but not in excess of $500,000 or the amount applicable to a single employee if such amount exceeds $500,000.

### Employee Dishonesty Coverage—Blanket Position

**IC.** Loss of Money, Securities, and other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others, the amount of insurance on each of such Employees being the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement IC.

### Loss Inside the Premises Coverage

**II.** Loss of Money and Securities by the actual destruction, disappearance or wrongful abstraction thereof within the Premises or within any Banking Premises or similar recognized places of safe deposit.

Loss of (a) other property by Safe Burglary or Robbery within the Premises or attempt thereat, and (b) a locked cash drawer, cash box or cash register by felonious entry into such container within the Premises or attempt thereat or by felonious abstraction of such container from within the Premises or attempt thereat.

Damage to the Premises by such Safe Burglary, Robbery or felonious abstraction, or by or following burglarious entry into the Premises or attempt thereat, provided with respect to damage to the Premises the Insured is the owner thereof or is liable for such damage.

### Loss Outside the Premises Coverage

**III.** Loss of Money and Securities by the actual destruction, disappearance or wrongful abstraction thereof outside the Premises while being conveyed by a Messenger or any armored motor vehicle company, or while within the living quarters in the home of any Messenger.

Loss of other property by Robbery or attempt thereat outside the Premises while being conveyed by a Messenger or any armored motor vehicle company, or by theft while within the living quarters in the home of any Messenger.

### Money Orders and Counterfeit Paper Currency Coverage

**IV.** Loss due to the acceptance in good faith, in exchange for merchandise, Money or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company, if such money order is not paid upon presentation, or due to the acceptance in good faith in the regular course of business of counterfeit United States or Canadian paper currency.

### Depositors Forgery Coverage

**V.** Loss which the Insured or any bank which is included in the Insured's proof of loss and in which the Insured carries a checking or savings account, as their respective interests may appear, shall sustain through forgery or alteration of, on or in any check, draft, promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain in money, made or drawn by or drawn upon the Insured, or made or drawn by one acting as agent of the Insured, or purporting to have been made or drawn as hereinbefore set forth, including

   (a) any check or draft made or drawn in the name of the Insured, payable to a fictitious payee and endorsed in the name of such fictitious payee;

   (b) any check or draft procured in a face to face transaction with the Insured, or with one acting as agent of the Insured, by any-one impersonating another and made or drawn payable to the one so impersonated or made or drawn payable to the one so impersonated endorsed by anyone other than the one so impersonated; and

   (c) any payroll check, payroll draft or payroll order made or drawn by the Insured, payable to bearer as well as to a named payee and endorsed by anyone other than the named payee without authority from such payee;

whether or not any endorsement mentioned in (a), (b) or (c) be a forgery within the law of the place controlling the construction thereof.

Mechanically reproduced facsimile signatures are treated the same as handwritten signatures.

The Insured shall be entitled to priority of payment over loss sustained by any bank aforesaid. Loss under this Insuring Agreement, whether sustained by the Insured or such bank, shall be paid directly to the Insured in its own name, except in cases where such bank shall have already fully reimbursed the Insured for such loss. The liability of the Company to such bank for such loss shall be a part of and not in addition to the amount of insurance applicable to the Insured's office to which such loss would have been allocated had such loss been sustained by the Insured.

If the Insured or such bank shall refuse to pay any of the foregoing instruments made or drawn as hereinbefore set forth, alleging that such instruments are forged or altered, and such refusal shall result in suit being brought against the Insured or such bank to enforce such payment and the Company shall give its written consent to the defense of such suit, then any reasonable attorneys' fees, court costs, or similar legal expenses incurred and paid by the Insured or such bank in such defense shall be construed to be a loss under this Insuring Agreement and the liability of the Company for such loss shall be in addition to any other liability under this Insuring Agreement.

(1)

# DEDUCTIBLES

The following deductible(s) shall apply only as designated in the Declarations and only to the Coverage(s) designated.

### Deductible — Insuring Agreement IA

The Company shall not be liable under Insuring Agreement IA on account of loss through acts or defaults committed at any time, whether before or after this endorsement is effective, by any Employee or in which such Employee is concerned or implicated, unless the amount of such loss, after deducting the net amount of all reimbursement and recovery, including any cash deposit taken by the Insured, obtained or made by the Insured, other than from any bond or policy of insurance issued by a surety or insurance company and covering such loss, or by the Company on account thereof prior to payment by the Company of such loss, shall be in excess of the deductible amount specified in the Declarations, and then for such excess only, but in no event for more than the amount of insurance carried under Insuring Agreement IA on such loss.

### Deductible — Insuring Agreement IB

The Company shall not be liable under Insuring Agreement IB on account of loss through acts or defaults committed at any time, whether before or after this endorsement is effective, by any Employee, unless the amount of such loss, after deducting the net amount of all reimbursement and recovery, including any cash deposit taken by the Insured, obtained or made by the Insured, other than from any bond or policy of insurance issued by a surety or insurance company and covering such loss, or by the Company on account thereof prior to payment by the Company of such loss, shall be in excess of the deductible amount specified in the Declarations, and then for such excess only, but in no event for more than the amount of insurance carried on such Employee under Insuring Agreement IB. If more than one Employee is concerned or implicated in such loss, such deductible amount shall apply to each Employee so concerned or implicated.

### Deductible — Insuring Agreement II

The Company shall not be liable under Insuring Agreement II on account of any loss, except to the extent such loss is in excess of the deductible amount specified in the Declarations, with the insurance then applying to such excess only.

### Deductible — Insuring Agreement III

The Company shall not be liable under Insuring Agreement III on account of any loss, except to the extent such loss is in excess of the deductible amount specified in the Declarations, with the insurance then applying to such excess only.

### Deductible — Insuring Agreement V

The Company shall not be liable under Insuring Agreement V on account of loss through forgery or alteration of, on or in any instrument mentioned in such Insuring Agreement unless the amount of such instrument shall be in excess of the deductible amount specified in the Declarations, and then for such excess only.

In no event shall the Company be liable under any Insuring Agreement as modified above, for more than the amount specified in the Table of Limits of Liability as applicable to such Insuring Agreement subject, however, to Section 11.

The Insured shall, within the time and in the manner prescribed in this endorsement, give the Company notice of any loss of the kind covered by any Insuring Agreement to which a deductible applies, whether or not the Company is liable therefor or for any part thereof, and upon the request of the Company shall file with it a brief statement giving the particulars concerning such loss.

# GENERAL AGREEMENTS

### Consolidation-Merger

A. If, through consolidation or merger with, or purchase of assets of, some other concern, any persons shall become Employees or if the Insured shall thereby acquire the use and control of any additional Premises, the insurance afforded by this endorsement shall also apply as respects such Employees and Premises, provided the Insured shall give the Company written notice thereof within thirty days thereafter and shall pay the Company an additional premium computed pro rata from the date of such consolidation, merger or purchase to the end of the current premium period.

### Joint Insured

B. If more than one Insured is covered under this endorsement, the Insured first named shall act for itself and for every other Insured for all purposes of this endorsement. Knowledge possessed or discovery made by any Insured or by any partner or officer thereof shall, for the purposes of Sections 7, 8 and 15, constitute knowledge possessed or discovery made by every Insured. Cancellation of the Insurance hereunder as respects any Employee as provided in Section 15 shall apply to every Insured. If, prior to the cancelation or termination of this endorsement, this endorsement or any Insuring Agreement hereof is canceled or terminated as to any Insured, there shall be no liability for any loss sustained by such Insured unless discovered within one year from the date of such cancelation or termination. Payment by the Company to the Insured first named of any loss under this endorsement shall fully release the Company on account of such loss. If the Insured first named ceases for any reason to be covered under this endorsement, then the Insured next named shall thereafter be considered as the Insured first named for all purposes of this endorsement.

### Loss Under Prior Bond or Policy

C. If the coverage of an Insuring Agreement of this endorsement other than Insuring Agreement V, is substituted for any prior bond or policy of insurance carried by the Insured or by any predecessor in interest of the Insured, which prior bond or policy is terminated, canceled or allowed to expire as of the time of such substitution, the Company agrees that such Insuring Agreement applies to loss which is discovered as provided in Section 1 of the Conditions and Limitations and which would have been recoverable by the Insured or such predecessor under such prior bond or policy except for the fact that the time within which to discover loss thereunder had expired; provided:

(1) the insurance under this General Agreement C shall be a part of and not in addition to the amount of insurance afforded by the applicable Insuring Agreement of this endorsement;

(2) such loss would have been covered under such Insuring Agreement had such Insuring Agreement with its agreements, conditions and limitations as of the time of such substitution been in force when the acts or events causing such loss were committed or occurred; and

(3) recovery under such Insuring Agreement on Account of such loss shall in no event exceed the amount which would have been recoverable under such Insuring Agreement in the amount for which it is written as of the time of such substitution, had such Insuring Agreement been in force when such acts or events were committed or occurred, or the amount which would have been recoverable under such prior bond or policy had such prior bond or policy continued in force until the discovery of such loss, if the latter amount be smaller.

Insuring Agreement V shall also cover loss sustained by the Insured at any time before the termination or cancelation of Insuring Agreement V, which would have been recoverable under the coverage of some similar form of forgery insurance (exclusive of fidelity insurance) carried by the Insured or any predecessor in interest of the Insured, had such prior forgery insurance given all of the coverage afforded under Insuring Agreement V; provided with respect to loss covered by this paragraph:

(a) the coverage of Insuring Agreement V is substituted on or after the date hereof for such prior forgery coverage and the Insured or such predecessor, as the case may be, carried such prior forgery coverage on the office at which such loss was sustained continuously from the time such loss was sustained to the date the coverage of Insuring Agreement V was substituted therefor;

(b) at the time of discovery of such loss, the period for discovery of loss under all such prior forgery insurance has expired; and

(c) if the amount of insurance carried under Insuring Agreement V applicable to the office at which such loss is sustained is larger than the amount applicable to such office under such prior forgery insurance, and in force at the time such loss is sustained, then liability hereunder for such loss shall not exceed the smaller amount.

# THE FOREGOING INSURING AGREEMENTS, GENERAL AGREEMENTS AND DEDUCTIBLES ARE SUBJECT TO THE FOLLOWING CONDITIONS AND LIMITATIONS:

### Effective Period, Territory, Discovery

Section 1. Loss is covered under this endorsement only if discovered not later than one year from the end of the Effective Period of this endorsement.

Subject to General Agreement C:

(a) this endorsement, except under Insuring Agreements IA, IB, IC and V, applies only to loss which occurs during the Effective Period of this endorsement within any of the States of the United States of America, the District of Columbia, Virgin Islands, Puerto Rico, Canal Zone or Canada;

(b) Insuring Agreements IA, IB, and IC apply only to loss sustained by the Insured through fraudulent or dishonest acts committed during the Effective Period of this endorsement by any of the Employees engaged in the regular service of the Insured within the territory designated above or while such Employees are elsewhere for a limited period;

(c) Insuring Agreement V applies only to loss sustained during the Effective Period of this endorsement.

## CONDITIONS AND LIMITATIONS—continued

**Exclusions**

**Section 2.** This endorsement does not apply:

(a) to loss due to any fraudulent, dishonest or criminal act by any Insured or a partner therein, whether acting alone or in collusion with others;

(b) under Insuring Agreement IA, IB, IC to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of Money, Securities or other property which the Insured can prove, through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees;

(c) under Insuring Agreements II and III, to loss due to any fraudulent, dishonest or criminal act by an Employee, director, trustee or authorized representative of any Insured, while working or otherwise and whether acting alone or in collusion with others; provided, this Exclusion does not apply to Safe Burglary or Robbery or attempt thereat;

(d) under Insuring Agreements II and III, to loss due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(e) under Insuring Agreements II and III, to loss (1) due to the giving or surrendering of Money or Securities in any exchange or purchase; (2) due to accounting or arithmetical errors or omissions; or (3) of manuscripts, books of account or records;

(f) under Insuring Agreement II, to loss of Money contained in coin operated amusement devices or vending machines, unless the amount of Money deposited within the device or machine is recorded by a continuous recording instrument therein;

(g) under Insuring Agreement III, to loss of insured property while in the custody of any armored motor vehicle company, unless such loss is in excess of the amount recovered or received by the Insured under (1) the Insured's contract with said armored motor vehicle company, (2) insurance carried by said armored motor vehicle company for the benefit of users of its service, and (3) all other insurance and indemnity in force in whatsoever form carried by or for the benefit of users of said armored motor vehicle company's service, and then this endorsement shall cover only such excess;

(h) under Insuring Agreements II and III, to loss due to nuclear reaction, nuclear radiation or radioactive contamination, or to any act or condition incident to any of the foregoing;

(i) under Insuring Agreement II, to loss, other than to Money, Securities, a safe or vault, by fire whether or not such fire is caused by, contributed to by or arises out of the occurrence of a hazard insured against.

**Definitions**

**Section 3.** The following terms, as used in this endorsement shall have the respective meanings stated in this Section:

"**Money**" means currency, coins, bank notes and bullion; and travelers checks, register checks and money orders held for sale to the public.

"**Securities**" means all negotiable and non-negotiable instruments or contracts representing either Money or other property and includes revenue and other stamps in current use, tokens and tickets, but does not include Money.

"**Employee**" means any natural person (except a director or trustee of the Insured, if a corporation, who is not also an officer or employee thereof in some other capacity) while in the regular service of the Insured in the ordinary course of the Insured's business during the Effective Period of this endorsement and whom the Insured compensates by salary, wages or commissions and has the right to govern and direct in the performance of such service, but does not mean any broker, factor, commission merchant, consignee, contractor or other agent or representative of the same general character. As applied to loss under Insuring Agreement IA, IB, or IC the above words "while in the regular service of the Insured" shall include the first 30 days thereafter; subject, however, to Section 15 and the Cancelation condition in the policy.

"**Premises**" means the interior of that portion of any building which is occupied by the Insured in conducting its business.

"**Banking Premises**" means the interior of that portion of any building which is occupied by a banking institution in conducting its business.

"**Messenger**" means the Insured or a partner of the Insured or any Employee who is duly authorized by the Insured to have the care and custody of the insured property outside the Premises.

"**Custodian**" means the Insured or a partner of the Insured or any Employee who is duly authorized by the Insured to have the care and custody of the insured property within the Premises, excluding any person while acting as a watchman, porter or janitor.

"**Robbery**" means the taking of insured property (1) by violence inflicted upon a Messenger or a Custodian; (2) by putting him in fear of violence; (3) by any other overt felonious act committed in his presence and of which he was actually cognizant, provided such other act

is not committed by a partner or Employee of the Insured; (4) from the person or direct care and custody of a Messenger or Custodian who has been killed or rendered unconscious; or (5) under Insuring Agreement II (a) from within the Premises by means of compelling a Messenger or Custodian by violence or threat of violence while outside the Premises to admit a person into the Premises or to furnish him with means of ingress into the Premises, or (b) from a showcase or show window within the Premises while regularly open for business, by a person who has broken the glass thereof from outside the Premises.

"**Safe Burglary**" means (1) the felonious abstraction of insured property from within a vault or safe, the door of which is equipped with a combination lock, located within the Premises by a person making a felonious entry into such vault or such safe and any vault containing the safe, when all doors thereof are duly closed and locked by all combination locks thereon, provided such entry shall be made by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon the exterior of (a) all of said doors of such vault or such safe and any vault containing the safe, if entry is made through such doors, or (b) the top, bottom or walls of such vault or such safe and any vault containing the safe through which entry is made, if not made through such doors, or (2) the felonious abstraction of such safe from within the Premises.

"**Loss**", except under Insuring Agreements IA, IB, IC and V, includes damage.

**Loss Caused by Unidentifiable Employee**

**Section 4.** If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees covered under Insuring Agreement IA, IB or IC, as the case may be, and the Insured shall be unable to designate the specific Employee or Employees causing such loss, the Insured shall nevertheless have the benefit of such applicable Insuring Agreement subject to the provisions of Section 2 (b) of this endorsement provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees, and provided, further, that the aggregate liability of the Company for any such loss shall not exceed the Limit of Liability applicable to such Insuring Agreement.

**Ownership of Property; Interests Covered**

**Section 5.** The insured property may be owned by the Insured, or held by the Insured in any capacity whether or not the Insured is liable for the loss thereof, or may be property as respects which the Insured is legally liable; provided, Insuring Agreements II, III and IV apply only to the interest of the Insured in such property, including the Insured's liability to others, and do not apply to the interest of any other person or organization in any of said property unless included in the Insured's proof of loss, in which event the third paragraph of Section 8 is applicable to them.

**Books and Records**

**Section 6.** The Insured shall keep records of all the insured property in such manner that the Company can accurately determine therefrom the amount of loss.

**Prior Fraud, Dishonesty or Cancelation**

**Section 7.** The coverage of Insuring Agreement IA, IB, or IC shall not apply to any Employee from and after the time that the Insured or any partner or officer thereof not in collusion with such Employee shall have knowledge or information that such Employee has committed any fraudulent or dishonest act in the service of the Insured or otherwise, whether such act be committed before or after the date of employment by the Insured.

If, prior to the issuance of this endorsement, any fidelity insurance in favor of the Insured or any predecessor in interest of the Insured and covering one or more of the Insured's Employees shall have been canceled as to any of such Employees by reason of the giving of written notice of cancelation by the insurer issuing such fidelity insurance whether the Company or not, and if such Employees shall not have been reinstated under the coverage of said fidelity insurance or superseding fidelity insurance, the Company shall not be liable on account of such Employees unless the Company shall agree in writing to include such Employees within the coverage of Insuring Agreement IA, IB, or IC as the case may be.

**Loss; Notice; Proof; Action Against Company**

**Section 8.** Upon knowledge or discovery of loss or of an occurrence which may give rise to a claim for loss, the Insured shall: (1) give notice thereof as soon as practicable to the Company or any of its authorized agents and, except under Insuring Agreements IA, IB, or IC and V, also to the police if the loss is due to a violation of law; (b) file detailed proof of loss, duly sworn to, with the Company within four months after the discovery of loss.

Proof of loss under Insuring Agreement V shall include the instrument which is the basis of claim for such loss, or if it shall be impossible to file such instrument, the affidavit of the Insured or the Insured's bank of deposit setting forth the amount and cause of loss shall be accepted in lieu thereof.

Upon the Company's request, the Insured shall submit to examination by the Company, subscribe the same, under oath if required, and produce for the Company's examination all pertinent records, all at such reasonable times and places as the Company shall designate, and

## CONDITIONS AND LIMITATIONS—continued

shall cooperate with the Company in all matters pertaining to loss or claims with respect thereto.

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this endorsement nor until ninety days after the required proofs of loss have been filed with the Company, nor at all unless commenced within two years from the date when the Insured discovers the loss. If any limitation of time for notice of loss or any legal proceeding herein contained is shorter than that permitted to be fixed by agreement under any statute controlling the construction of this endorsement the shortest permissible statutory limitation of time shall govern and shall supersede the time limitation herein stated.

### Valuation—Payment—Replacement

Section 9.  In no event shall the Company be liable as respects Securities for more than the actual cash value thereof at the close of business on the business day next preceding the day on which the loss was discovered, nor as respects other property, for more than the actual cash value thereof at the time of loss; provided, however, the actual cash value of such other property held by the Insured as a pledge, or as collateral for an advance or a loan, shall be deemed not to exceed the value of the property as determined and recorded by the Insured when making the advance or loan, nor, in the absence of such record, the unpaid portion of the advance or loan plus accrued interest thereon at legal rates.

The Company may, with the consent of the Insured, settle any claim for loss of property with the owner thereof. Any property for which the Company has made indemnification shall become the property of the Company.

In case of damage to the Premises or loss of property other than Securities, the Company shall not be liable for more than the actual cash value of such property, or for more than the actual cost of repairing such Premises or property or of replacing same with property or material of like quality and value. The Company may at its election, pay such actual cash value, or make such repairs or replacements. If the Company and the Insured cannot agree upon such cash value or such cost of repairs or replacements, such cash value or such cost shall be determined by arbitration.

### Recoveries

Section 10.  If the Insured shall sustain any loss covered by this endorsement to which a deductible amount applies and such loss exceeds the applicable amount of insurance hereunder plus such deductible amount, the Insured shall be entitled to all recoveries made after payment by the Company of loss covered by this endorsement (except from suretyship, insurance, re-insurance, security or indemnity taken by or for the benefit of the Company) by whomsoever made, less the actual cost of effecting such recoveries, until reimbursed for such excess loss; and any remainder, or, if there be no such excess loss, any such recoveries shall be applied first in reimbursement of the Company and thereafter in reimbursement of the Insured for that part of such loss within such deductible amount.

### Limits of Liability

Section 11.  Payment of loss under Insuring Agreement IA, IB, IC or V shall not reduce the Company's liability for other losses under the applicable Insuring Agreement whenever sustained. The Company's total liability (a) under Insuring Agreement IA for all loss caused by any Employee or in which such Employee is concerned or implicated, (b) under Insuring Agreement IB or IC as to each Employee or (c) under Insuring Agreement V for all loss by forgery or alteration committed by any person or in which such person is concerned or implicated, whether such forgery or alteration involves one or more instruments, is limited to the applicable amount of insurance specified in the Table of Limits of Liability or endorsement amendatory thereto. The liability of the Company for loss sustained by any or all of the Insured shall not exceed the amount for which the Company would be liable had all such loss been sustained by any one of the Insured.

Except under Insuring Agreements IA, IB, IC and V the applicable limit of liability stated in the Table of Limits of Liability of this endorsement is the total limit of the Company's liability with respect to all loss of property of one or more persons or organizations arising out of any one occurrence. All loss incidental to an actual or attempted fraudulent, dishonest or criminal act or series of related acts at the Premises, whether committed by one or more persons, shall be deemed to arise out of one occurrence.

Regardless of the number of years this endorsement shall continue in force and the number of premiums which shall be payable or paid, the limit of the Company's liability as specified in the Table of Limits of Liability of this endorsement shall not be cumulative from year to year or period to period.

### Limit of Liability under this Policy and Prior Insurance

Section 12.  This Section shall apply only to Insuring Agreements IA, IB, IC and V.

With respect to loss caused by any person (whether one of the Employees or not) or in which such person is concerned or implicated or which is chargeable to any Employee as provided in Section 4 and which occurs partly during the Effective Period of this endorsement and partly during the period of other bonds or policies issued by the Company to the Insured or to any predecessor in interest of the Insured and terminated or canceled or allowed to expire and in which the period for discovery has not expired at the time any such loss thereunder is discovered, the total liability of the Company under this endorsement and under such other bonds or policies shall not exceed, in the aggregate, the amount carried under the applicable Insuring Agreement of this endorsement on such loss or the amount available to the Insured under such other bonds or policies, as limited by the terms and conditions thereof, for any such loss, if the latter amount be the larger.

### Other Insurance

Section 13.  If there is available to the Insured any other insurance or indemnity covering any loss covered by Insuring Agreement IA, IB, IC or V the Company shall be liable hereunder only for that part of such loss which is in excess of the amount recoverable or recovered from such other insurance or indemnity, except that if such other insurance or indemnity is a bond or policy of fidelity insurance, any loss covered under both such fidelity insurance and Insuring Agreement V shall first be paid under Insuring Agreement V. Any loss covered under both Insuring Agreements IA, IB or IC and also under Insuring Agreement V shall first be paid under Insuring Agreement V and the excess, if any, shall be paid under Insuring Agreement IA, IB or IC, as the case may be. The Company waives any right of contribution which it may have against any forgery insurance carried by any depository bank which is indemnified under Insuring Agreement V.

Under any other Insuring Agreement, if there is any other valid and collectible insurance which would apply in the absence of such Insuring Agreement, the insurance under this endorsement shall apply only as excess insurance over such other insurance; provided, the insurance shall not apply (a) to property which is separately described and enumerated and specifically insured in whole or in part by any other insurance; or (b) to property otherwise insured unless such property is owned by the Insured.

### Subrogation

Section 14.  In the event of any payment under this endorsement the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatsoever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights.

### Cancelation as to Any Employee

Section 15.  Insuring Agreements IA, IB or IC shall be deemed canceled as to any Employee: (a) immediately upon discovery by the Insured, or by any partner or officer thereof not in collusion with such Employee, of any fraudulent or dishonest act on the part of such Employee; or (b) at noon, standard time as aforesaid, upon the effective date specified in a written notice mailed to the Insured. Such date shall be not less than fifteen days after the date of mailing. The mailing by the Company of notice as aforesaid to the Insured at the P.O. address shown in the policy to which this endorsement is attached shall be sufficient proof of notice. Delivery of such written notice by the Company shall be equivalent to mailing.

### No Benefit to Bailee

Section 16.  This Section shall apply only to Insuring Agreements II and III.

The insurance afforded by this endorsement shall not inure directly or indirectly to the benefit of any carrier or other bailee for hire.

### Assignment

Section 17.  Assignment of interest under this endorsement shall not bind the Company, until its consent is endorsed hereon; if, however, the Insured shall die, this endorsement shall cover the Insured's legal representative as Insured; provided that notice of cancelation addressed to the Insured named in the Declarations and mailed to the P.O. address shown in the policy to which this endorsement is attached shall be sufficient notice to effect cancelation of this endorsement.

### Changes

Section 18.  Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this endorsement or estop the Company from asserting any right under the terms of this endorsement, nor shall the terms of this endorsement be waived or changed, except by endorsement issued to form a part of this endorsement signed by an officer of the Company.

By acceptance of this endorsement the Insured agrees that it embodies all agreements existing between the Insured and the Company or any of its agents relating to this insurance.

_____

Authorized Agent



# COVERAGE C — SPECIFIC TYPES OF INCOME
### Applicable Under Section I

| Named Insured | |
|---|---|
| Effective | Policy No. |
| Issued by (Name of Insurance Company) | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

Subject to all conditions otherwise applicable to Coverage C of Section I, except as modified herein, Loss of Income coverage shall apply only to the specific type of income (Rents, Earnings or Tuitions) referred to in the declarations with the applicable Coverage C Limit of Liability.

Item 2. a. of the definition of "income" under Part D DEFINITIONS of Other Conditions Applicable to Section I Coverage on page 6, is deleted and replaced with the following:

a. "Rents" income means the sum of:

   (1) the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the insured, and

   (2) the amount of all charges which are the legal obligation of the tenants and which would otherwise be obligations of the insured, and

   (3) the fair rental value of any portion of said property which is occupied by the insured.

aa. "Earnings" income means the sum of:

   (1) Total net sales value of production,

   (2) Total net sales of merchandise which is not the product of the Insured's manufacturing or processing operations, and

   (3) Other income derived from operations of the Insured except the rental or lease of real property to others

Less the cost of:

   (4) Raw stock from which production is derived.

   (5) Supplies consumed in conversion of raw to finished stock or in supplying services sold by the Insured.

   (6) Merchandise sold, including packaging materials, which is not the product of Insured's manufacturing or processing operation, and

   (7) Services purchased (from other than employees) for resale which do not continue under contract.

aaa. "Tuitions" income means the sum of tuition, fees and other income from students, less the cost of merchandise sold and materials and supplies consumed in services sold to such students.

Authorized Agent



# MANDATORY CLARIFICATION ENDORSEMENT
## Applicable Under Section II

| Named Insured | |
|---|---|
| Effective | Policy Number |
| Issued By (Name of Insurance Company) | |

**The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.**

On the policy jacket under Section II Coverages — Legal Liability, the words

"caused by an occurrence during the policy period and within the policy territory,"

are amended to read

"to which this insurance applies, either of which occurs during the policy period within the policy territory, and caused by an occurrence as defined herein."

Authorized Agent

K-1966  Ptd. In U.S.A.



# EXTENDED LIABILITY COVERAGES
## Applicable Under Basic Section II

| Named Insured | |
|---|---|
| Effective | Policy Number |
| Issued By (Name of Insurance Company) | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

The Liability Insurance afforded under Section II of this policy is amended by addition of the following:

## I. BROAD FORM PROPERTY DAMAGE
### (Including Completed Operations)

The Property Damage Liability Coverage applies to property damage to property in the care, custody or control of the Insured and to property damage to work performed by or on behalf of the Named Insured, subject to the following additional provisions:

(A) Exclusion (1) below is added and Exclusions (k) and (o) of the policy are replaced by the following exclusions:

This insurance does not apply:

(1) to liability assumed by the Insured under any contract or agreement:

(2) to property damage

(a) to property owned or occupied by or rented to the Insured or, except with respect to the use of elevators, to property held by the Insured for sale or entrusted to the Insured for storage or safekeeping;

(b) except with respect to liability under a sidetrack agreement or the use of elevators

(i) property while on premises owned by or rented to the Insured for the purpose of having operations performed on such property by or on behalf of the Insured;

(ii) tools or equipment while being used by the Insured in performing his operations;

(iii) property in the custody of the Insured which is to be installed, erected or used in construction by the Insured;

(c) that particular part of any property not on premises owned by or rented to the Insured

(i) upon which operations are being performed by or on behalf of the Insured at the time of the property damage arising out of such operations, or

(ii) out of which any property damage arises, or

(iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the Insured;

(3) with respect to the completed operations hazard, to property damage to work performed by the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

(B) The Broad Form Property Damage Coverage shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof) available to the Insured, such as, but not limited to, Fire and Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the "Other Insurance" Condition of the policy is amended accordingly.

## II. ADDITIONAL INSURED—EMPLOYEES

The "Persons Insured" provision is amended to include, with respect to the Personal Injury and Property Damage Liability Coverages only, any employee of the Named Insured while acting within the scope of his duties as such, but the insurance afforded to such employee does not apply:

(A) to personal injury to (1) another employee of the same employer arising out of or in the course of his employment or (2) the Named Insured or, if the Named Insured is a partnership or joint venture, any partner or member thereof;

(B) to property damage to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by (1) another employee of the Named Insured or (2) the Named Insured or, if the Named Insured is a partnership or joint venture, any partner or member thereof;

(C) to personal injury or property damage included in the incidental Malpractice Liability Coverage.

The insurance afforded shall be excess over any other valid and collectible insurance available to such employee.

## III. FIRE AND/OR EXPLOSION LEGAL LIABILITY—REAL PROPERTY

The Property Damage Liability Coverage applies to property damage to structures or portions thereof rented to or occupied by the Named Insured, including fixtures permanently attached thereto, if such property damage arises out of fire and/or explosion, subject to the following additional provisions:

(A) With respect to the insurance provided by these provisions, all of the exclusions of the policy, other than the Nuclear Energy Exclusion, are deleted and replaced by the following:

(1) This insurance does not apply to liability assumed by the Insured under any contract or agreement.

(2) With respect to coverage afforded by explosion, insurance hereunder shall not apply to loss:

(a) by explosion of air or steam vessels, steam boilers, steam pipes, steam turbines, steam engines, piping under pressure, prime movers, machinery or power transmitting equipment, or

(b) arising out of operations performed for the Named Insured by independent contractors, or

(c) included within the completed operations hazard.

(B) The following are not "explosions" within the intent or meaning of the explosion coverage:

(1) electric arcing,

(2) rupture or bursting of rotating or moving parts of machinery caused by centrifugal force or mechanical breakdown,

(3) water hammer,

(4) rupture or bursting of water pipes,

(5) rupture or bursting due to expansion or swelling of the contents of any buildings or structures, caused by or resulting from water,

(6) rupture, bursting or operation of pressure relief devices.

(C) The limit of liability specified in the declarations shall not apply to this coverage. The limit of liability applicable to this coverage is $25,000 each occurrence.

## IV. WATERCRAFT NON-OWNERSHIP (UNDER 50 FEET IN LENGTH)

It is agreed that the policy exclusion relating to the ownership, maintenance, operation, use, loading or unloading of watercraft shall not apply to any watercraft under 50 feet in length provided such watercraft is not owned by the Named Insured and is not being used to carry persons for a charge.

KK-1777 Printed in U.S.A. (4/79)

## V. PERSONAL INJURY EXTENSION

Section II Exclusion A. 1. r. (3) pertaining to personal injury relating to employment, is deleted.

## VI. HOST LIQUOR LAW LIABILITY
(Not applicable in South Carolina)

The Personal Injury and Property Damage Liability Coverages apply to personal injury or property damage arising out of the serving or giving of alcoholic beverages, by or on behalf of the Named Insured, provided the Named Insured

(A) is not a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(B) is not an owner or lessor of premises used for such purposes if liability is imposed by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage.

Damages includes damages for loss of support resulting from personal injury.

## VII. INCIDENTAL MALPRACTICE LIABILITY

The Personal Injury and Property Damage Liability Coverages apply to personal injury or property damage occurring during the policy period and arising out of malpractice, error or mistake committed at or in connection with the premises or operations

(A) in the rendering of or failure to render medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith, or

(B) the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances

subject to the following provisions:

(1) The following additional exclusion applies:

The insurance does not apply to personal injury to any person to or for whom benefits or damages on account thereof are payable under any valid and collectible voluntary compensation or employer's liability insurance available to the Insured.

(2) The Supplementary Payments provision of the policy shall not apply to this insurance in so far as it provides for the payment of expenses incurred by the Insured for first aid at the time of accident.

(3) Exclusion (j) does not apply to injury to the emotions or reputation of a person arising out of the rendering of such services.

## VIII. WORLD-WIDE PRODUCTS LIABILITY

The Personal Injury and Property Damage Liability Coverages also apply to personal injury or property damage which occurs, during the policy period, outside the policy territory provided:

(A) such injury or damage is included in the products hazard, and

(B) the original suit for such injury or damage is brought within the policy territory.

## IX. CANCELLATION

In the Cancellation Condition of the General Conditions applicable to Sections I and II, the number "30" in the second sentence is substituted for the number "10".

## X. ADVERTISING OFFENSE LIABILITY

Personal Injury as defined in Section II of the policy shall include under Group B, advertising offense, which is defined as:

The publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; piracy; unfair competition; infringement of copyright, title, or slogan.

A. This insurance does not cover:

1. Advertising offense arising out of:

a. Publications or utterances in the course of or related to broadcasting or telecasting activities conducted by or on behalf of the Named Insured;

b. Failure of performance of contract, other than the unauthorized appropriation of ideas based upon alleged breach of implied contract;

c. Infringement of trademark, service mark or trade name, other than titles or slogans, by use thereof on or in connection with goods, products or services sold, offered for sale or advertised; or

d. Incorrect description or mistake in advertised price of goods, products or services sold, offered for sale or advertised;

2. Personal injury or advertising offense arising out of the conduct of any partnership or joint venture of which the Insured is a partner or member and which is not designated in the declarations of the policy as a Named Insured.

B. Limits of Liability

1. Limits of Liability

a. Regardless of the number of (1) Insureds under this policy, (2) persons or organizations who sustain personal injury or (3) claims made or suits brought on account of personal injury, the Company's limit of liability for all damages arising out of personal injury, as the result of any one advertising offense occurrence shall be only for the amount stated in the Declarations under Section II Coverages A and B as applicable to "each occurrence."

b. Subject to the above provisions respecting "each occurrence" the total liability of the Company for all damages because of all personal injury due to advertising offense shall not exceed the limit of liability stated in the Declarations under Section II Coverages A and B as "aggregate." If no limit of liability is stated as applying to "aggregate," the limit shown as applying to "each occurrence" shall also apply as the aggregate limit of liability.

c. Aggregate limits of liability stated in the Declarations shall apply separately to each annual period, commencing with policy inception.

C. Deductible

The Company's liability hereunder shall apply only to the amount of damages in excess of $5000. This deductible applies separately to each claim for advertising offense and, for purposes of determining the application of such deductible, "each claim" shall include all claims made or suits brought on account of any one advertising offense (regardless of the number or kind of media used or the frequency of repetition thereof). The terms of the policy, including those with respect to the Company's rights and duties with respect to the defense of suits and the Insured's duties in the event of an occurrence apply irrespective of the application of the deductible. The Company may pay any part or all of the deductible to effect settlement of any claim or suit and upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible as has been paid by the Company.

Authorized Agent



# PREMISES MEDICAL PAYMENTS INSURANCE
## COVERAGE PART
### Applicable Under Section II

| Named Insured | |
|---|---|
| Effective | Policy No. |
| Issued by (Name of Insurance Company) | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

If this form is attached to a Motel Policy, Exclusion (c) (2) does not apply to guests temporarily residing in a motel owned or operated by the Named Insured, and Exclusion (c) (5) does not apply to such guests while engaged in swimming on the insured premises.

## I.   COVERAGE E—PREMISES MEDICAL PAYMENTS

The Company will pay to or for each person who sustains bodily injury caused by accident all reasonable medical expense incurred within one year from the date of the accident on account of such bodily injury, provided such bodily injury arises out of (a) a condition in the insured premises or (b) operations with respect to which the Named Insured is afforded coverage for bodily injury liability under this policy.

### Exclusions

This insurance does not apply:

(a) to bodily injury

  (1) arising out of the ownership, maintenance, operation, use, loading or unloading of

    (i) any automobile or aircraft owned or operated by or rented or loaned to any Insured, or

    (ii) any other automobile or aircraft operated by any person in the course of his employment by any Insured;

  but this exclusion does not apply to the parking of an automobile on the insured premises, if such automobile is not owned by or rented or loaned to any Insured;

  (2) arising out of (i) the ownership, maintenance, operation, use, loading or unloading of any mobile equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity of in practice or preparation for any such contest or activity or (ii) the operation or use of any snowmobile or trailer designed for use therewith;

  (3) arising out of the ownership, maintenance, operation, use, loading or unloading of

    (i) any watercraft owned or operated by or rented or loaned to any Insured, or

    (ii) any other watercraft operated by any person in the course of his employment by any Insured;

  but this exclusion does not apply to watercraft while ashore on the insured premises; or

  (4) arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to any Insured;

(b) to bodily injury

  (1) included within the completed operations hazard or the products hazard;

  (2) arising out of operations performed for the Named Insured by independent contractors other than (i) maintenance and repair of the insured premises or (ii) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

  (3) resulting from the selling, serving or giving of any alcoholic beverage (i) in violation of any statute, ordinance or regulation, (ii) to a minor, (iii) to a person under the influence of alcohol or (iv) which causes or contributes to the intoxication of any person, if the Named Insured is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or, if not so engaged, is an owner or lessor of premises used for such purposes but only part (i) of this exclusion (b) (3) applies when the Named Insured is such an owner or lessor;

  (4) due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(c) to bodily injury

  (1) to the Named Insured, any partner therein, any tenant or other person regularly residing on the insured premises or any employee of any of the foregoing if the bodily injury arises out of and in the course of his employment therewith;

  (2) to any other tenant if the bodily injury occurs on that part of the insured premises rented from the Named Insured or to any employee of such a tenant if the bodily injury occurs on the tenant's part of the insured premises and arises out of and in the course of his employment for the tenant;

  (3) to any person while engaged in maintenance and repair of the insured premises or alteration, demolition or new construction at such premises;

  (4) to any person if any benefits for such bodily injury are payable or required to be provided under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

  (5) to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest.

  (6) to any pupil or student of the Named Insured if the bodily injury arises out of and in the course of his school activities.

(d) to any medical expense for services by the Named Insured, any employee thereof or any person or organization under contract to the Named Insured to provide such services.

## II.  LIMITS OF LIABILITY

The limit of liability for Premises Medical Payments Coverage stated in the declarations as applicable to "each person" is the limit of the Company's liability for all medical expense for bodily injury to any one person as the result of any one accident, but subject to the above provision respecting "each person," the total liability of the Company under Premises Medical Payments Coverage for all medical expense for bodily injury to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the declarations as applicable to "each accident."

When more than one medical payments coverage afforded by this policy applies to the loss, the Company shall not be liable for more than the amount of the highest applicable limit of liability.

## III. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"insured premises" means all premises owned by or rented to the Named Insured with respect to which the Named Insured is afforded coverage for bodily injury liability under this policy, and includes the ways immediately adjoining on land;

"medical expense" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

## V.  ADDITIONAL CONDITION
### Medical Reports; Proof and Payment of Claim

As soon as practicable the injured person or someone on his behalf shall give to the Company written proof of claim, under oath if required, and shall, after each request from the Company, execute authorization to enable the Company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the Company when and as often as the Company may reasonably require. The Company may pay the injured person or any person or organization rendering the services and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the Company.

Authorized Agent

KK-7072  Ptd. in U.S.A. 2/76



**GENERAL LIABILITY**
**AMENDATORY ENDORSEMENT — ADDITIONAL DEFINITION**

| Named Insured | |
|---|---|
| Effective | Policy Number |
| Issued By (Name of Insurance Company) | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

Attach this endorsement to all:

General Liability policies.
Commercial Package policies providing Section II Liability coverage.
Businessowners policies.

It is agreed that the following definition is added:

"loading or unloading", with respect to an automobile, means the handling of property after it is moved from the place where it is accepted for movement into or onto an automobile or while it is in or on an automobile or while it is being moved from an automobile to the place where it is finally delivered, but "loading or unloading" does not include the movement of property by means of a mechanical device (other than a hand truck) not attached to the automobile.

Authorized Agent

LD-9E49  Ptd. In U.S.A.  (GL 00 19 07 78) - 100M

# INA

## BUSINESS AUTO POLICY — DECLARATIONS

This form is part of policy number **DLP DO 52 22 24 2**      Effective date of this form is **7-1-81**

NAMED INSURED   **SHAPIRO BROTHERS INVESTMENT CORP.**

This form and the forms and endorsements attached, which in combination provide automobile insurance coverage, are self-sufficient and none of the provisions, stipulations and other terms of the multiple peril package policy to which they are attached shall apply to the automobile insurance coverage except for cancellation or termination of such coverage. In case of cancellation or termination of the multiple peril package policy to which this form is attached, all automobile insurance coverage will automatically be cancelled or terminated at the same time and on the same effective date as the multiple peril package policy. If automobile insurance coverage is referred to under the limits of liability or coverages in the multiple peril package policy to which this form is attached, such reference shall not constitute a duplication of limits of liability or coverage for automobile insurance. Whenever the term "policy" appears in the attached forms providing automobile insurance coverage, such term shall mean this form and those forms attached to this form which provide the automobile insurance coverage.

**ITEM ONE—** The named insured, address, policy period and form of the insured's business are stated in the Package Policy Declarations.

NAMED INSURED'S BUSINESS:   **DRY CLEANERS AND LAUNDRY**

**ITEM TWO—SCHEDULE OF COVERAGES AND COVERED AUTOS:** This policy provides only those coverages where a charge is shown in the "Premium" column below. Each of these coverages will apply only to those autos shown as covered autos. Autos are shown as covered autos for a particular coverage by the entry of one or more of the symbols from ITEM THREE next to the name of the coverage. Entry in the "Covered Autos" column of one or more of the symbols from ITEM THREE shows which autos are covered autos.

| COVERAGES | COVERED AUTOS | LIMIT — THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM COV. AUTO NO. 1 | PREMIUM COV. AUTO NO. 2 | TOTAL |
|---|---|---|---|---|---|
| LIABILITY INSURANCE | 2, 8, 9 | $ **1,000,000 CSL** | $ | $ | $ 3100 |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | | SEPARATELY STATED IN EACH PERSONAL INJURY PROTECTION ENDORSEMENT MINUS $............................... DEDUCTIBLE APPLICABLE TO THE NAMED INSURED AND RELATIVES ONLY. | $ **A S** | $ **P E R** | $ |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | | SEPARATELY STATED IN EACH ADDED PERSONAL INJURY PROTECTION ENDORSEMENT | $ | $ | $ |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | SEPARATELY STATED IN THE PROPERTY PROTECTION INSURANCE ENDORSEMENT MINUS $............................... DEDUCTIBLE FOR EACH ACCIDENT. | $ **S C H** | $ **E D U L E** | $ |
| AUTO MEDICAL PAYMENTS INSURANCE | 7 | $ **10,000** | $ | $ | $ 306 |
| UNINSURED MOTORISTS INSURANCE | 6 | $ **30,000** | $ | $ | $ 140 |
| PHYSICAL DAMAGE INSURANCE — COMPREHENSIVE COVERAGE | 7 | ACTUAL CASH VALUE, OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $....**VRS**........ DEDUCTIBLE FOR EACH COVERED AUTO FOR ALL LOSS EXCEPT FIRE OR LIGHTNING. | $ | $ | $ 741 |
| PHYSICAL DAMAGE INSURANCE — SPECIFIED PERILS COVERAGE | | ACTUAL CASH VALUE, OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $25 DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | $ | $ | $ |
| PHYSICAL DAMAGE INSURANCE — COLLISION COVERAGE | 7 | ACTUAL CASH VALUE, OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $....**VRS**........ DEDUCTIBLE FOR EACH COVERED AUTO. | $ | $ | $ 1528 |
| PHYSICAL DAMAGE INSURANCE — TOWING & LABOR (not available in California) | | $25 FOR EACH DISABLEMENT OF A PRIVATE PASSENGER AUTO. | $ | $ | $ |

FORMS AND ENDORSEMENTS CONTAINED IN THIS POLICY AT ITS INCEPTION:
**KK1E41,CAD001,DA8H47, DA8H49, DA8H50, CA9903, CA2X17, CA9921**

| | |
|---|---|
| PREMIUM FOR ENDORSEMENTS | |
| ESTIMATED TOTAL PREMIUM | $ **5815** |

The estimated total premium for this policy is based on the exposures you told us you would have when this policy began. We will compute your final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and you will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, you will get a refund. To determine your final premium due, we may examine your records at any time during the period of coverage and up to three years afterward. If this policy is issued for more than one year, the premium shall be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**ITEM THREE—** (See other side for Description of Covered Auto Designation Symbols).

## ITEM FOUR—SCHEDULE OF COVERED AUTOS YOU OWN:

| Cov. Auto No. | DESCRIPTION — Year - Trade Name - Model - Body Type - Serial No. | VIN (Vehicle Ident. No.) | PURCHASED Original Cost New | PURCHASED Actual Cost and New (N) or Used (U) | PURCHASED Month/ Year | TERRITORY — Town and State Where the Covered Auto Will be Principally Garaged | Terr. Code |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | **A S   P E R   S C H E D U L E** | | | | | | |

| Cov. Auto No. | CLASSIFICATION Radius of Operation L, I, LD or Z * | Business Use S=Service R=Retail C=Commercial | Size GVW, GCW or Vehicle Seating Capacity † | Age Group | Primary Rating Factor | Secondary Rating Factor | CODE | LOSS PAYEE — Except for towing, all physical damage loss is payable to you and the loss payee named below, as interests may appear at the time of the loss. |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | |
| 2 | | | | | | | | |

* L = Local; I = Intermediate; LD = Long Distance; Z = Zone Rated.

† GVW = Gross Vehicle Weight; GCW = Gross Combination Weight.

Countersigned By _____      Authorized Agent _____

Includes copyrighted material of Insurance Services Office, with its permission.

KK-1E41  (CA 00 02 Ed. 01-78)  Printed in U.S.A.      Copyright, Insurance Services Office, 1977      (continued . . .)

RIC COPY

## DECLARATIONS—BUSINESS AUTO POLICY—(Continued)

**ITEM THREE—**

## DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS

| SYMBOL | DESCRIPTION |
|---|---|
| 1 = | ANY AUTO. |
| 2 = | OWNED AUTOS ONLY. Only those autos you own (and for liability coverage any trailers you don't own while attached to power units you own). This includes those autos you acquire ownership of after the policy begins. |
| 3 = | OWNED PRIVATE PASSENGER AUTOS ONLY. Only the private passenger autos you own. This includes those private passenger autos you acquire ownership of after the policy begins. |
| 4 = | OWNED AUTOS OTHER THAN PRIVATE PASSENGER AUTOS ONLY. Only those autos you own which are not of the private passenger type (and for liability coverage any trailers you don't own while attached to power units you own). This includes those autos, not of the private passenger type, you acquire ownership of after the policy begins. |
| 5 = | OWNED AUTOS SUBJECT TO NO-FAULT. Only those autos you own which are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those autos you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| 6 = | OWNED AUTOS SUBJECT TO A COMPULSORY UNINSURED MOTORIST LAW. Only those autos you own which, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject uninsured motorists insurance. This includes those autos you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |

| SYMBOL | DESCRIPTION |
|---|---|
| 7 = | SPECIFICALLY DESCRIBED AUTOS. Only those autos described in ITEM FOUR for which a premium charge is shown (and for liability coverage any trailers you don't own while attached to any power unit described in ITEM FOUR). |
| 8 = | HIRED AUTOS ONLY. Only those autos you lease, hire, rent or borrow. This does not include any auto you lease, hire, rent or borrow from any of your employees or members of their households. |
| 9 = | NONOWNED AUTOS ONLY. Only those autos you do not own, lease, hire or borrow which are used in connection with your business. This includes autos owned by your employees or members of their households but only while used in your business or your personal affairs. |
| 10 = | _____ _____ _____ |

This DECLARATIONS is continued under ITEMS FOUR, FIVE, SIX and SEVEN, as applicable, which display the schedules of covered autos and coverages designated in the "Covered Autos" column in ITEM TWO by a symbol number from ITEM THREE above.

### IF INDICATED IN ITEM TWO,
### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### LOSS PAYABLE CLAUSE

CA 99 19
(Ed. 01 78)

A. We will pay you and the loss payee named in the policy for loss to a covered auto, as interest may appear.

B. The insurance covers the interest of the loss payee unless the loss results from fraudulent acts or omissions on your part.

C. We may cancel the policy as allowed by CANCELLING

THIS POLICY DURING THE POLICY PERIOD. Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

D. If we make any payment to the loss payee, we will obtain his rights against any other party.

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, 1977



# BUSINESS AUTO POLICY

CA 00 01
(Ed. 01 80)

In return for the payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## PART I — WORDS AND PHRASES WITH SPECIAL MEANING — READ THEM CAREFULLY

The following words and phrases have special meaning throughout this policy and appear in **boldface type** when used:

**A. "You"** and **"your"** mean the person or organization shown as the named insured in ITEM ONE of the declarations.

**B. "We", "us"** and **"our"** mean the company providing the insurance.

**C. "Accident"** includes continuous or repeated exposure to the same conditions resulting in **bodily injury** or **property damage** the **insured** neither expected nor intended.

**D. "Auto"** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads but does not include **mobile equipment**.

**E. "Bodily injury"** means bodily injury, sickness or disease including death resulting from any of these.

**F. "Insured"** means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance. Except with respect to **our** limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made or suit is brought.

**G. "Loss"** means direct and accidental damage or loss.

**H. "Mobile equipment"** means any of the following type of land vehicles:

1. Specialized equipment such as: Bulldozers; Power shovels; Rollers, graders or scrapers; Farm machinery; Cranes; Street sweepers or other cleaners; Diggers; Forklifts; Pumps; Generators; Air Compressors; Drills; Other similar equipment.

2. Vehicles designed for use principally off public roads.

3. Vehicles maintained solely to provide mobility for such specialized equipment when permanently attached.

4. Vehicles not required to be licensed.

5. Autos maintained for use solely on **your** premises or that part of roads or other accesses that adjoin **your** premises.

**I. "Property damage"** means damage to or loss of use of tangible property.

**J. "Trailer"** includes semitrailer.

## PART II — WHICH AUTOS ARE COVERED AUTOS

**A.** ITEM TWO of the declarations shows the **autos** that are covered **autos** for each of **your** coverages. The numerical symbols explained in ITEM THREE of the declarations describe which **autos** are covered **autos**. The symbols entered next to a coverage designate the only **autos** that are covered **autos**.

**B. OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS.**

1. If symbols "1", "2", "3", "4", "5" or "6" are entered next to a coverage in ITEM TWO, then **you** already have coverage for **autos** of the type described until the policy ends.

2. But, if symbol "7" is entered next to a coverage in ITEM TWO, an **auto** you acquire will be a covered **auto** for that coverage only if:

a. **We** already insure all **autos** that **you** own for that coverage or it replaces an **auto** you previously owned that had that coverage; and

b. **You** tell **us** within 30 days after **you** acquire it that **you** want **us** to insure it for that coverage.

**C. CERTAIN TRAILERS AND MOBILE EQUIPMENT.**

If the policy provides liability insurance, the following types of vehicles are covered **autos** for liability insurance:

1. **Trailers** with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. **Mobile equipment** while being carried or towed by a covered **auto**.

## PART III — WHERE AND WHEN THIS POLICY COVERS

**We** cover **accidents** or **losses** which occur during the policy period:

**A.** In the United States of America, its territories or possessions, Puerto Rico or Canada; or

**B.** While the covered **auto** is being transported between any of these places.

SPECIMEN FORM
From SSU

Copyright, Insurance Services Office, 1977, 1979

SPECIMEN FORM
From SSU

# PART IV — LIABILITY INSURANCE

## A. WE WILL PAY.

1. **We** will pay all sums the **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto**.

2. **We** have the right and duty to defend any suit asking for these damages. However, **we** have no duty to defend suits for **bodily injury** or **property damage** not covered by this policy. **We** may investigate and settle any claim or suit as **we** consider appropriate. **Our** payment of the LIABILITY INSURANCE limit ends **our** duty to defend or settle.

## B. WE WILL ALSO PAY.

In addition to **our** limit of liability, **we** will pay for the **insured**:

1. Up to $250 for cost of bail bonds (including bonds for related traffic law violations) required because of an **accident** we cover. **We** do not have to furnish these bonds.

2. Premiums on appeal bonds in any suit **we** defend.

3. Premiums on bonds to release attachments in a suit **we** defend but only for bonds up to **our** limit of liability.

4. All costs taxed to the **insured** in a suit **we** defend.

5. All interest accruing after the entry of the judgment in a suit **we** defend. **Our** duty to pay interest ends when **we** pay or tender **our** limit of liability.

6. Up to $50 a day for loss of earnings (but not other income) because of attendance at hearings or trials at **our** request.

7. Other reasonable expenses incurred at **our** request.

## C. WE WILL NOT COVER — EXCLUSIONS.

This insurance does not apply to:

1. Liability assumed under any contract or agreement.

2. Any obligation for which the **insured** or his or her insurer may be held liable under any workers' compensation or disability benefits law or under any similar law.

3. Any obligation of the **insured** to indemnify another for damages resulting from **bodily injury** to the **insured's** employee.

4. **Bodily injury** to any fellow employee of the **insured** arising out of and in the course of his or her employment.

5. **Bodily injury** to any employee of the **insured** arising out of and in the course of his or her employment by the **insured**. However, this exclusion does not apply to **bodily injury** to domestic employees not entitled to workers' compensation benefits.

6. **Property damage** to property owned or transported by the **insured** or in the **insured's** care, custody or control.

7. Bodily injury or **property damage** resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the **insured** for movement into or onto the covered **auto**, or

b. After it is moved from the covered **auto** to the place where it is finally delivered by the **insured**.

8. **Bodily injury** or property damage resulting from the movement of property by a mechanical device (other than a hand truck) not attached to the covered **auto**.

9. **Bodily injury** or property damage caused by the dumping, discharge or escape of irritants, pollutants or contaminants. This exclusion does not apply if the discharge is sudden and accidental.

## D. WHO IS INSURED.

1. **You** are an **insured** for any covered **auto**.

2. Anyone else is an **insured** while using with **your** permission a covered **auto you** own, hire or borrow except:

a. The owner of a covered **auto you** hire or borrow from one of **your** employees or a member of his or her household.

b. Someone using a covered **auto** while he or she is working in a business of selling, servicing, repairing or parking **autos** unless that business is **yours**.

c. Anyone other than **your** employees, a lessee or borrower or any of their employees, while moving property to or **or** from a covered **auto**.

3. Anyone liable for the conduct of an **insured** described above is an **insured** but only to the extent of that liability. However, the owner or anyone else from whom **you** hire or borrow a covered **auto** is an **insured** only if that **auto** is a **trailer** connected to a covered **auto you** own.

## E. OUR LIMIT OF LIABILITY.

1. Regardless of the number of covered **autos**, **insureds**, claims made or vehicles involved in the **accident**, the most **we** will pay for all damages resulting from any one **accident** is the LIABILITY INSURANCE limit shown in the declarations.

2. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one **accident**.

## F. OUT OF STATE EXTENSIONS OF COVERAGE.

1. While a covered **auto** is away from the state where it is licensed **we** will:

a. Increase this policy's liability limits to meet those specified by a compulsory or financial responsibility law in the jurisdiction where the covered **auto** is being used.

b. Provide the minimum amounts and types of other coverages, such as "No-Fault", required of out of state vehicles by the jurisdiction where the covered **auto** is being used.

2. **We** will not pay anyone more than once for the same elements of loss because of these extensions.

**CA 00 01** (Ed. 01 80)

Copyright, Insurance Services Office, 1977, 1979

Page 2 of 5

SPECIMEN FORM
From SSU

SPECIMEN FORM
From SSU

# PART V — PHYSICAL DAMAGE INSURANCE

## A. WE WILL PAY.

1. **We** will pay for **loss** to a covered **auto** or its equipment under:

   a. **Comprehensive Coverage.** From any cause except the covered **auto's** collision with another object or its overturn.

   b. **Specified Perils Coverage.** Caused by:
   
   (1) Fire or explosion;
   (2) Theft;
   (3) Windstorm, hail or earthquake;
   (4) Flood;
   (5) Mischief or vandalism;
   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered **auto.**

   c. **Collision Coverage.** Caused by the covered **auto's** collision with another object or its overturn.

2. **Towing.**

   **We** will pay up to $25 for towing and labor costs incurred each time a covered **auto** of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

## B. WE WILL ALSO PAY.

**We** will also pay up to $10 per day to a maximum of $300 for transportation expense incurred by **you** because of the total theft of a covered **auto** of the private passenger type. **We** will pay only for those covered **autos** for which **you** carry either Comprehensive or Specified Perils Coverage. **We** will pay for transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered **auto** is returned to use or **we** pay for its **loss.**

## C. WE WILL NOT COVER — EXCLUSIONS.

This insurance does not apply to:

1. Wear and tear, freezing, mechanical or electrical breakdown unless caused by other **loss** covered by this policy.

2. Blowouts, punctures or other road damage to tires unless caused by other **loss** covered by this policy.

3. **Loss** caused by declared or undeclared war or insurrection or any of their consequences.

4. **Loss** caused by the explosion of a nuclear weapon or its consequences.

5. **Loss** caused by radioactive contamination.

6. **Loss** to tape decks or other sound reproducing equipment not permanently installed in a covered **auto.**

7. **Loss** to tapes, records or other sound reproducing devices designed for use with sound reproducing equipment.

8. **Loss** to any sound receiving equipment designed for use as a citizens' band radio, two-way mobile radio or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the **auto** manufacturer for the installation of a radio.

## D. HOW WE WILL PAY FOR LOSSES — THE MOST WE WILL PAY.

1. At **our** option **we** may:

   a. Pay for, repair or replace damaged or stolen property; or

   b. Return the stolen property, at **our** expense. **We** will pay for any damage that results to the **auto** from the theft.

2. The most **we** will pay for **loss** is the smaller of the following amounts:

   a. The actual cash value of the damaged or stolen property at the time of **loss.**

   b. The cost of repairing or replacing the damaged or stolen property with other of like kind or quality.

3. For each covered **auto, our** obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the declarations. Any Comprehensive Coverage deductible shown in the declarations does not apply to **loss** caused by fire or lightning.

## E. GLASS BREAKAGE — HITTING A BIRD OR ANIMAL — FALLING OBJECTS OR MISSILES.

**We** will pay for glass breakage, **loss** caused by hitting a bird or animal or by falling objects or missiles under Comprehensive Coverage if **you** carry Comprehensive Coverage for the damaged covered **auto.** However, **you** have the option of having glass breakage caused by a covered **auto's** collision or overturn considered a **loss** under Collision Coverage.

# PART VI — CONDITIONS

The insurance provided by this policy is subject to the following conditions:

## A. YOUR DUTIES AFTER ACCIDENT OR LOSS.

1. **You** must promptly notify **us** or **our** agent of any **accident** or **loss. You** must tell **us** how, when and where the **accident** or **loss** happened. **You** must assist in obtaining the names and addresses of any injured persons and witnesses.

2. Additionally, **you** and other involved **insureds** must:

   a. Cooperate with **us** in the investigation, settle-

---

**CA 00 01** (Ed. 01 80)                                    **Page 3 of 5**

Copyright, Insurance Services Office, 1977, 1979

SPECIMEN FORM
From SSU

SPECIMEN FORM
From SSU

ment or defense of any claim or suit. No insured shall, except at his or her own cost, voluntarily make any payment, assume any obligation or incur any expense.

b. Immediately send us copies of any notices or legal papers received in connection with the accident or loss.

c. Submit at our expense and as often as we require to physical examinations by physicians we select.

d. Authorize us to obtain medical reports and other pertinent medical information.

3. Additionally, to recover for loss to a covered auto or its equipment you must do the following:

a. Permit us to inspect and appraise the damaged property before its repair or disposition.

b. Do what is reasonably necessary after loss at our expense to protect the covered auto from further loss.

c. Submit a proof of loss when required by us.

d. Promptly notify the police if the covered auto or any of its equipment is stolen.

**B. OTHER INSURANCE.**

1. For any covered auto you own this policy provides primary insurance. For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance. However, while a covered auto which is a trailer is connected to another vehicle the liability coverage this policy provides for the trailer:

a. Is excess while it is connected to a motor vehicle you don't own.

b. Is primary while it is connected to a covered auto you own.

2. When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.

**C. OUR RIGHT TO RECOVER FROM OTHERS.**

If we make any payment, we are entitled to recover what we paid from other parties. Any person to or for whom we make payment must transfer to us his or her rights of recovery against any other party. This person must do everything necessary to secure these rights and must do nothing that would jeopardize them.

**D. CANCELLING THIS POLICY DURING THE POLICY PERIOD.**

1. You may cancel this policy by returning it to us or by giving us advance notice of the date cancellation is to take effect.

2. We may cancel the policy by mailing you at least 10 days notice at your last address known by us. We may deliver any notice instead of mailing it. Proof of

mailing of any notice will be sufficient proof of notice.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

4. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. However, making or offering to make the refund is not a condition of cancellation. If you cancel, the refund, if any, will be computed in accordance with the customary short rate procedure. If we cancel, the refund, if any, will be computed pro rata.

**E. LEGAL ACTION AGAINST US.**

No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under LIABILITY INSURANCE, no legal action may be brought against us until we agree in writing that the insured has an obligation to pay or until the amount of that obligation has been finally determined by judgment after trial. No person or organization has any right under this policy to bring us into any action to determine the liability of the insured.

**F. INSPECTION.**

At our option we may inspect your property and operations at any time. These inspections are for our benefit only. By our right to inspect or by our making any inspection we make no representation that your property or operations are safe, not harmful to health or comply with any law, rule or regulation.

**G. CHANGES.**

This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change. If we revise this policy form to provide more coverage without additional premium charge your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**H. TRANSFER OF YOUR INTEREST IN THIS POLICY.**

Your rights and duties under this policy may not be assigned without our written consent.

**I. NO BENEFIT TO BAILEE — PHYSICAL DAMAGE INSURANCE ONLY.**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

**J. BANKRUPTCY.**

Bankruptcy or insolvency of the insured shall not relieve us of any obligations under this policy.

**K. APPRAISAL FOR PHYSICAL DAMAGE LOSSES.**

1. If you and we fail to agree as to the amount of loss either may demand an appraisal of the loss. In such event, you and we shall each select a competent appraiser, and the appraisers shall select a competent and disinterested umpire. The appraisers shall

**CA 00 01** (Ed. 01 80)

Page 4 of 5

Copyright, Insurance Services Office, 1977, 1979

state separately the actual cash value and the amount of **loss**, and, failing to agree, shall submit their differences to the umpire. An award in writing of any two shall determine the amount of **loss**. **You** and **we** shall each pay the chosen appraiser and shall bear equally the other expenses of the appraisal and umpire.

2. **We** shall not be held to have waived any of **our** rights by any act relating to appraisal.

**L. TWO OR MORE POLICIES ISSUED BY US.**

If this policy and any other policy issued to **you** by **us** or any company affiliated with **us** apply to the same accident, the aggregate maximum limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy. This condition does not apply to any policy issued by **us** or an affiliated company specifically to apply as excess insurance over this policy.

**SPECIMEN FORM**
From SSU

**CA 00 01** (Ed. 01 80)

Copyright, Insurance Services Office, 1977, 1979

**Page 5 of 5**

**DECLARATIONS—BUSINESS AUTO POLICY—(Continued)**

**ITEM FOUR: SCHEDULE OF COVERED AUTOS YOU OWN**

Policy DL2 D0 52 22 24 2

| Covered Auto No. | DESCRIPTION (Year-Trade Name-Model-Body Type / VIN / Serial Number) | TERRITORY — State / Terr. Code No. | PURCHASED Original Cost New | Actual Cost Mo/Yr | CLASSIFICATION (Radius/Size/Business Use/Age Group/Primary-Secondary Rating Factor) | CODE | LIABILITY Premium | AUTO MED PAY Prem. | AUTO UNINSURED MOTORISTS Limit | Prem. | LIMIT OF LIABILITY | COMPREHENSIVE Deductible | Premium | COLLISION Deductible | Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1977 V.W. Scirocco / 5378076939 | Las Vegas, NY / 02 | 7500 | 100 | FAMILY AUTO 4 — 1.00 / -.15 | 811120 | 237 | 26 | 30,000 | 14 | ACV | 100 | 58 | 200 | 157 |
| 2 | 1978 BMW / 578D149 | Las Vegas, NY / 02 | 20000 | 1500 | FAMILY AUTO 3 — 1.00 / -.15 | 811120 | 237 | 26 | 30,000 | 14 | ACV | 1500 | 77 | 1500 | 104 |
| 3 | 1978 Dodge Aspen / B109442 | Las Vegas, NY / 02 | 5900 | 100 | FAMILY AUTO 2 — 1.00 / -.15 | 811120 | 237 | 26 | 30,000 | 14 | ACV | 100 | 40 | 200 | 120 |
| 4 | 1979 Dodge Aspen / L595B2 | Las Vegas, NY / 02 | | 100 | FAMILY AUTO 2 — 1.00 / -.15 | 811120 | 237 | 26 | 30,000 | 14 | ACV | 100 | 43 | 200 | 145 |
| 5 | 1980 Mercedes / 116120-12-17714 | Las Vegas, NY / 02 | 30000 | 1500 | FAMILY AUTO 2 — 1.00 / -.15 | 811120 | 237 | 26 | 30,000 | 14 | ACV | 1500 | 107 | 1500 | 151 |
| 6 | 1980 Mercedes / 116120-12-18428 | Las Vegas, NY / 02 | 30000 | 1500 | FAMILY AUTO 3 — 1.00 / -.15 | 811120 | 237 | 26 | 30000 | 14 | ACV | 1500 | 107 | 1500 | 151 |
| 7 | 1979 Dodge Van / B11AN9225458 | Las Vegas, NY / 02 | 7500 | 100 | LT — 1.60 / .00 | 02499 | 390 | 37 | 7500 | 14 | ACV | 100 | 105 | 200 | 303 |
| 8 | 1979 Dodge Van / B11AN9225459 | Las Vegas, NY / 02 | 7500 | 100 | LT — 1.60 / .00 | 02499 | 390 | 37 | 7500 | 14 | ACV | 100 | 105 | 200 | 303 |
| 9 | 1970 Ford 8/8 / 0G75T257600 | Las Vegas, NY / 02 | 3000 | 100 | P P TYPE — 1.00 / .00 | 7398 | 390 | 37 | 3000 | 14 | ACV | 100 | 99 | 200 | 94 |
| 10 | 1966 Chev. 3/4 T P-Up / C2546Z176296 | Las Vegas, NY / 02 | | | LT — 1.60 / .00 | 02499 | 450 | 39 | | 14 | ACV | N/C | N/C | N/C | N/C |
| TOTAL | | | | | | | 3042 | 206 | | 140 | | | 741 | | 1528 |

COVERAGES—PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead).

Copyright, Insurance Services Office, 1977, 1979

DA-8447 (CA 00 02, CA 00 13) Ed. 01-80) Printed in U.S.A.

*See other side for explanation of numbered notes.

## EXPLANATION OF NUMBERED NOTES

(1) LOSS PAYEE (Insert "LP", if a loss payee applies to covered auto): Except for towing, all physical damage loss is payable to you and the loss payee named in ITEM FOUR:  LOSS PAYEE, as interests may appear at the time of the loss.

(2) CLASSIFICATION —
Radius of Operation — L = Local; I = Intermediate; LD = Long Distance; Z = Zone Rated.
Business Use — S = Service; R = Retail; C = Commercial.
Size — GVW = Gross Vehicle Weight; GCW = Gross Combination Weight.

(3) PERSONAL INJURY PROTECTION — Limit stated in each Personal Injury Protection endorsement minus deductible shown in ITEM FOUR.

(4) ADDED P.I.P — Limit stated in each Added Personal Injury Protection endorsement.

(5) P.P.I. (Michigan only) — Limit stated in Property Protection Insurance endorsement minus deductible shown in ITEM FOUR.

(6) LIMIT OF LIABILITY — The amount entered hereunder applies to the Comprehensive Coverage or Specified Perils Coverage in accordance with the Stated Amount endorsement attached to and made a part of this policy. Absence of an entry means, the limit stated in ITEM TWO minus the deductible shown in ITEM FOUR for Comprehensive; or the limit stated in ITEM TWO for Specified Perils.

(7) COLLISION — Limit stated in ITEM TWO minus deductible shown in ITEM TWO.

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, 1977, 1979

**INA**

DECLARATIONS—BUSINESS AUTO POLICY—(Continued)—ITEM FOUR [X]
TRUCKER'S POLICY—(Continued)—ITEM FOUR [ ]
GARAGE POLICY—(Continued)—ITEM EIGHT (Non-dealers or Trailer Dealers) [ ] } : LOSS PAYEE
ITEM ELEVEN (Dealers) [ ] (Schedule)

PACIFIC EMPLOYERS INS. CO.
(Insert Company Name) ............................................ Policy No. DLP DO 52 22 24 2

NAMED INSURED: SHAPIRO BROTHERS INVESTMENT CORP.
ADDRESS: 1061 E. Flamingo Rd. Las Vegas, NV 89109
POLICY PERIOD: Policy Covers FROM 7-1-81 TO 7-1-82
12:01 A.M. Standard Time at the Named Insured's Address stated above.
FORM OF NAMED INSURED'S BUSINESS: [X] CORPORATION; [ ] PARTNERSHIP; [ ] INDIVIDUAL; [ ]
NAMED INSURED'S BUSINESS: Dry Cleaners & Laundry
LOSS PAYEE: Except for towing, all physical damage loss is payable to you and the loss payee named below, as interests may appear at the time of the loss:

Name of Loss Payee: VALLEY BANK OF NEVADA

Address: P. O. BOX 7511    Stockton, CA 95207
No.    Street    Town    State    Zip Code

| Cov. Auto No. | DESCRIPTION | | PURCHASED | LIMIT OF LIABILITY | COVERAGES Indicate if coverage is afforded by inserting deductible amount applicable; or, if no deductible applies, insert "X". | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Year—Trade Name - Model - Body Type | | Actual Cost | | Compre-hensive minus deduct. shown | Collision minus deductible shown | Fire, Explosion, Trans. | Theft | Wind, Hail, Earth-quake | Ltd. Spec. Perils (1) | Spec. Perils (2) |
| | Serial Number | Principal Garage Location | New (N) Used (U) Mo/Yr | | | | | | | | |
| 5 | 1980 Mercedes 116120-12-17714 | Las Vegas, NV | | ACV | 1500 | 1500 | | | | | |
| 6 | 1980 Mercedes 116120-12-018428 | Las Vegas, NV | | ACV | 1500 | 1500 | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

(1) Limited Specified Perils includes Fire, Explosion, Transportation, Theft, Windstorm, Hail, Earthquake or flood.
(2) Specified Perils includes Limited Specified Perils, flood, or mischief and vandalism with a $25 deductible for each covered auto.

DA-8H49 (CA 00 02 Ed. 01-80; CA 00 08 Ed. 01-80) Ptd. in U.S.A.    Copyright, Insurance Services Office, 1977, 1979
(CA 00 07 Ed. 01-80; CA 00 13 Ed. 01-80)

 **DECLARATIONS—BUSINESS AUTO POLICY — (Continued)**   Policy No. DLP D05222242

**ITEM FIVE: SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS**
**ITEM SIX:   SCHEDULE FOR NON-OWNERSHIP LIABILITY**

### ITEM FIVE

TOTAL PREMIUM ▶ $_____ **INCL.**

### SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS

**LIABILITY INSURANCE—RATING BASIS: COST OF HIRE**

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | PREMIUM |
|---|---|---|---|
| NEVADA | $ IF ANY | $ | $ 29 |
| | | TOTAL PREMIUM | $ 29 |

**Cost of hire** means the total amount **you** incur for the hire of **autos** you don't own (not including **autos** you borrow or rent from your employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**PHYSICAL DAMAGE INSURANCE**

| COVERAGES | LIMIT OF LIABILITY—THE MOST WE WILL PAY—DEDUCTIBLE | RATE | MINIMUM PREMIUM | PREMIUM |
|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE, COST OF REPAIRS, OR $................., WHICHEVER IS LESS, MINUS $................DEDUCTIBLE FOR EACH COVERED AUTO FOR ALL LOSS EXCEPT FIRE OR LIGHTNING | $ | $ | $ |
| SPECIFIED PERILS | ACTUAL CASH VALUE, COST OF REPAIRS, OR $................., WHICHEVER IS LESS, MINUS $25 DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM | $ N O T | $ C O V E R E D | $ |
| COLLISION | ACTUAL CASH VALUE, COST OF REPAIRS, OR $................., WHICHEVER IS LESS, MINUS $................DEDUCTIBLE FOR EACH COVERED AUTO | $ | $ | $ |
| | | | TOTAL PREMIUM | $ |

**PHYSICAL DAMAGE INSURANCE** for covered **autos** you hire or borrow is excess unless indicated below by " ☒ ".

☐ If this box is checked, PHYSICAL DAMAGE INSURANCE applies on a direct primary basis and for purposes of the condition entitled OTHER INSURANCE, any covered auto you hire or borrow is deemed to be a covered **auto** you own.

### ITEM SIX

### SCHEDULE FOR NON-OWNERSHIP LIABILITY

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees | 100– | $ 29.00 |
| Social Service Agency | Number of Employees | | $ |
| | Number of Volunteers | | $ |
| | | TOTAL PREMIUM | $ 29.00 |

DA-8H50  (CA 00 02 Ed. 01-80)  Printed in U.S.A.          Copyright, Insurance Services Office, 1977, 1979



SPECIMEN FORM
From SSU

**CA 99 03**
(Ed. 01 80)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AUTO MEDICAL PAYMENTS INSURANCE

**A. WORDS AND PHRASES WITH SPECIAL MEANING**

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for AUTO MEDICAL PAYMENTS INSURANCE:

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

**B. WE WILL PAY**

**We** will pay reasonable expenses incurred for necessary medical and funeral services to or for an **insured** who sustains **bodily injury** caused by **accident**. **We** will pay only those expenses incurred within three years from the date of the **accident**.

**C. WE WILL NOT COVER — EXCLUSIONS**

This insurance does not apply to:

1. **Bodily injury** sustained by an **insured** while occupying a vehicle located for use as a premises.

2. **Bodily injury** sustained by **you** or any **family member** while **occupying** or struck by any vehicle (other than a covered **auto**) owned by **you** or furnished or available for **your** regular use.

3. **Bodily injury** sustained by any **family member** while **occupying** or struck by any vehicle (other than a covered **auto**) owned by or furnished or available for the regular use of any **family member**.

4. **Bodily injury** to **your** employee arising out of and in the course of employment by **you**. However, **we** will cover **bodily injury** to **your** domestic employees if not entitled to workers' compensation benefits.

5. **Bodily injury** to an **insured** while working in a business of selling, servicing, repairing or parking **autos** unless that business is **yours.**

6. **Bodily injury** caused by declared or undeclared war or insurrection or any of their consequences.

7. **Bodily injury** to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**D. WHO IS INSURED**

1. **You** or any **family member** while **occupying** or, while a pedestrian, when struck by any **auto**.

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

**E. OUR LIMIT OF LIABILITY**

Regardless of the number of covered **autos**, **insureds**, claims made or vehicles involved in the **accident**, the most **we** will pay for **bodily injury** for each **insured** injured in any one **accident** is the limit of AUTO MEDICAL PAYMENTS shown in the declarations.

**F. CHANGES IN CONDITIONS**

The CONDITIONS of the policy are changed for AUTO MEDICAL PAYMENTS INSURANCE as follows:

1. OUR RIGHT TO RECOVER FROM OTHERS does not apply.

2. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible auto medical payments insurance.

SPECIMEN FORM
From SSU

**CA 99 03** (Ed. 01 80)          Copyright, Insurance Services Office, 1977, 1979

CA 2X 17
(Ed. 01 78)

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNINSURED MOTORISTS INSURANCE

### A. WORDS AND PHRASES WITH SPECIAL MEANING

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in the policy, the following words and phrases have special meaning for UNINSURED MOTORISTS INSURANCE:

1. **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. **"Occupying"** means in, upon, getting in, on, out or off.

3. **"Uninsured motor vehicle"** means a land motor vehicle or trailer:

   a. For which no liability bond or policy at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged, or

   b. For which the sum of all liability bonds or policies at the time of an **accident** provides at least the amounts required by the applicable law where a covered **auto** is principally garaged but their limits are less than the limit of this insurance, or

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent, or

   d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an **insured**, a covered **auto** or a vehicle an **insured** is occupying.

   However, **"uninsured motor vehicle"** does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law.

   b. Owned by a governmental unit or agency.

   c. Designed for **use** mainly off public roads while not on public roads.

### B. WE WILL PAY

1. **We** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured motor vehicle**. The damages must result from **bodily injury** sustained by the **insured** caused by an **accident**. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle**.

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered **auto** is principally garaged, **we** will pay only after all liability bonds or policies have been exhausted by judgments or payments.

3. Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us**.

### C. WE WILL NOT COVER — EXCLUSIONS

This insurance does not apply to:

1. Any claim settled without **our** consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. **Bodily injury** sustained by **you** or any **family member** while **occupying** or struck by any vehicle owned by **you** or any **family member** which is not a covered **auto**.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

### D. WHO IS INSURED

1. **You** or any **family member**.

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto**. The covered **auto** must be out of service because of its breakdown, repair, servicing, loss or destruction.

3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured**.

### E. OUR LIMIT OF LIABILITY

1. Regardless of the number of covered **autos**, **insureds**, claims made or vehicles involved in the **accident**, the most **we** will pay for all damages resulting from any one **accident** is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

2. Any amount payable under this insurance shall be reduced by:

   a. All sums paid or payable under any workers' compensation, disability benefits or similar law, and

   b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

3. Any amount paid under this insurance will reduce any amount an **insured** may be paid under the policy's LIABILITY INSURANCE.

### F. CHANGES IN CONDITIONS

The CONDITIONS of the policy are changed for UNINSURED MOTORISTS INSURANCE as follows:

1. The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2. YOUR DUTIES AFTER ACCIDENT OR LOSS is changed by adding the following:

CA 2X 17 (Ed. 01 78)          Copyright, Insurance Services Office, 1977          Page 1 of 2

SPECIMEN FORM
From SSU

a. **Promptly** notify the police if a hit-and-run driver is involved, and

b. **Promptly** send us copies of the legal papers if a suit is brought.

3. **OUR RIGHT TO RECOVER FROM OTHERS** is changed by adding the following:

   If we make any payment and the **insured** recovers from another party, the **insured** shall hold the proceeds in trust for us and pay us back the amount we have paid.

4. The following Condition is added:

   **ARBITRATION**

   a. If we and an **insured** disagree whether the **insured** is legally entitled to recover damages from the owner or driver of an **uninsured motor vehicle**, or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

   b. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

SPECIMEN FORM
From SSU

**CA 2X 17** (Ed. 01 78)          Copyright, Insurance Services Office, 1977          Page 2 of 2

CA 99 21
(Ed. 01 78)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
#### (Broad Form)

It is agreed that:

A. The policy does not apply:

  1. Under any Liability Coverage, to **bodily injury** or **property damage**

    a. with respect to which an **insured** under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

    b. resulting from the **hazardous properties** of **nuclear material** and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

  2. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

  3. Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties of nuclear material**, if

    a. the **nuclear material** (1) is at any nuclear facility owned by, or operated by or on behalf of, an **insured** or (2) has been discharged or dispersed therefrom;

    b. the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured**; or

    c. the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c applies only to **property damage** to such **nuclear facility** and any property thereat.

B. As used in this endorsement:

"**hazardous properties**" include radioactive, toxic or explosive properties;

"**nuclear material**" means **source material**, **special nuclear material** or **byproduct material**;

"**source material**", "**special nuclear material**", and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

"**waste**" means any waste material (a) containing **byproduct material** and (b) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph 1 or 2 thereof;

"**nuclear facility**" means

  1. any **nuclear reactor**,

  2. any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing **spent fuel**, or (c) handling, processing or packaging **waste**,

  3. any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

  4. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"**property damage**" includes all forms of radioactive contamination of property.



SPECIMEN FORM
From SSU

Copyright, Insurance Services Office. 1977



**INA**

**AUTOMOBILE ENDORSEMENT**
**GENERAL PURPOSE**

Insurance Company
(Name of Insurance Company)

| Issued to: | | Forms a Part of Policy No. | This Endorsement, Effective: |
|---|---|---|---|
| DBA: **AL PHILLIPS THE CLEANER** | | DLP DO 52 22 24 2 | 7-1-81 |

It is agreed that the policy is hereby amended in the following particulars: **GENERAL CHANGES.**

**Delete Vehicle #2**
**Add Vehicle #11 & #12**                     Page 1 of 2
**Form CA 2001 is Also Added.**

**AUTOMOBILE ADDED**

To afford the insurance applicable under the policy with respect to the additional automobile described herein — Description of the automobile and facts respecting its purchase by the named insured:

| CAR NO. | DESCRIPTION Year - Trade Name - Model - Body Type - Serial No. | VIN (Vehicle Ident. No.) | PURCHASED Original Cost New | Actual Cost and New (N) or Used (U) | Month/ Year | Town and State Where the Covered Auto Will Be Principally Garaged | Terr. Code |
|---|---|---|---|---|---|---|---|
| 11 | 1974 Mercedes 240   1146012108687 | | | 10,000 | | Las Vegas, NV | 02 |
| 12 | 1981 Subaru 1800 DL   JF1-AFA-3B1BB110A32 | | | | | Las Vegas, NV | 02 |

| CAR NO. | Radius of Operation L, I, LD or Z | CLASSIFICATION Business Use S=Service R=Retail C=Commercial | Size GVW, GCW or Vehicle Seating Capacity | Symbol | Age Group | Primary Rating Factor | Secondary Rating Factor | CODE | RATING, if required Liability Class | Collision Class |
|---|---|---|---|---|---|---|---|---|---|---|
| 11 | | FAMILY AUTO | | | 6 | 1.00 | -.15 | 811120 | | |
| 12 | | FAMILY AUTO | | 8 | 1 | 1.00 | -.15 | 811120 | | |

**LOSS PAYEE:** Such insurance as is afforded for loss of or damage to the automobile is payable as interest may appear to the Named Insured and:
**NAME AND ADDRESS** #11-Newco Leasing Inc., 9278 Santa Monica Blvd., Beverly Hills, CA

**AUTOMOBILE ELIMINATED**

To discontinue insurance with respect to the following automobile: (Insert year, model, trade name and number when necessary for identification)
CAR NO.
CAR NO.

**CHANGES IN COVERAGES, LIMITS OR PREMIUM**

| COVERAGES (As Defined in the Policy) | EITHER (I) Including (D) Delete (A) Amended | Limits of Liability Now Applicable | | PREMIUM CAR NO. 11 $ Additional | $ Return | CAR NO. 12 $ Additional | $ Return | TOTAL $ Additional | $ Return | FOR CO. USE ONLY NEW ANNUAL PREM. Car No. 11 | Car No. 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BODILY INJURY | | Each Person $ ,000 | Each occurrence ,000 | | | | | | | | |
| PROPERTY DAMAGE | | | $ ,000 | | | | | | | | |
| BODILY INJURY | | Each Person $ ,000 | Each Accident $ ,000 | | | | | | | | |
| PROPERTY DAMAGE | | | $ ,000 | | | | | | | | |
| LIABILITY | I | Combined Single Limit $ 1,000,000 Each Accident | | 237 | | 237 | | 474 | 237 | 237 | 237 |
| MEDICAL PAYMENTS | I | $ 10,000 Each Person | | 26 | | 26 | | 52 | 26 | 26 | 26 |
| COMPREHENSIVE | I | * ACV Less $100 Ded | | 47 | | 81 | | 128 | 77 | 47 | 81 |
| COLLISION | I | * ACV Less $ 200 Deductible | | 98 | | 217 | | 315 | 104 | 98 | 217 |
| FIRE | | $ * | | | | | | | | | |
| THEFT | | $ * | | | | | | | | | |
| WIND | | $ * | | | | | | | | | |
| SPECIFIED PERILS | | $ * | | | | | | | | | |
| COMBINED ADDITIONAL | | $ * | | | | | | | | | |
| LIMITED SP. PERILS | | $ * | | | | | | | | | |
| TOWING | | $25 for each disablement | | | | | | | | | |
| UNINSURED MOTORISTS BODILY INJURY | | Each Person $ ,000 | Each Accident $ ,000 | | | | | | | | |
| **PROPERTY DAMAGE | | | $ ,000 | | | | | | | | |
| UNINSURED MOTORISTS | I | $ 30,000 Each Accident | | 14 | | 14 | | 28 | 14 | 14 | 14 |
| ENDORSEMENTS: | | | | | | | | | | | |
| * "ACV" means "Actual Cash Value" ** Complete in states only where this coverage is available. | | TOTALS $ | | 422 | | 575 | | 997 | 458 | 422 | 575 |
| | | NET TOTALS $ | | | | | | 539AP | | | |

**#1**
LE/dd/Marsh & McLennan 127078

DA-5E28  Printed in U.S.A. 7/78

Authorized Agent

PROCESSING COPY



**AUTOMOBILE ENDORSEMENT**
**GENERAL PURPOSE**

**Pacific Employers Insurance Company**

(Name of Insurance Company)

| Issued to: | Forms a Part of Policy No. | This Endorsement, Effective: |
|---|---|---|
| DBA: **ALLPHILLIPS THE CLEANERS** | DLP DO 52 22 24 2 | 7-1-81 |

It is agreed that the policy is hereby amended in the following particulars: **GENERAL CHANGES.**

Cont.                                    **Page 2 of 2**

## AUTOMOBILE ADDED

To afford the insurance applicable under the policy with respect to the additional automobile described herein — Description of the automobile and facts respecting its purchase by the named insured:

| CAR NO. | DESCRIPTION Year - Trade Name - Model - Body Type - Serial No. - VIN (Vehicle Ident. No.) | | PURCHASED Original Cost New | Actual Cost and New (N) or Used (U) | Month/ Year | TERRITORY Town and State Where the Covered Auto Will Be Principally Garaged | Terr. Code |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| CAR NO. | CLASSIFICATION Radius of Operation L, I, LD or Z' | Business Use S=Serivce R=Retail C=Commercial | Size GVW, GCW or Vehicle Seating Capacity | Symbol | Age Group | Primary Rating Factor | Secondary Rating Factor | CODE | RATING, if required Liability Class | Collision Class |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

**LOSS PAYEE:** Such insurance as is afforded for loss of or damage to the automobile is payable as interest may appear to the Named Insured and: **NAME AND ADDRESS**

## AUTOMOBILE ELIMINATED

To discontinue insurance with respect to the following automobile: (Insert year, model, trade name and number when necessary for identification)

CAR NO. **2**      **1978 BMW**      **#5780149**

CAR NO.

## CHANGES IN COVERAGES, LIMITS OR PREMIUM

| COVERAGES (As Defined in the Policy) | EITHER (I) Including (D) Delete (A) Amended | Limits of Liability Now Applicable Each Person | Each occurrence | PREMIUM CAR NO. 2 $ Additional | $ Return | CAR NO. $ Additional | $ Return | TOTAL $ Additional | $ Return | FOR CO. USE ONLY NEW ANNUAL PREM. Car No. | Car No. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BODILY INJURY | | $ ,000 | ,000 | | | | | | | | |
| PROPERTY DAMAGE | | | $ ,000 | | | | | | | | |
| BODILY INJURY | | Each Person $ ,000 | Each Accident $ ,000 | | | | | | | | |
| PROPERTY DAMAGE | | | $ ,000 | | | | | | | | |
| LIABILITY | D | Combined Single Limit $ 1,000,000 Each Accident | | 237 | | | | | See | 237 | |
| MEDICAL PAYMENTS | D | $ 10,000 Each Person | | 26 | | | | | Page | 26 | |
| COMPREHENSIVE | D | $ * ACV Less $1500 Ded | | 77 | | | | | 1 | 77 | |
| COLLISION | D | * ACV Less $1500 Deductible | | 104 | | | | | | 104 | |
| FIRE | | $ * | | | | | | | | | |
| THEFT | | $ * | | | | | | | | | |
| WIND | | $ * | | | | | | | | | |
| SPECIFIED PERILS | | $ * | | | | | | | | | |
| COMBINED ADDITIONAL | | $ * | | | | | | | | | |
| LIMITED SP. PERILS | | $ * | | | | | | | | | |
| TOWING | | $25 for each disablement | | | | | | | | | |
| UNINSURED MOTORISTS | | Each Person $ ,000 | Each Accident $ ,000 | | | | | | | | |
| BODILY INJURY | | | | | | | | | | | |
| ** PROPERTY DAMAGE | | | $ ,000 | | | | | | | | |
| UNINSURED MOTORISTS | D | $ 30,000 Each Accident | | 14 | | | | | | 14 | |
| ENDORSEMENTS: | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| * "ACV" means "Actual Cash Value" ** Complete in states only where this coverage is available. | | TOTALS $ | | 458 | | | | | | 458 | |
| | | NET TOTALS $ | | | | | | | Incl. on page 1 | | |

Authorized Agent

PROCESSING COPY



## MULTI-PURPOSE ENDORSEMENT

### Applicable Under Sections I and II

**Named Insured**

SHAPIRO BROTHERS INVESTMENT CORPORATION DBA:  AL PHILLIPS THE CLEANERS

| **Effective** 7-1-81 | **Policy No.** DLP DO 52 22 24 2 |
|---|---|

**Issued by (Name of Insurance Company)**
Pacific Employers Insurance Company

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that this policy is amended as indicated by ☒

**A. NAME AND ADDRESS CHANGES**
☐ Change Name to:

☐ Change Address to:

**B. POLICY PERIOD CHANGE**
☐ Change Policy to read:From _____ To _____

**C. LIMITS OF LIABILITY**
☐ Change to read as follows. Previous limits apply if no change indicated.

| SECTION I | SECTION II |
|---|---|
|  |  |

**D. LOCATION CHANGES**
☐ Following Locations:   ☐ Added;   ☐ Deleted

**E. OTHER CHANGES**
☒   Boiler & Machinery Coverage is added as persattached.

**F. PREMIUM**
☒ Change as Follows:   TOTAL PREMIUM: ☒Additional;   ☐ Return____ $ 1550 _____
                        PREMIUM DUE HEREWITH: ☒Additional;   ☐ Return____ $ 1550 _____

If this policy is payable in installments, the installments due are amended as follows:

| DUE DATE | ORIGINAL INSTALLMENTS | ☐ INCREASE ☐ DECREASE | REVISED INSTALLMENTS |
|---|---|---|---|
|  | $ | $ | $ |
|  | $ | $ | $ |

Total Change in Installments:
☐ Increase;   ☐ Decrease._____ $ _____

Endorsement
No. 2
LE/dd/Marsh & McLennan 127078

_____
Authorized Agent

K-1548 PRINTED IN U.S.A.

RIC COPY



**MULTI-PURPOSE ENDORSEMENT**

**Applicable Under Sections I and II**

| | |
|---|---|
| Named Insured | |
| **SHAPIRO BROTHERS INVESTMENT CORP. DBA:  AL PHILLIPS THE CLEANER** | |
| Effective **7-1-81** | Policy No. **DEP DO 52 22 24 2** |
| Issued by (Name of Insurance Company) **PEIC** | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that this policy is amended as indicated by ☒

**A. NAME AND ADDRESS CHANGES**

☐ Change Name to:

☐ Change Address to:                                         OCT 26 1981

**B. POLICY PERIOD CHANGE**

☐ Change Policy to read:From _____ To _____

**C. LIMITS OF LIABILITY**

☐ Change to read as follows. Previous limits apply if no change indicated.

| SECTION I | SECTION II |
|---|---|
| **GLASS COVERAGE IS ADDED WITH A $500 DEDUCTIBLE AS PER ATTACHED CC1E15's.** | |

**D. LOCATION CHANGES**

☐ Following Locations:  ☐ Added;  ☐ Deleted

**E. OTHER CHANGES**

☐

**F. PREMIUM**

☒ Change as Follows:    TOTAL PREMIUM:  ☒ Additional;  ☐ Return ____ $1628 _____

PREMIUM DUE HEREWITH:  ☒ Additional;  ☐ Return ____ $1628 _____

If this policy is payable in installments, the installments due are amended as follows:

| DUE DATE | ORIGINAL INSTALLMENTS | ☐ INCREASE   ☐ DECREASE | REVISED INSTALLMENTS |
|---|---|---|---|
| | $ | $ | $ |
| | $ | $ | $ |

Total Change in Installments:

☐ Increase;  ☐ Decrease _____ $ _____

Endorsement
No. 3

LE/le/10-19-81

_____
Authorized Agent

K-1548 PRINTED IN U.S.A.

RIC COPY



| Named Insured | | Endorsement Number |
|---|---|---|
| SHAPIRO BROTHERS INVESTMENT CORP. | | 3 CONT'D |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| DLP | D05222242 | 7-1-81 to 7-1-82 | 7-1-81 |

| Issued By (Name of Insurance Company) |
|---|
| PEIC |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## GLASS SCHEDULE

| LOC. | # OF PLATES | LENGTH | WIDTH | DESCRIPTION |
|---|---|---|---|---|
| 1 | 1 | 15 | 120 | SIDE |
| | 1 | 72 | 112 | INSIDE MIRROR |
| | 1 | 36 | 67 | TRANSOM |
| | 2 | 32 | 76 | DOOR |
| | 1 | 42 | 120 | RETURN |
| | 2 | 96 | 120 | FRONT |
| | 1 | 38 | 70 | TRANSOM |
| | 2 | 16 | 80 | RETURN |
| | 1 | 32 | 78 | DOOR |
| | 2 | 96 | 120 | FRONT |
| | 3 | 68 | 108 | FRONT |
| | 1 | 34 | 38 | TRANSOM |
| | 1 | 32 | 78 | DOOR |
| | 3 | 70 | 108 | FRONT |
| | 1 | 30 | 64 | DOOR |
| | 1 | 34 | 36 | TRANSOM |
| | 1 | 10 | 30 | TRANSOM |
| | 1 | 76 | 82 | RETURN |
| 2 | 4 | 14 | 76 | FRONT |
| | 5 | 46 | 76 | FRONT |
| | 2 | 56 | 76 | FRONT |
| | 2 | 46 | 46 | FRONT |
| | 6 | 32 | 78 | FRONT |
| | 2 | 10 | 72 | FRONT |
| | 3 | 46 | 72 | FRONT |
| | 1 | 12 | 54 | FRONT |
| | 1 | 54 | 76 | FRONT |
| | 1 | 46 | 54 | FRONT |
| | 1 | 12 | 72 | FRONT |
| | 1 | 72 | 76 | FRONT |
| | 2 | 12 | 74 | FRONT |
| | 2 | 74 | 76 | FRONT |
| | 2 | 46 | 74 | FRONT |
| | 6 | 70 | 76 | FRONT |
| | 6 | 46 | 70 | FRONT |
| | 2 | 34 | 78 | DOOR |
| | 1 | 10 | 76 | FRONT |
| | 2 | 76 | 80 | FRONT |
| | 2 | 46 | 80 | FRONT |
| | 1 | 60 | 78 | FRONT |

| | Authorized Agent |
|---|---|

CC-1E15  Ptd. in U.S.A.



| Named Insured | | | Endorsement Number |
|---|---|---|---|
| SHAPIRO BROTHERS INVESTMENT CORP. | | | 3 CONT'D |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| DLP | D05222242 | 7-1-81 to 7-1-82 | 7-1-81 |

| Issued By (Name of Insurance Company) | | | |
|---|---|---|---|
| PEIC | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## GLASS SCHEDULE CONTINUED

| LOC. | # OF PLATES | LENGTH | WIDTH | DESCRIPTION |
|---|---|---|---|---|
| 3 | 1 | 28 | 54 | FRONT |
| | 1 | 54 | 80 | FRONT |
| | 1 | 28 | 52 | FRONT |
| | 1 | 52 | 80 | FRONT |
| | 1 | 28 | 58 | FRONT |
| | 1 | 58 | 102 | FRONT |
| | 1 | 18 | 102 | DOOR |
| | 2 | 32 | 78 | TRANSOM |
| | 2 | 32 | 46 | FRONT |
| | 1 | 28 | 56 | FRONT |
| | 1 | 56 | 102 | FRONT |
| | 1 | 24 | 28 | FRONT |
| | 1 | 24 | 102 | FRONT |
| | 1 | 34 | 108 | FRONT |
| | 1 | 28 | 34 | FRONT |
| | 1 | 58 | 108 | FRONT |
| | 1 | 28 | 58 | FRONT |
| | 1 | 22 | 108 | FRONT |
| | 1 | 22 | 108 | FRONT |
| | 7 | 28 | 60 | FRONT |
| | 7 | 60 | 108 | FRONT |
| | 1 | 18 | 28 | FRONT |
| | | | | |
| 6 | 1 | 76 | 112 | FRONT |
| | 2 | 78 | 112 | FRONT |
| | 3 | 30 | 78 | FRONT |
| | 2 | 32 | 76 | DOOR |
| | 1 | 62 | 72 | TRANSOM |
| | 2 | 46 | 112 | FRONT |
| | 2 | 30 | 46 | FRONT |
| | 1 | 66 | 80 | TRANSOM |
| | 2 | 40 | 76 | DOOR |
| | 3 | 30 | 84 | FRONT |
| | 3 | 84 | 112 | FRONT |
| | 7 | 72 | 112 | FRONT |
| | 7 | 30 | 72 | FRONT |

Authorized Agent

CC-1E15  Ptd. in U.S.A.

# INA

**AUTOMOBILE ENDORSEMENT**
**GENERAL PURPOSE**

PEIC
(Name of Insurance Company)

| Issued to: | | |
|---|---|---|
| Shapiro Brothers Investment Corp. | Forms a Part of Policy No. OLP DO 52 22 24 2 | This Endorsement, Effective: 03-24-82 |

It is agreed that the policy is hereby amended in the following particulars: **GENERAL CHANGES.**

**Adding Vehicle #13**

## AUTOMOBILE ADDED

To afford the insurance applicable under the policy with respect to the additional automobile described herein — Description of the automobile and facts respecting its purchase by the named insured:

| CAR NO. | DESCRIPTION Year - Trade Name - Model - Body Type - Serial No. - | VIN (Vehicle Ident. No.) | PURCHASED Original Cost New | Actual Cost and New (N) or Used (U) | Month/ Year | TERRITORY Town and State Where the Covered Auto Will Be Principally Garaged | Terr. Code |
|---|---|---|---|---|---|---|---|
| 13 | 1978 Ford P/U Carrier SGTATD-91850 | | 2600 | | | Las Vegas, NV | 02 |

| CAR NO. | Radius of Operation L, I, LD or Z | Business Use S=Serivce R=Retail C=Commercial | CLASSIFICATION Size GVW, GCW or Vehicle Seating Capacity | Symbol | Age Group | Primary Rating Factor | Secondary Rating Factor | CODE | RATING, if required Liability Class | Collision Class |
|---|---|---|---|---|---|---|---|---|---|---|
| 13 | L | R | LT | 5 | | 1.60 | .00 | 02499 | | |

**LOSS PAYEE:** Such insurance as is afforded for loss of or damage to the automobile is payable as interest may appear to the Named Insured and:
**NAME AND ADDRESS**

## AUTOMOBILE ELIMINATED

To discontinue insurance with respect to the following automobile: (Insert year, model, trade name and number when necessary for identification)

CAR NO.

CAR NO.                                                        MAY 1 0 1982

### CHANGES IN COVERAGES, LIMITS OR PREMIUM

PR   271

| COVERAGES (As Defined in the Policy) | EITHER (I) Including (D) Delete (A) Amended ▼ | Limits of Liability Now Applicable | | PREMIUM CAR NO. 13 | | CAR NO. | | TOTAL | | FOR CO. USE ONLY NEW ANNUAL PREM | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Each Person | Each occurrence | $ Additional | $ Return | $ Additional | $ Return | $ Additional | $ Return | Car No. 13 | Car No. |
| BODILY INJURY | | $       ,000 | ,000 | | | | | | | | |
| PROPERTY DAMAGE | | | $       ,000 | | | | | | | | |
| BODILY INJURY | | Each Person $       ,000 | Each Accident $       ,000 | | | | | | | | |
| PROPERTY DAMAGE | | | $       ,000 | | | | | | | | |
| LIABILITY | T | Combined Single Limit $ 1,000 ,000 Each Accident | | 106. | | | | 106. | | 390. | |
| MEDICAL PAYMENTS | T | $   10 ,000   Each Person | | 10. | | | | 10. | | 37. | |
| COMPREHENSIVE | | $ * | | | | | | | | | |
| COLLISION | | * ACV Less $          Deductible | | | | | | | | | |
| FIRE | | $ * | | | | | | | | | |
| THEFT | | $ * | | | | | | | | | |
| WIND | | $ * | | | | | | | | | |
| SPECIFIED PERILS | | $ * | | | | | | | | | |
| COMBINED ADDITIONAL | | $ * | | | | | | | | | |
| LIMITED SP. PERILS | | $ * | | | | | | | | | |
| TOWING | | $25 for each disablement | | | | | | | | | |
| UNINSURED MOTORISTS | | Each Person | Each Accident | | | | | | | | |
| BODILY INJURY | | $       ,000 | $       ,000 | | | | | | | | |
| **PROPERTY DAMAGE | | | $       ,000 | | | | | | | | |
| UNINSURED MOTORISTS | T | $   30 ,000   Each Accident | | 4. | | | | 4. | | 14. | |
| ENDORSEMENTS: | | | | | | | | | | | |
| * "ACV" means "Actual Cash Value" ** Complete in states only where this coverage is available. | | TOTALS $ | | 120. | | | | | | 390. | |
| | | NET TOTALS $ | | | | 120. | | | | | |

PG/bm/Bayley Marbin & Fay, Las Vegas/5-7-82/546

DA-5E28  Printed in U.S.A. 7/78

Authorized Agent

**PROCESSING COPY**

# AUTOMOBILE ENDORSEMENT
## GENERAL PURPOSE

**INA** (Name of Insurance Company)

| Issued to: | DBA:  Al Phillip The Cleaner | Forms a Part of Policy No. OLP DO 52 22 24 2 | This Endorsement Effective: 4-17-82 |
|---|---|---|---|
| | | Policy Period 7-1-81 to 7-1-82 | Endorsement Number: |

It is agreed that the policy is hereby amended in the following particulars: **GENERAL CHANGES.**

## AUTOMOBILE ADDED

To afford the insurance applicable under the policy with respect to the additional automobile described herein — Description of the automobile and facts respecting its purchase by the named insured:

| CAR NO. | DESCRIPTION Year - Trade Name - Model - Body Type - Serial No. | VIN (Vehicle Ident. No.) | PURCHASED Original Cost New | Actual Cost and New (N) or Used (U) | Month/ Year | TERRITORY Town and State Where the Covered Auto Will Be Principally Garaged | Terr. Code |
|---|---|---|---|---|---|---|---|
| 14 | 79 Ford Mustang #9R02F138957 | | | | | Las Vegas, NV | 02 |

| CAR NO. | Radius of Operation L, I, LD or Z. | CLASSIFICATION Business Use S=Serivce R=Retail C=Commercial | Size GVW, GCW or Vehicle Seating Capacity | Symbol | Age Group | Primary Rating Factor | Secondary Rating Factor | CODE | RATING, if required Liability Class | Collision Class |
|---|---|---|---|---|---|---|---|---|---|---|
| 14 | | Personal | | 6 | 4 | 2.25 | −.15 | 854120 | | |

(stamp: 2861 SEP 30 1982)

**LOSS PAYEE:** Such insurance as is afforded for loss or damage to the automobile is payable as interest may appear to the Named Insured and:
**NAME AND ADDRESS**

## AUTOMOBILE ELIMINATED

To discontinue insurance with respect to the following automobile: (Insert year, model, trade name and number when necessary for identification)

CAR NO.

CAR NO.

## CHANGES IN COVERAGES, LIMITS OR PREMIUM

| COVERAGES (As Defined in the Policy) | EITHER (I) Including (D) Delete (A) Amended | Limits of Liability Now Applicable | P/R  .205 CAR NO.  14 | PREMIUM CAR NO.  14 | | TOTAL | | FOR CO. USE ONLY NEW ANNUAL PREM. | |
|---|---|---|---|---|---|---|---|---|---|
| | | Each Person / Each occurrence | $ Additional | $ Additional | $ Return | $ Additional | $ Return | Car No. 14 | Car No. |
| BODILY INJURY | | $ ,000 / ,000 | | | | | | | |
| PROPERTY DAMAGE | | $ ,000 | | | | | | | |
| BODILY INJURY | | Each Person $ ,000 / Each Accident $ ,000 | | | | | | | |
| PROPERTY DAMAGE | | $ ,000 | | | | | | | |
| LIABILITY | I | Combined Single Limit $ 1,000 ,000 Each Accident | 106 | | | | | 515 | |
| MEDICAL PAYMENTS | I | $ 10 ,000 Each Person | 13 | | | | | 61 | |
| COMPREHENSIVE | I | $ * ACV less 100 ded. | 18 | | | | | 88 | |
| COLLISION | I | * ACV Less $ 200 Deductible | 55 | | | | | 266 | |
| FIRE | | $ * | | | | | | | |
| THEFT | | $ * | | | | | | | |
| WIND | | $ * | | | | | | | |
| SPECIFIED PERILS | | $ * | | | | | | | |
| COMBINED ADDITIONAL | | $ * | | | | | | | |
| LIMITED SP. PERILS | | $ * | | | | | | | |
| TOWING | | $25 for each disablement | | | | | | | |
| UNINSURED MOTORISTS BODILY INJURY | | Each Person $ ,000 / Each Accident $ ,000 | | | | | | | |
| ** PROPERTY DAMAGE | | $ ,000 | | | | | | | |
| UNINSURED MOTORISTS | I | $ 30 ,000 Each Accident | 2 | | | | | 11 | |
| ENDORSEMENTS: | | | | | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| * "ACV" means "Actual Cash Value" ** Complete in states only where this coverage is available. | | TOTALS $ | | | | | | 941 | |
| | | NET TOTALS $ | 194 | | | | | | |

BJ/bm/Bayly, Martin & Fay, Las Vegas/9-24-82/546

Authorized Agent

DA 5E28a   Printed in U S A  12/81

**PROCESSING COPY**

**INA** AUTOMOBILE ENDORSEMENT
GENERAL PURPOSE

_____ Insurance Company
(Name of Insurance Company)

| Issued to: DBA: Al Phillip The Cleaner | Policy No. | This Endorsement Effective: |
|---|---|---|
| | OCP 90 22 22 24 2 | 5-17-82 |
| | 7-1-81 to 7-1-82 | Endorsement Number |

It is agreed that the policy is hereby amended in the following particulars: **GENERAL CHANGES.**

It is agreed that Newco Leasing Inc is deleted as additional Insureds as respects
1974 Mercedes 240 #114012109687

## AUTOMOBILE ADDED

To afford the insurance applicable under the policy with respect to the additional automobile described herein — Description of the automobile and facts respecting its purchase by the named insured:

| CAR NO. | DESCRIPTION | | PURCHASED | | | TERRITORY | Terr. Code |
|---|---|---|---|---|---|---|---|
| | Year - Trade Name - Model - Body Type - Serial No. | VIN (Vehicle Ident. No.) | Original Cost New | Actual Cost and New (N) or Used (U) | Month/ Year | Town and State Where the Covered Auto Will be Principally Garaged | |
| | | | | | | | |

| CAR NO. | CLASSIFICATION | | | | | | CODE | RATING, if required | |
|---|---|---|---|---|---|---|---|---|---|
| | Radius of Operation L, I, LD or Z, r | Business Use S=Service R=Retail C=Commercial | Size GVW, GCW or Vehicle Seating Capacity | Symbol | Age Group | Primary Rating Factor | Secondary Rating Factor | | Liability Class | Collision Class |
| | | | | | | | | | | |

**LOSS PAYEE:** Such insurance as is afforded for loss of or damage to the automobile is payable as interest may appear to the Named Insured and:
**NAME AND ADDRESS**

## AUTOMOBILE ELIMINATED

To discontinue insurance with respect to the following automobile: (Insert year, model, trade name and number when necessary for identification)
CAR NO.
CAR NO.

## CHANGES IN COVERAGES, LIMITS OR PREMIUM

| COVERAGES (As Defined in the Policy) | EITHER (I) Including (D) Delete (A) Amended | Limits of Liability Now Applicable | | PREMIUM | | | | | | FOR CO. USE ONLY NEW ANNUAL PREM. | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | CAR NO. | | CAR NO. | | TOTAL | | | |
| | | Each Person | Each occurrence | $ Additional | $ Return | $ Additional | $ Return | $ Additional | $ Return | Car No. | Car No. |
| BODILY INJURY | | $ .000 | | | | | | | | | |
| PROPERTY DAMAGE | | | $ ,000 | | | | | | | | |
| BODILY INJURY | | Each Person | Each Accident | | | | | | | | |
| | | $ ,000 | ,000 | | | | | | | | |
| PROPERTY DAMAGE | | | $ ,000 | | | | | | | | |
| LIABILITY | | Combined Single Limit | | | | | | | | | |
| | | $ ,000 | Each Accident | | | | | | | | |
| MEDICAL PAYMENTS | | $ ,000 | Each Person | | | | | | | | |
| COMPREHENSIVE | | $ * | | | | | | | | | |
| COLLISION | | * ACV Less $ | Deductible | | | | | | | | |
| FIRE | | $ * | | | | | | | | | |
| THEFT | | $ * | | | | | | | | | |
| WIND | | $ * | | | | | | | | | |
| SPECIFIED PERILS | | $ * | | | | | | | | | |
| COMBINED ADDITIONAL | | $ * | | | | | | | | | |
| LIMITED SP. PERILS | | $ * | | | | | | | | | |
| TOWING | | $25 for each disablement | | | | | | | | | |
| UNINSURED MOTORISTS | | Each Person | Each Accident | | | | | | | | |
| BODILY INJURY | | $ ,000 | $ ,000 | | | | | | | | |
| ** PROPERTY DAMAGE | | | $ ,000 | | | | | | | | |
| UNINSURED MOTORISTS | | $ ,000 | Each Accident | | | | | | | | |
| ENDORSEMENTS: | | | | | | | | | | | |

| | | |
|---|---|---|
| * "ACV" means "Actual Cash Value" ** Complete in states only where this coverage is available. | TOTALS $ | |
| | NET TOTALS $ | |

BJ/bm/9-24-82

Authorized Agent

**PROCESSING COPY**



## MULTI-PURPOSE ENDORSEMENT

### Applicable Under Sections I and II

| | |
|---|---|
| Named Insured | |
| **SHAPIRO BROTHERS INVESTMENT CORP DBA: AL PHILLIPS THE CLEANER** | |
| Effective **12-21-81** | Policy No. OBP ~~OLP DO~~ 52 22 24 2 |
| Issued by (Name of Insurance Company) **PACIFIC EMPLOYERS INSURANCE COMPANY** | |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that this policy is amended as indicated by ☒

**A. NAME AND ADDRESS CHANGES**

☐ Change Name to:

☐ Change Address to:

**B. POLICY PERIOD CHANGE**

☐ Change Policy to read: From _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ To _ _ _ _ _ _ _ _ _ _ _ _

**C. LIMITS OF LIABILITY**

☐ Change to read as follows. Previous limits apply if no change indicated.

| SECTION I | SECTION II |
|---|---|
| | |
| | |
| | |

**D. LOCATION CHANGES**

☒ Following Locations: ☒ Added; ☐ Deleted    9-1: 2702 N. GREEN VALLEY PKWY;
HENDERSON, NV 89105 (SECTION II ONLY)

**E. OTHER CHANGES**

☐

JAN 20 1982

**F. PREMIUM**

☒ Change as Follows:  TOTAL PREMIUM: ☒ Additional; ☐ Return _ _ _ _ $ _ _ **64** _ _ _ _ _
PREMIUM DUE HEREWITH: ☒ Additional; ☐ Return _ _ _ _ $ _ _ **64** _ _ _ _ _

If this policy is payable in installments, the installments due are amended as follows:

| DUE DATE | ORIGINAL INSTALLMENTS | ☐ INCREASE ☐ DECREASE | REVISED INSTALLMENTS |
|---|---|---|---|
| | $ | $ | $ |
| | $ | $ | $ |

Total Change in Installments:

☐ Increase; ☐ Decrease _ _ _ _ _ _ _ _ _ _ _ $ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Endorsement
No.

**BJ:dc/1-18-82/BAYLY. MARTIN & FAY/546** _____
Authorized Agent

K-1548 PRINTED IN U.S.A.

BIG COPY



## MULTI-PURPOSE ENDORSEMENT
### Applicable Under Sections I and II

**Named Insured**

**SHAPIRO BROTHERS INVESTMENT CORP. DBA: AL PHILLIPS THE CLEANER**

| Effective | Policy No. |
|---|---|
| **1-26-82** | **DLP DO 52 22 24 2** |

Issued by (Name of Insurance Company)

**PACIFIC EMPLOYERS INSURANCE COMPANY**

The above is required to be completed only when this endorsement is issued subse_____ _____oaration of the policy.

It is agreed that this policy is amended as indicated by ☒

**A. NAME AND ADDRESS CHANGES**

☐ Change Name to:

☐ Change Address to:

**B. POLICY PERIOD CHANGE**

☐ Change Policy to read: From --------------------------- To---------------------

**C. LIMITS OF LIABILITY**

☐ Change to read as follows. Previous limits apply if no change indicated.

*APR 23 1982*

| SECTION I | SECTION II |
|---|---|
| LIMIT #1 - $1,255,000. | |

**D. LOCATION CHANGES**

☐ Following Locations:   ☐ Added;   ☐ Deleted

**E. OTHER CHANGES**

☐

**F. PREMIUM**

☐ Change as Follows:   TOTAL PREMIUM:   ☒ Additional;   ☐ Return ____ $ ____ .74 ----------
PREMIUM DUE HEREWITH:   ☐ Additional;   ☐ Return ____ $ -------------------

If this policy is payable in installments, the installments due are amended as follows:

| DUE DATE | ORIGINAL INSTALLMENTS | ☐ INCREASE   ☐ DECREASE | REVISED INSTALLMENTS |
|---|---|---|---|
| | $ | $ | $ |
| | $ | $ | $ |

Total Change in Installments:

☐ Increase;   ☐ Decrease. ----------- $ -------------------

Endorsement No.

.TM: de/Bayly. Martin & Fay. /546

_____
Authorized Agent

K-1548 PRINTED IN U.S.A.



# MULTI-PURPOSE ENDORSEMENT
## Applicable Under Sections I and II.

**Named Insured**

**DBA: AL PHILLIPS THE CLEANER**

| Effective | Policy No. |
|---|---|
| **3-11-82** | **DLP DO 52 22 24 2** |

Issued by (Name of Insurance Company)

**PACIFIC EMPLOYERS INSURANCE COMPANY**

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy..

It is agreed that this policy is amended as indicated by [X]

**A. NAME AND ADDRESS CHANGES**

☐ Change Name to:

☐ Change Address to:

**B. POLICY PERIOD CHANGE**

☐ Change Policy to read:From _____ To_____

**C. LIMITS OF LIABILITY**

☒ Change to read as follows. Previous limits apply if no change indicated.

| SECTION I | SECTION II |
|---|---|
| **LIMIT #1 - $1,257,794.** | |

**D. LOCATION CHANGES**

☐ Following Locations:   ☐ Added;   ☐ Deleted

**E. OTHER CHANGES**

☐

**F. PREMIUM**

☒ Change as Follows:   TOTAL PREMIUM:   ☒ Additional;   ☐ Return____$__**WAIVED**_____

PREMIUM DUE HEREWITH:   ☐ Additional;   ☐ Return____$_____

If this policy is payable in installments, the installments due are amended as follows:

| DUE DATE | ORIGINAL INSTALLMENTS | ☐ INCREASE   ☐ DECREASE | REVISED INSTALLMENTS |
|---|---|---|---|
| | $ | $ | $ |
| | $ | $ | $ |

Total Change in Installments:

☐ Increase;   ☐ Decrease_____ $ _____

Endorsement No.

**JM:ds/Bayly, Martin & Fay/4-20-82/546**

_____

Authorized Agent

K-1548 PRINTED IN U.S.A.



**MULTI-PURPOSE ENDORSEMENT**

**Applicable Under Sections I and II**

Named Insured

**DBA: AL PHILLIPS THE CLEANER**

| Effective | Policy No. |
|---|---|
| **3-15-82** | **DLP DO 52 22 24 2** |

Issued by (Name of insurance Company)

**PACIFIC EMPLOYERS INSURANCE CO.**

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that this policy is amended as indicated by ☒

**A. NAME AND ADDRESS CHANGES**

☐ Change Name to:

☐ Change Address to:

**B. POLICY PERIOD CHANGE**

☐ Change Policy to read: From _____ To _____

**C. LIMITS OF LIABILITY**

☒ Change to read as follows. Previous limits apply if no change indicated.

| SECTION I | SECTION II |
|---|---|
| **LIMIT #1 – $1,260,565.** | |

**D. LOCATION CHANGES**

☐ Following Locations:  ☐ Added;  ☐ Deleted

**E. OTHER CHANGES**

☐

**F. PREMIUM**

☒ Change as Follows:  TOTAL PREMIUM: ☒ Additional;  ☐ Return ____ $ _____ **WAIVED** ____

PREMIUM DUE HEREWITH: ☐ Additional;  ☐ Return ____ $ _____

If this policy is payable in installments, the installments due are amended as follows:

| DUE DATE | ORIGINAL INSTALLMENTS | ☐ INCREASE | ☐ DECREASE | REVISED INSTALLMENTS |
|---|---|---|---|---|
| | $ | $ | | $ |
| | $ | $ | | $ |

Total Change in Installments:

☐ Increase;  ☐ Decrease _____ $ _____

Endorsement No.

**JM:ds/Bayly, Martin & Fay/4-20-82/546**

_____
Authorized Agent

K-1548 PRINTED IN U.S.A.



**MULTI-PURPOSE ENDORSEMENT**

**Applicable Under Sections I and II**

| Named Insured | Endorsement Number |
|---|---|
| DBA:  Al Phillips The Cleaner | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| OLB | DO 52 22 24 2 | 7-1-81 to 7-1-82 | 4-17-82 |

| Issued By (Name of Insurance Company) |
|---|
| Pacific Employers Insurance Company |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is agreed that this policy is amended as indicated by ☒

**A. NAME AND ADDRESS CHANGES**

☒ Change Name to:     **Al Phillips The Cleaner**

☐ Change Address to:

**B. POLICY PERIOD CHANGE**

☐ Change Policy to read:From _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ To _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**C. LIMITS OF LIABILITY**

☐ Change to read as follows. Previous limits apply if no change indicated.

| SECTION I | SECTION II |
|---|---|
| | |

**D. LOCATION CHANGES**

☐ Following Locations:  ☐ Added;   ☐ Deleted

**E. OTHER CHANGES**

☐

**F. PREMIUM**

☒ Change as Follows:     TOTAL PREMIUM: ☐ Additional;   ☐ Return _ _ $ No Change _ _ _ _ _ _
PREMIUM DUE HEREWITH: ☐ Additional;   ☐ Return _ _ $ No Change _ _ _ _ _ _

If this policy is payable in installments, the installments due are amended as follows:

| DUE DATE | ORIGINAL INSTALLMENTS | ☐ INCREASE    ☐ DECREASE | REVISED INSTALLMENTS |
|---|---|---|---|
| | $ | $ | $ |
| | $ | $ | $ |

Total Change in Installments:

☐ Increase;     ☐ Decrease _ _ _ _ _ _ _ _ _ _ $ _ _ _ _ _ _ _ _ _ _ _ _

Endorsement
No.

BJ/bm/9-24-82

_____
Authorized Agent



## ADDITIONAL INSURED
### (Premises Leased To The Named Insured)
### Applicable Under Section II

| Named Insured |
|---|
| SHAPIRO BROTHERS INVESTMENT CORP. |

| Effective | Policy No. |
|---|---|
| 7-1-81 | DLP DO 52 22 24 2 |

| Issued by (Name of Insurance Company) |
|---|
| PEI |

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

Under the SPECIAL CONDITIONS Applicable To Section II, the "Persons Insured" condition is amended to include as an Insured the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance, or use of that part of the premises designated below leased to the Named Insured, and subject to the following additional exclusions:

The insurance does not apply:

1.  To any occurrence which takes place after the Named Insured ceases to be a tenant in said premises;

2.  To structural alterations, new construction, or demolition operations performed by or on behalf of the person or organization designated below;

3.  To liability assumed by said person or organization under any contract or agreement.

| Designation Of Premises (Part Leased To Named Insured) | Name Of Person Or Organization (Additional Insured) |
|---|---|
| 953-5  E. Sahara<br>Las Vegas, NV | Commercial Center<br>1830 E. Sahara, Ste. 100<br>Las Vegas, NV  89104 |

Endorsement No.

Authorized Agent

K-1522   Ptd. in U.S.A.



# ADDITIONAL INSURED
## (Premises Leased To The Named Insured)
### Applicable Under Section II

| Named Insured |
|---|
| SHAPIRO BROTHERS INVESTMENT CORP. |

| Effective 7-1-81 | Policy No. DLP DO 52 22 24 2 |
|---|---|

| Issued by (Name of Insurance Company) |
|---|
| PEI |

**The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.**

Under the SPECIAL CONDITIONS Applicable To Section II, the "Persons Insured" condition is amended to include as an Insured the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance, or use of that part of the premises designated below leased to the Named Insured, and subject to the following additional exclusions:

The insurance does not apply:

1. To any occurrence which takes place after the Named Insured ceases to be a tenant in said premises;

2. To structural alterations, new construction, or demolition operations performed by or on behalf of the person or organization designated below.

3. To liability assumed by said person or organization under any contract or agreement.

| Designation Of Premises<br>(Part Leased To Named Insured) | Name Of Person Or Organization<br>(Additional Insured) |
|---|---|
| 3745 E. Desert Inn Rd.<br>Las Vegas, NV | Harold Goodman<br>2280 Camino Real<br>Palm Springs, CA   92262 |

Authorized Agent

Endorsement No.

K-1522   Ptd. in U.S.A.



### ADDITIONAL INSURED
**(Premises Leased To The Named Insured)**
**Applicable Under Section II**

**Named Insured**

SHAPIRO BROTHERS INVESTMENT CORP.

**Effective** 7-1-81

**Policy No.** DLP DO 52 22 24 2

**Issued by (Name of Insurance Company)** PET

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

Under the SPECIAL CONDITIONS Applicable To Section II, the "Persons Insured" condition is amended to include as an Insured the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance, or use of that part of the premises designated below leased to the Named Insured, and subject to the following additional exclusions:

The insurance does not apply:

1. To any occurrence which takes place after the Named Insured ceases to be a tenant in said premises;

2. To structural alterations, new construction, or demolition operations performed by or on behalf of the person or organization designated below;

3. To liability assumed by said person or organization under any contract or agreement.

| Designation Of Premises<br>(Part Leased To Named Insured) | Name Of Person Or Organization<br>(Additional Insured) |
|---|---|
| 1061 E. Flamingo Rd.<br>Las Vegas, NV  89109 | Vegas Towers Management<br>1061 E. Flamingo<br>Las Vegas, NV  89109 |

**Authorized Agent**

Endorsement No.

K-1522   Ptd. in U.S.A.



### ADDITIONAL INSURED
(Premises Leased To The Named Insured)
Applicable Under Section II

**Named Insured**

SHAPIRO BROTHERS INVESTMENT CORP.

| Effective 7-1-81 | Policy No. DLP DO 52 22 24ꞌ2 |
|---|---|

**Issued by (Name of Insurance Company)**

PEI

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

Under the SPECIAL CONDITIONS Applicable To Section II, the "Persons Insured" condition is amended to include as an Insured the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance, or use of that part of the premises designated below leased to the Named Insured, and subject to the following additional exclusions:

The insurance does not apply:

1. To any occurrence which takes place after the Named Insured ceases to be a tenant in said premises:

2. To structural alterations, new construction, or demolition operations performed by or on behalf of the person or organization designated below:

3. To liability assumed by said person or organization under any contract or agreement.

| Designation Of Premises (Part Leased To Named Insured) | Name Of Person Or Organization (Additional Insured) |
|---|---|
| 524 E. Twain<br>Las Vegas, NV<br><br>3620 W. Sahara<br>Las Vegas, NV | Realty Holding Group<br>300 S. 4th St., Suite 805<br>Las Vegas, NV  89101 |

Authorized Agent

Endorsement No.

K-1522   Ptd. in U.S.A.



# ADDITIONAL INSURED
### (Premises Leased To The Named Insured)
### Applicable Under Section II

**Named Insured**
SHAPIRO BROTHERS INVESTMENT CORP.

| **Effective** 7-1-81 | **Policy No.** DLP DO 52.22 24 2 |
|---|---|

**Issued by (Name of Insurance Company)**
PEI

The above is required to be completed only when this endorsement is issued subsequent to the preparation of the policy.

Under the SPECIAL CONDITIONS Applicable To Section II, the "Persons Insured" condition is amended to include as an Insured the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance, or use of that part of the premises designated below leased to the Named Insured, and subject to the following additional exclusions:

The insurance does not apply:

1. To any occurrence which takes place after the Named Insured ceases to be a tenant in said premises;

2. To structural alterations, new construction, or demolition operations performed by or on behalf of the person or organization designated below;

3. To liability assumed by said person or organization under any contract or agreement.

| **Designation Of Premises** (Part Leased To Named Insured) | **Name Of Person Or Organization** (Additional Insured) |
|---|---|
| 2448 E. Bonanza Las Vegas, NV | Connoly Development 100 Webster St. Oakland, CA 94607 |

Authorized Agent

Endorsement No.

K-1522   Ptd. in U.S.A.