Steven J. Parsons, Esq.
Nevada Bar No. 363
LAW OFFICES OF STEVEN J. PARSONS
7201 W. Lake Mead Blvd., Ste. 108
Las Vegas, Nevada 89128-8354
Telephone: 702.384.9900
Facsimile: 702.384.5900
Steve@SJPlawyer.com

Robert G. Russell, Esq.
Nevada Bar No. 5475
Scott R. Omohundro, Esq.
Nevada Bar No. 7472
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, California  92101
Telephone: 619.238.1900
Facsimile: 619.235.0398
Bob.Russell@procopio.com
Scott.Omohundro@procopio.com

Attorneys for Defendants, The Herman Kishner Trust, Irwin
Kishner, as Trustee for The Herman Kishner Trust, Jerry
Engel, as Trustee for The Herman Kishner Trust, Bank of
America, as Trustee for The Herman Kishner Trust, and
Maryland Square Shopping Center, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **PACIFIC EMPLOYERS INSURANCE COMPANY**, a Pennsylvania corporation,<br><br>Plaintiff,<br><br>v.<br><br>**THE HERMAN KISHNER TRUST; IRWIN KISHNER**, as Trustee for The Herman Kishner Trust; **JERRY ENGEL**, as Trustee for The Herman Kishner Trust; **BANK OF AMERICA**, as Trustee for The Herman Kishner Trust; **MARYLAND SQUARE SHOPPING CENTER, LLC; MARYLAND SQUARE, LLC; HERMAN KISHNER** dba Maryland Square Shopping Center; and DOES 1-25, inclusive,<br><br>Defendants. | Case No.: 2:10-cv-897-JCM-(PAL)<br><br>**DEFENDANTS':**<br><br>1.  **MOTION TO DISMISS; OR IN THE ALTERNATIVE,**<br><br>2.  **TO STAY THE ACTION** |

Defendants, The Herman Kishner Trust, Irwin Kishner, as Trustee for The Herman

Kishner Trust, Jerry Engel, as Trustee for The Herman Kishner Trust, Bank of America, as

Trustee for The Herman Kishner Trust, and Maryland Square Shopping Center, LLC, by their

counsel of record, hereby move the Court to dismiss this action or in the alternative to stay the

action.  The Motion is based upon the following Memorandum of Points and Authorities and

upon any argument and testimony the Court may adduce at the hearing upon the Motion.

DATED:  October 19, 2010                     LAW OFFICES OF STEVEN J. PARSONS

                                             */s/ Steven J. Parsons*
                                             Steven J. Parsons, Esq.
                                             Nevada Bar No. 363

                                             Robert G. Russell, Jr.
                                             Nevada Bar No. 5475
                                             Scott R. Omohundro
                                             Nevada Bar No. 7472
                                             PROCOPIO, CORY, HARGREAVES &
                                             SAVITCH LLP

                                             Attorneys for Defendants, The Herman
                                             Kishner Trust, Irwin Kishner, as Trustee for
                                             The Herman Kishner Trust, Jerry Engel, as
                                             Trustee for The Herman Kishner Trust, Bank
                                             of America, as Trustee for The Herman
                                             Kishner Trust, and Maryland Square
                                             Shopping Center, LLC

DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THE ACTION
117940/000001/1267596.01

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

In response to a third party tort class action previously filed in Nevada state court (in addition to two related federal court actions seeking injunctive relief), Plaintiff Pacific Employers Insurance Company ("PEIC") filed the present declaratory relief action.  PEIC seeks a judicial determination that it has no obligation to provide insurance coverage to Defendants in the underlying actions.  Thus, at a time when Defendants are fighting a significant class action in state court and two federal actions (which have now been consolidated) seeking mandatory injunctive relief (the compliance with which may cost millions of dollars for the federal court proceedings alone) and attorneys fees (in excess of one-half million dollars for the federal court injunction proceeding alone), the insurance company which covenanted to protect its insureds now seeks to force its insureds to fight for their survival on a different front, a battle in which they might ultimately be required to offer, in support of their claims for coverage, evidence which could be used against them in the pending actions for injunctive relief and damages.  PEIC's declaratory relief action presents questions of state law and includes factual issues that overlap with those in the underlying actions.  This Court should decline to assert jurisdiction over the insurance coverage action during the pendency of the parallel proceedings.

### I.

### STATEMENT OF FACTS

This dispute revolves around two insurance policies issued by PEIC to Shapiro Brothers Investment Corp. dba Al Phillips The Cleaner ("Shapiro Brothers").  (Complaint, ¶13).  The Shapiro Brothers operated a dry cleaning business during the effective dates of the PEIC policies in a Las Vegas shopping center located at 3651 through 3681 South Maryland Parkway (the "Property").  (Complaint, ¶14).  Defendants Maryland Square Shopping Center, LLC ("MSSC"), and The Herman Kishner Trust, and Irwin Kishner, Jerry Engel, and Bank of America as trustees of The Herman Kishner Trust (collectively referred to as the "Trust Defendants") were the owners of the Property on which the dry cleaning facility was located.[1]

---

[1] Herman Kishner was the owner of the Property in 1968.  The Herman Kishner Trust, created in 1969, was the successor-in-interest to Herman Kishner with respect to the Property.  MSSC was the successor-

DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THE ACTION
117940/000000/1267596.01

PEIC issued two general liability insurance policies, referred to as "Dry Cleaners and Laundries" policies to Shapiro Brothers, the first for the period from July 1, 1981 to July 1, 1982, and the second for the period from July 1, 1982 to November 7, 1982 according to the allegations of the complaint.  (Complaint, ¶13).  (The 1981 policy and the 1982 policy are collectively referred to herein as "the PEIC Policies".)

MSSC and the Trust Defendants contend that they are entitled to the protections of the PEIC Policies as additional insureds; PEIC disputes that contention.  Generally, each of the policies obligates PEIC to "pay on behalf of the Insured… all sums which the Insured shall be legally obligated to pay as damages because of… PROPERTY DAMAGE caused by an occurrence during the policy period and within the policy territory." (Complaint, ¶ 56).  Further, the policies obligate the carrier "to defend any suit against the Insured seeking damages on account of such… property damage".  Each policy contains a standard exclusion for "property damage arising out of the discharge, dispersal, release or escape of… contaminants or pollutants…."  However, by way of exception to this exclusion, the policies further provide that the exclusion has no application "if such discharge, dispersal, release or escape is sudden and accidental".  (Complaint, ¶ 83)  PEIC contends that this exclusion precludes coverage; MSSC and the Trust Defendants contend that if the exclusion has any application whatsoever, the exception to the exclusion for damages resulting from "sudden and accidental" releases applies such that the exclusion has no application.

On or about December 21, 2007, a class action lawsuit was filed in the Eighth Judicial District Court for the State of Nevada by owners of homes located near the Property ("State Action").[2]  (Complaint, ¶ 15).  The complaint in the State Action alleges a chemical commonly known as perchloroethylene ("PCE") was found in groundwater beneath the plaintiffs' homes. The Shapiro Brothers are named as defendants and are accused of spilling, dumping, and/or

---

in-interest to The Herman Kishner Trust with respect to the Property.  MSSC sold the Property to the Clark County School District in 2002.

[2] MSSC and the Trust Defendants request the Court take judicial notice of *Peter J. Voggenthaler, et al v. Al Phillips The Cleaner, Inc., et al*, Case No. A553784.  See Defendants' Request for Judicial Notice filed concurrently herewith.  In addition, a true and correct copy of the State Action plaintiffs' Third Amended Complaint is attached as Exhibit "A" to the Notice of Lodgment filed concurrently herewith.

DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THE ACTION
117940/000001/1267596.01

1   allowing the discharge of PCE into the soil and groundwater on the Property, which thereafter

2   allegedly migrated underneath the State Action plaintiffs' homes.   MSSC and the Trust

3   Defendants are also named as defendants in the State Action due to their prior ownership of the

4   Property.

5        On or about November 19, 2008, the State Action plaintiffs filed a lawsuit in this Court

6   pursuant to the Federal Resource Conservation and Recovery Act ("RCRA") relating to the

7   presence of the PCE in the soil and groundwater ("RCRA Action").[3]   (Complaint, ¶16).  MSSC,

8   the Trust Defendants, and the Shapiro Brothers, among other entities, are named as defendants.

9   The complaint in the RCRA Action states a sole cause of action for injunctive relief under

10  RCRA, 42 U.S.C. §6972(a)(1)(B).    The RCRA Action plaintiffs are seeking a judgment

11  requiring the defendants to take such action as may be necessary to address and abate the

12  contamination.  Liability in the RCRA Action is predicated upon a determination of the nature

13  and extent to which the Shapiro Brothers released PCE into the environment.

14       On or about May 9, 2009, the State of Nevada, Department of Conservation and Natural

15  Resources, Division of Environmental Protection, Bureau of Corrective Actions ("NDEP") filed

16  a lawsuit in this Court against MSSC, the Trust Defendants, and the Shapiro Brothers, among

17  other entities, seeking injunctive relief and cost recovery relating to the presence of the PCE

18  ("NDEP Action").[4]   (Complaint, ¶ 17).   NDEP seeks a mandatory injunction requiring the

19  defendants to complete an assessment of the extent of the contamination allegedly from the

20  Property, monitor the groundwater, submit timely reports, and submit and implement a corrective

21  action plan as approved by NDEP and also seeks damages in the amount of NDEP's expenses.[5]

22

23  [3] MSSC and the Trust Defendants request the Court take judicial notice of *Peter J. Voggenthaler, et al v.
    Maryland Square, LLC, et al*, Case No. 2:08cv01618.  See Defendants' Request for Judicial Notice filed
    concurrently herewith.  In addition, a true and correct copy of the RCRA Action plaintiffs' Complaint is
24  attached as Exhibit "B" to the Notice of Lodgment filed concurrently herewith.

25  [4] MSSC and the Trust Defendants request the Court take judicial notice of *State of Nevada, Department of
    Conservation and Natural Resources, Division of Environmental protection, Bureau of Corrective Actions
26  v. Maryland Square Shopping Center, LLC, et al*, Case No. 3:09cv0023.  See Defendants' Request for
    Judicial Notice filed concurrently herewith.  In addition, a true and correct copy of the NDEP's Complaint
27  is attached as Exhibit "C" to the Notice of Lodgment filed concurrently herewith.

28  [5] For purposes of this motion, the State Action, RCRA Action, and NDEP Action will be referred to herein
    as the "Underlying Actions."

DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THE ACTION
117940/000000/1267596.01

MSSC and the Trust Defendants tendered defense of the Underlying Actions to PEIC under the PEIC policies.   (Complaint, ¶¶ 19 & 20).  PEIC initially denied an insuring obligation based on the absence of any documentation or information indicating insured status for MSSC and the Trust Defendants.  (Complaint, ¶ 21).  PEIC thereafter agreed to participate in the defense of MSSC and the Trust Defendants in the Underlying Actions, subject to a reservation of rights.  (Complaint, ¶ 23).  Since that time, PEIC has paid monies toward defense costs of MSSC and the Trust Defendants.  (Complaint, ¶ 23).

PEIC now contends that MSSC and the Trust Defendants are <u>not</u> entitled to coverage or any of the benefits of the PEIC policies.  PEIC filed the present action for declaratory relief seeking a judicial determination that it has no insuring obligations to MSSC or the Trust Defendants relating to the Underlying Actions ("<u>Declaratory Relief Action</u>").  PEIC seeks to avoid coverage by obtaining a declaration that, *inter alia*, the alleged property damage did not occur during the effective dates of the PEIC Policies, and the alleged property damage resulted from pollution events that were not sudden and accidental.  Each of these questions is, or will become, an issue in the Underlying Actions.

## II.

## <u>DECLARATORY RELIEF IS IMPROPER WHEN COVERAGE DEPENDS ON FACTS AT ISSUE IN A THIRD PARTY ACTION</u>

### A.    Federal Law

Federal courts have broad discretion to dismiss or stay a declaratory relief action in favor of a pending state court proceeding involving the same issues and parties.  *Wilton v. Seven Falls Co.*, 515 US 277, 287-289, 115 S.Ct. 2137, 2142-2144 (1995).  In fact, where there is a parallel state proceeding at the time a federal declaratory relief action is filed, there is a <u>presumption that the entire suit should be heard in state court</u>.  *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).  The general rule is that federal courts "'should generally decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court' unless there are 'circumstances present to warrant an exception to that rule'."  *American National Fire Ins. Co. v.*

DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THE ACTION

1   *Hungerford*, 53 F.3d 1012, 1019 (9th Cir. 1995), quoting *Continental Cas. Co. v. Robsac Indus.,*

2   947 F.2d 1367, 1374 (9th Cir. 1991); see also *Employers Reinsurance Corp. v. Karussos*, 65 F.3d.

3   796, 798 (9th Cir. 1995).[6]

4           The *Hungerford* Court noted several important policy reasons behind the general rule,

5   including "avoiding rendering opinions based on purely hypothetical factual scenarios,

6   discouraging forum shopping, encouraging parties to pursue the most important remedy for their

7   grievance, preserving precious judicial resources, and promoting comity." *Hungerford*, 53 F.3d at

8   1019. Additional policies include avoiding duplicative litigation and the needless determination

9   of state law issues by federal courts. *Robsac*, 947 F.2d at 1371-73. It is in consideration of these

10  policy reasons that "federal courts should generally decline to entertain 'reactive' declaratory

11  actions." *Dizol*, 113 F.3d at 1225

12          The *Karussos* Court noted that the Supreme Court case providing the framework for the

13  Ninth Circuit's holdings in *Robsac* and *Hungerford* involved an insurance controversy.

14  *Karussos*, 65 F.3d. at 799, referring to *Brillhart v. Excess Ins. Co.* 316 U.S. 491, 62 S.Ct. 1173

15  (1942). "[B]oth *Robsac* and *Hungerford* involved disputes about insurance coverage, as have

16  most, if not all of the published cases in other circuits in which courts have declined to exercise

17  their jurisdiction over requests for a declaration of state law because of their related state court

18  proceeding." *Ibid.* The comity concerns identified in *Hungerford* are particularly weighty in

19  insurance cases because of the "traditional rule that 'states ha[ve] a free hand in regulating the

20  dealings between insurers and their policyholders.'" *Karussos*, 65 F.3d. at 799. In declining to

21  exercise jurisdiction in an insurance case, the Sixth Circuit explained that "'[t]he states regulate

22  insurance companies for the protection of their residents, and state courts are best situated to

23  identify and enforce the public policies that form the foundation of such regulations.'" *Ibid.*,

24  quoting *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990).

25          Significantly, it is <u>not</u> required that the issues in the parallel state and federal proceedings

26  even be similar. Differences in factual issues before the federal and state courts are <u>not</u>

27

28  ───────────────
    [6] *Hungerford*, *Robsac*, and *Karussos* were each overruled on other grounds in *Dizol*, *supra*, 133
    F.3d at 1224.

dispositive because "'[the insurer] could have presented the issues that it brought to federal court in a separate action to the same court that will decide the underlying tort action'." *Hungerford*, 53 F.3d at 1016-17, quoting *Mercier*, 913 F.2d at 278-279.

> 'It is true that in the present case the federal declaratory judgment action does not parallel [] a state court action arising from the same facts in the sense that different legal issues are presented by the pleadings. Nevertheless, the federal action does parallel the state action in the sense that the ultimate legal determination in each depends upon the same facts.' *Ibid*.

Finally, "in the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288, 115 S. Ct. at 2143. "As *Hungerford* and *Robsac* establish, concerns of 'practicality' and 'wise judicial administration' generally counsel against the exercise of federal-court jurisdiction over claims for declaratory relief that involve only state law questions and are brought during the pendency of a related state court proceeding. Certainly that is the case with insurance coverage disputes." *Karussos*, 65 F.3d at 801 (emphasis added).

### B.   State Law

The analysis under state law arrives at the same conclusion – that is, that a parallel declaratory relief action with respect to insurance coverage should not proceed during the pendency of the underlying tort action – though the analysis is different under state law.

Generally, declaratory relief actions will not lie where the coverage issue turns on facts at issue in the underlying third-party action against the insured. *California Ins. Guar. Ass'n v. Superior Court*, 231 Cal.App.3d 1617, 1623-1624 (1991).[7]   Concurrent litigation of the declaratory relief and liability actions could prejudice the insured by (i) increasing the costs of litigation (forcing the insured to "fight a two-front war"), (ii) creating a risk that an insured and injured party will join forces to defeat coverage, and (iii) creating a risk that the insured might be bound by adverse factual findings in the declaratory relief action while the insurer would not be

---

[7] In the absence of controlling Nevada case law authority, Nevada courts routinely draw upon opinions of the California appellate courts for guidance. *Eichacker v. Paul Revere Life Ins.*, 354 F.3d 1142 (9th Cir. 2004).

1   bound by findings favorable to the insured in the underlying action. *Montrose Chem. Corp. v.*
2   *Superior Court*, 25 Cal.App.4th 902, 910 (1994).

3       The court may stay a declaratory relief action pending resolution of an underlying action
4   when the coverage question turns on facts to be litigated in the underlying action. *Montrose*
5   *Chem. Corp. v. Superior Court,* 6th Cal.4th 287, 301-302 (1993).  Alternatively, the court may
6   dismiss a declaratory relief action where the coverage issue to be decided is based on factual
7   determinations which necessarily must be resolved in the underlying action. *General of*
8   *American Ins. Co. v. Lilly*, 258 Cal.App.2d 465, 471 (1968).

9       In a case with issues similar to the dispute between PEIC and its insureds, a trial court's
10  refusal to stay an insurer's declaratory relief action pending resolution of liability claims in an
11  underlying RCRA action was held to be an abuse of discretion. *United Enterprises, Inc. v.*
12  *Superior Court*, 183 Cal.App.4th 1004 (2010).  In this San Diego litigation, Otay Land Company
13  had sued United Enterprises in both federal and state courts alleging United Enterprises had
14  suffered damages because of lead contamination on property owned by Otay Land Company but
15  on which United Enterprises formerly had operated a shooting range.  While the lawsuits by Otay
16  Land Company against United Enterprises were pending, Royal Indemnity Company ("Royal"),
17  United Enterprises' insurer in the late 1960s, filed a declaratory relief action in state court
18  seeking a determination that there was no coverage under its policy for the claims asserted
19  against United Enterprises by Otay Land Company.  United Enterprises sought a stay of the
20  Royal action.   The trial court denied the stay but ordered that all of the papers to be filed in a
21  pending summary judgment motion filed by Royal would be filed under seal.  The court of
22  appeal reversed the trial judge's decision and ordered the trial court to grant the motion to stay
23  the declaratory relief action until both underlying actions had been "fully and finally
24  adjudicated". *United Enterprises, Inc. v. Superior Court,* 183 Cal.App.4th at 1010.  The court
25  concluded, relying on the California Supreme Court's decision in *Montrose Chem. Corp. v.*
26  *Superior Court, supra*, that "a stay is 'appropriate' where the factual issues to be resolved in the
27  declaratory relief action overlap issues to be resolved in the underlying action." *United*
28  *Enterprises, Inc. v. Superior Court,* 183 Cal.App.4th at 1011.

DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THE ACTION

**III.**

**PEIC'S DECLARATORY RELIEF ACTION SHOULD BE DISMISSED**

**PENDING RESOLUTION OF THE UNDERLYING ACTIONS**

The present lawsuit is nothing more than a "reactive" declaratory relief action filed in response to the related third party tort actions filed in the state and federal court. PEIC's Declaratory Relief Action parallels the State Action (in addition to the two federal actions seeking injunctive relief) as they involve the same dispositive facts. Many of the same facts that will determine the liability of MSSC and the Trust Defendants in the State Action will serve as the basis for the ultimate legal determination as to PEIC's coverage obligations. The result is that MSSC and the Trust Defendants are put in a position where they will have to prove (in the Declaratory Relief Action) some of the things they are actually trying to defend themselves against (in the Underlying Actions). In addition, since issues of insurance coverage involve questions of state law, state courts are best situated to adjudicate such matters.

In its Declaratory Relief Action, PEIC seeks a judicial determination that it has no insuring obligations to MSSC or the Trust Defendants relating to the Underlying Actions. The resolution of this question turns squarely on factual issues that overlap with those in the Underlying Actions. Consider the issues which will come into play in the Declaratory Relief Action in order for the Court to determine whether coverage exists:

1.      Whether plaintiffs suffered damage;

2.      Whether the damage suffered by plaintiffs was because of property damage, i.e., physical damage to tangible property;

3.      Whether MSSC and the Trust Defendants are legally obligated to pay damages as a result of such property damage;

4.      Whether the property damage was the result of an "occurrence";

5.      Whether the "occurrence" took place during a PEIC policy period;

6.      Whether the property damage was caused by pollution;

7.      Whether at least some of the releases were the result of "sudden and accidental" occurrences.

8

Many of these same issues obviously are issues in the Underlying Actions.  Have the plaintiffs suffered property damage?  What caused the property damage?  When was the property damage caused?  Who is responsible for the property damage?  Clearly, not only do the Underlying Actions "parallel" PEIC's Declaratory Relief Action, many of the same issues necessary to the coverage determinations will be determined in the Underlying Actions.

PEIC's own Complaint for Declaratory Relief makes it clear what is at issue in the Underlying Actions and how it impacts the question of coverage:

> The Underlying Actions, and each of them, are premised upon and allege the existence of damage to property caused by the presence of PCE in soil and groundwater, due in whole or in part to discharge, release, escape and/or dispersal of PCE at or upon the Property.  PCE qualifies as an acid, toxic chemical, irritant, contaminant, and/or pollutant.  The claims and allegations in the Underlying Actions thus fall within the scope of the above-quoted coverage exclusion.  Under these circumstances, and based on the above-quoted policy language, PEIC asserts that no indemnity coverage is available under the 1981 PEIC policy for the Underlying Actions, or any of them, unless and until it is established that the exclusion's exception for "sudden and accidental" events is applicable.  (Complaint, ¶ 82).

The operative pleadings from the Underlying Actions further illustrate the key factual issues in dispute:

**State Action[8] -**

> ¶2.  Class Plaintiffs are informed and believe, and thereupon allege that Defendants dumped, spilled and/or allowed the discharge of toxic chlorinated solvents called perchloroethylene ("PERC" or "PCE") and/or trichloroethylene ("TCE") (PERC and TCE, and their degradation products and ingredients, are referred to collectively as "chlorinated solvents.") at the Site.

> ¶65.  Chlorinated solvents were discharged by [the Shapiro Brothers] onto the Site and the property between 1969 and 2000 which contaminated the soil and shallow groundwater.

> ¶73.  *Trespass.*  At all times relevant herein [the Shapiro Brothers] operated the dry cleaning business known as "Al Phillips the Cleaner" from 1969 through 2000 and discharged solvents into the soil and shallow groundwater at the Site, which MSSC owned and leased to [the Shapiro Brothers].

> ¶84.  *Private Nuisance.*  At all relevant times, Defendants, and each

---

[8] See the State Action plaintiffs' Third Amended Complaint attached as Exhibit "A" to the Notice of Lodgment filed concurrently herewith.

9

of them, had a duty not to permit or allow a nuisance to Class Plaintiff's properties.  The Defendants each breached that duty by allowing chlorinated solvents to be released at and migrate from the Site owned by MSSC and leased to [the Shapiro Brothers], and by failing to remediate and remove such hazardous substance from the soil and groundwater and Class Plaintiffs' adjoining properties.

¶94.  *Negligence*.  Defendants breached their duty of care by negligently and/or allowing the discharge of chlorinated solvents into the soil and shallow groundwater ….

### RCRA Action (RCRA, 42 U.S.C. §6972(a)(1)(B))[9] -

¶65.  Plaintiffs are informed and believe, and on that basis alleged, that the primary cause of the releases of hazardous waste at the Site was a result of Defendants' disposal, handling, transportation, release and/or abandonment of hazardous….

¶66.  Defendants discharged and permitted the discharge of PCE to the soil and groundwater by: their operation of dry cleaning machinery at the site, their use and disposal of chlorinated solvents; their operation and control of the disposal and sewer systems at the Site; their ownership of the Site; and their ownership of property at and/or contiguous to the Site on which contamination has occurred and migrated onto the Plaintiffs' properties unabated by these landowners.

### NDEP Action[10] -

¶18.  Investigations performed by environmental consultants hired by certain Defendants ("Defendants' Investigations") have provided the Division with data that the Division contends demonstrates that PCE was released to soil at the former APTC property and has migrated in groundwater forming a plume of groundwater contamination ("plume").

Based on the foregoing, there can be no dispute that key factual issues to be decided in the Underlying Actions overlap with the legal determination sought in PEIC's Declaratory Relief Action.

Addressing the same issue, Judge Howard McKibben of this Court held that the policy reasons in *Karussos*, *supra*, and *Hungerford*, *supra*, compelled the court to decline to assert jurisdiction over a pending declaratory relief action.  In *Diamond State Insur. Co. v. Fame Operating Co., Inc.*, 917 F.Supp 736 (D.Nevada 1996), a general liability insurer sought a

---

[9] See the RCRA Action plaintiffs' Complaint attached as Exhibit "B" to the Notice of Lodgment filed concurrently herewith.

[10] See NDEP's Complaint attached as Exhibit "C" to the Notice of Lodgment filed concurrently herewith.

DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THE ACTION

117940/000001/1267596.01

declaratory judgment that an assault and battery exclusion barred coverage for the insured's liability arising out of altercations on their premises.  A motion to dismiss was filed, and Judge McKibben found that the underlying tort action pending in state court against the insureds compelled dismissal.

The critical inquiry for the District Court was whether the insurer's declaratory relief action should proceed despite the underlying personal injury action in state court.  The District Court applied the general rule that "federal courts should 'decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court unless there are circumstances present to warrant an exception to that rule.'"  *Diamond State,* 917 F.Supp. at 738, quoting *Karussos*, 65 F.3d at 798.    The District Court noted that as in *Hungerford*, *supra*, and *Mercier*, *supra*, the declaratory relief action "paralleled" the underlying state actions:

> Whether the assault and battery exclusion provisions  in the insurance policies require [the insurer] to defend and indemnify the policy holders ultimately depends on factual questions that overlap the underlying state court actions.  Thus, [the insurer's] request for declaratory relief requires this court to resolve issues that are similar to those before the state court.

*Diamond State,* 917 F.Supp. at 738-739.

The District Court observed that the record before it was devoid of facts upon which the coverage issue could be determined.  "The facts necessary to resolve the insurance coverage claims will be developed through the state court proceedings.  The court should not be required to assume the facts as alleged to be true, render decisions, and hope that the facts developed during the underlying actions will be exactly as assumed."  *Id.* at 739.

The District Court also noted that even if there were no common issues of fact, such an argument for retaining federal jurisdiction over an insurance coverage action was rejected by the Ninth Circuit in *Hungerford*, *supra* and *Karussos*, *supra*.   Judge McKibben confirmed that differences in factual issues between the federal and state court actions are not dispositive because "[the insurer] could have presented the issues that it brought to federal court in a separate action to the same court that will decide the underlying tort action."   *Id*. at 739, quoting

DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THE ACTION
117940/000001/1267596.01

*Hungerford*, 53 F.3d at 1016-1017.  This is consistent with the existence of Nevada's Uniform Declaratory Judgments Act, NRS §§ 30.010 *et seq*., which the District Court identified as another compelling reason to decline jurisdiction.  The insurer could have sought declaratory relief from the same court that would decide the underlying tort actions under Nevada's own declaratory judgment statute.  *Diamond State*, 917 F. Supp. at 739.  The bottom line, in Judge McKibben's opinion, was that *Hungerford* applied whether or not there is a similarity of issues for the reason that the determinations turned on the same facts, and the federal declaratory action should be dismissed.

It bears noting that other courts have cited Judge McKibben's decision with approval when deciding similar issues.  See, for example, *Amazon.com, Inc. v. Underwriters at Lloyd's London* (W.D. Wash. 2005) 2005WL1312046 (refusing to determine insurance coverage issues based on a "hypothetical set of facts" and dismissing said action until such time as the facts are determined in the underlying action); and *Owners Insurance Company v. Monte Vista Hotel* (D. Ariz. 2010) 2010WL447343 (dismissing an insurance carrier's declaratory relief action noting Judge McKibben's decision in *Diamond State Insurance Company*).

## IV.

## <u>CONCLUSION</u>

Where a "third party" tort action has been filed in state court against an insured and the insurer "reacts" by seeking declaratory relief in federal court on the same issues, the federal court should refuse jurisdiction while the underlying liability suit is pending.  Similar to the insured in *Hungerford*, *Karussos*, *Mercier*, and *Diamond State*, PEIC can point to no facts or circumstances which would make the exercise of federal court jurisdiction appropriate.  Further, it is clear under state law that a court should not hear an insurance declaratory relief action at a time when the underlying tort action is still pending.  It is undisputed that the key factual issues to be decided in the Underlying Actions overlap with PEIC's Declaratory Relief Action.  As a result, any further proceedings in this case would be futile and would only frustrate the interest in judicial economy. The Court is respectfully requested to dismiss this action or in the alternative to stay such

DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THE ACTION

1   pending full and final adjudication of the Underlying Actions.

2

3   DATED:  October 19, 2010

4

5                                              /s/ Steven J. Parsons
                                               Steven J. Parsons, Esq.
6                                              Nevada Bar No. 363
                                               LAW OFFICES OF STEVEN J. PARSONS
7                                              7201 W. Lake Mead Blvd., Ste. 108
                                               Las Vegas, NV 89128-8354
8                                              Telephone: 702.384.9900
                                               Facsimile: 702.384.5900
9
                                               Robert G. Russell, Jr.
10                                             Nevada Bar No. 5475
                                               Scott R. Omohundro
11                                             Nevada Bar No. 7472
                                               PROCOPIO, CORY, HARGREAVES &
12                                             SAVITCH LLP
                                               525 B Street, Suite 2200
13                                             San Diego, CA 92101
                                               Telephone: 619.238.1900
14                                             Facsimile: 619.235.0398

15                                             Attorneys for Defendants, The Herman
                                               Kishner Trust, Irwin Kishner, as Trustee for
16                                             The Herman Kishner Trust, Jerry Engel, as
                                               Trustee for The Herman Kishner Trust, Bank
17                                             of America, as Trustee for The Herman
                                               Kishner Trust, and Maryland Square
18                                             Shopping Center, LLC

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY THE ACTION
117940/000001/1267596.01